| | |
|---|---|
| **DISTRICT COURT, BOULDER COUNTY, STATE OF COLORADO**<br>1777 6th Street<br>Boulder, CO  80302<br>(303) 441-3750<br>_____<br><br>**Plaintiffs:**<br>ERIN LINDSAY and CHRISTOPHER LINDSAY<br><br>v.<br><br>**Defendants:**<br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and GEICO INSURANCE AGENCY, LLC.<br>_____<br>*Attorneys for Plaintiffs:*<br>Bradley A. Levin, No. 13095<br>Susan S. Minamizono, No. 48984<br>LEVIN SITCOFF WANEKA PC<br>1512 Larimer Street, Suite 650<br>Denver, CO  80202<br>Phone: (303) 575-9390<br>Fax: (303) 575-9385<br>brad@lsw-legal.com<br>susan@lsw-legal.com | DATE FILED: April 26, 2023 4:16 PM<br>FILING ID: 74215F9584998<br>CASE NUMBER: 2023CV30297<br><br><br>▲ **COURT USE ONLY** ▲<br>_____<br><br>**Case Number:**<br><br>**Division:** |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiffs, Erin Lindsay and Christopher Lindsay, by and through their attorneys, LEVIN SITCOFF WANEKA PC, for their Complaint and Jury Demand against Defendants The Travelers Home and Marine Insurance Company and Geico Insurance Agency, LLC, state and allege as follows:

## **CERTIFICATE OF REVIEW**

Plaintiffs, Erin Lindsay and Christopher Lindsay ("the Lindsays" or "Plaintiffs"), by and through their counsel, LEVIN SITCOFF WANEKA PC, submit the following Certificate of Review pursuant to C.R.S. § 13-20-602(3)(a) certifying:

1.  Counsel has consulted an expert who has expertise in the area of the alleged conduct as set forth in Plaintiffs' Complaint and Jury Demand.

2. The expert who has been consulted has reviewed all known facts pertaining to the allegations made in the pleadings.

3. Based upon such facts, the expert has concluded that the filing of the claims asserted in this action do not lack substantial justification within the meaning of C.R.S. § 13-17-102(4).

## PARTIES, JURISDICTION AND VENUE

4. Plaintiffs are residents of Boulder County, Colorado.

5. Defendant The Travelers Home and Marine Insurance Company ("Travelers") is a corporation incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Travelers is authorized to do business in the State of Colorado.

6. Defendant Geico Insurance Agency, LLC ("Geico") is a limited liability company formed under the laws of the State of Maryland, with its principal place of business in the State of Virginia. Geico is authorized to do business in the State of Colorado.

7. This Court has jurisdiction over the subject matter of this action.

8. Venue is proper in this District Court pursuant to C.R.C.P. 98(c)(5) because the torts that are the basis of this action occurred in Boulder County.

## GENERAL ALLEGATIONS

**A. The Travelers Homeowner Policy Procured by Geico**

9. The Lindsays owned a 4,072 square foot custom-built house located at 826 Trail Ridge Drive, Louisville, Colorado 80027 ("the Home").

10. The Home was built based on the winning design in a competition between local architects and was constructed with very high standards not characteristic of a typical tract home.

11. In 2015, Geico procured for the Lindsays a homeowners policy issued by Travelers.

12. As part of the policy application process and in subsequent conversations, the Lindsays informed Geico of the numerous unique and customized features, finishes, and amenities in the Home.

13. On various occasions over the years, the Lindsays expressed their concern to Geico as to whether there was sufficient coverage for the Home under the Travelers homeowners policy and requested increased policy limits.

14. Geico informed the Lindsays over the phone that it could not procure a policy with higher limits, and that no other insurer would sell higher policy limits than what was already

provided for in the Travelers policy, because insurance companies are forbidden from "overinsuring" a property. Geico also stated that Travelers could not and would not increase coverage, and that no other insurer would because there was "no way on earth" the rebuilding of the Home would cost more than the policy limits.

15. In 2019, the Lindsays called Geico and informed them that they had installed solar panels at the Home and again requested increased policy limits.

16. On March 28, 2019, Geico reassured the Lindsays over the phone that the Home was "overinsured." Geico did not offer nor procure a policy with increased policy limits.

17. The Lindsays later discovered, after they filed a complaint with the Colorado Division of Insurance ("DOI"), that as of March 2019, Geico had calculated the estimated replacement cost of the Home at $436,205. At the time, the policy issued by Travelers included a dwelling limit for the Home in the amount of $506,000.

18. Further, at no point before 2020 did Geico or Travelers offer to the Lindsays the option of purchasing Additional Living Expense coverage for up to 24 months, consistent with C.R.S. § 10-4-110.8(6)(b).

**B.  Geico's Misrepresentations and Failure to Procure Proper Coverage for the Home**

19. To properly procure insurance coverage for the Home, Geico was required by the standard of care, applicable to insurance producers in Colorado, to conduct an accurate replacement cost analysis based on the type and style of the Home, its square footage, custom features, finishes and amenities in the Home, and the need for replacement cost coverage to exceed the amount of the policy limit due to the risk of rising construction prices.

20. Such replacement cost coverage was generally available in the insurance market in Colorado.

21. However, Geico misinformed the Lindsays that such replacement cost coverage or increased policy limits were not available with any insurer.

22. Geico breached the standard of care by failing to conduct a proper replacement cost analysis, by failing to advise the Lindsays regarding the proper and accurate analysis based on the square footage of the Home, the exceptionally high construction standards by which the Home was built, and the custom features, finishes, and amenities—information that was repeatedly provided by Ms. Lindsay to Geico—and by failing to procure the proper amount of replacement cost coverage, including coverage which would exceed the amount of the policy limit of the Travelers policy, resulting in the Home being inadequately insured.

### C. The Marshall Fire

23. On December 30, 2021, a groundfire ignited in Boulder County, Colorado. That fire, which came to be known as the Marshall Fire, spread quickly to various parts of Boulder County.

24. The Home was completely destroyed in the Marshall Fire.

25. At the time of the total fire loss, the Home was insured under a homeowner policy issued by Travelers, Policy No. 994039763 633 1, with effective dates of June 4, 2021, to June 4, 2022 ("the Policy"). The Policy offered a Dwelling limit of $557,000, Other Structures limit of $55,700, Personal Property limit of $389,900, and a time limited Loss of Use coverage for 12 months.

### D. The Lindsays' Insurance Claim with Travelers

26. On December 31, 2021, the Lindsays notified Travelers regarding the total fire loss.

27. Travelers opened a claim for the loss, Claim No. IRX8418 ("the Claim"), which was eventually assigned to Peter Van Riper of Travelers' Property Claim department for handling.

28. Mr. Van Riper told the Lindsays over the phone that he did not need to see pre-loss photos of the Home since the Home "was underinsured anyway."

29. For the first time, the Lindsays discovered that the Home was severely underinsured.

30. The Lindsays requested that Mr. Van Riper provide a complete and accurate estimate of the loss.

31. During an in-person meeting with the Lindsays on January 21, 2022, to obtain information regarding the scope of loss, Mr. Van Riper stopped taking notes part way through the conversation and appeared to no longer desire to participate in the conversation.

32. Nevertheless, the Lindsays provided photos and drawings of the Home in pre-loss condition to Mr. Van Riper on January 21, 2022, and again on April 21, 2022.

33. Despite the Lindsays' repeated request for a complete and accurate estimate of the loss, Mr. Van Riper refused to provide such estimate. Mr. Van Riper informed the Lindsays over the phone and email that it wasn't necessary to obtain an accurate estimate, since the loss exceeded the Policy limits.

34. On February 2, 2022, Travelers sent to the Lindsays its first repair estimate with total replacement cost value (RCV) of $1,124,791.08 and actual cash value (ACV) of $913,502.09.

35. The estimate omitted basic features such as showers, shower fixtures, side pathway, and hundreds of other features, finishes and amenities, including, but not limited to, solar panels, of which the Lindsays had previously and specifically informed Geico.

### E. Reformation of Policy Based on Incorrect Information due to Failure by Claim Adjuster to Reasonably Investigate the Scope of Loss

36. On January 18, 2022, the Lindsays filed a complaint with the Division of Insurance ("DOI"), requesting audio recordings or transcripts that Geico may have retained regarding the Lindsays' prior requests in 2015 and 2016 for higher policy limits.

37. The Lindsays did not receive a response from Geico with respect to the January 18 DOI complaint.

38. On February 7, 2022, the Lindsays filed another complaint with the DOI, detailing their communications with Geico in which they had requested increased policy limits on multiple occasions.

39. On or around March 4, 2022, Travelers responded to the DOI complaint, advising that they had forwarded the Lindsays' concerns to Travelers' underwriting department.

40. On or around March 11, 2022, Travelers issued a rebuild estimate, which scope remained unchanged since the insurer's initial scope of repair, with the following totals that include amounts for inflation: $1,011,767.45 RCV/$820,429.06 ACV for Dwelling coverage; $114,953.61 RCV/$97,019.79 ACV for Other Structures; and $30,988.97 for trees, plants and shrubs.

41. The March 11, 2022 estimate by Travelers was based on Mr. Van Riper's poor understanding of the Home and his inaccurate scope of loss that had been sent to Travelers' underwriting department.

42. On March 23, 2022, the Lindsays spoke to Jenifer Ruggiero of Travelers' PI Customer Advocacy department over the phone regarding their DOI complaint. Ms. Ruggiero informed the Lindsays that an investigation was being handled by the underwriting department. Further, when asked by the Lindsays about possible outcomes of the investigation, Ms. Ruggiero stated that either Travelers would find that the limits were set correctly, or the Policy limits would be reformed and the Lindsays would be "made whole."

43. On April 4, 2022, Aaron Stone of Travelers called the Lindsays and informed them that the Policy limits had been reformed.

44. On April 6, 2022, the Lindsays spoke with Ms. Ruggiero over the phone to address the inaccuracy of Mr. Van Riper's estimate. Ms. Ruggiero asked the Lindsays what they believed the Policy limits should have been set to, and the Lindsays informed her that they were in the process of obtaining an "as/was" estimate from their building consultant. Ms. Ruggiero asked that the Lindsays provide an accurate scope of loss and informed the Lindsays that she would forward

5

the accurate scope to the underwriting department for reevaluation and have the Policy limits readjusted accordingly.

45. On April 7, 2022, during a phone call to Michael Gatti, Assistant Vice President of Travelers' Property Claim department, the Lindsays expressed their concerns about how the adjusted Policy limits had been determined. Mr. Gatti informed the Lindsays that the underwriting department uses information obtained by the claims adjuster regarding the property's features, finishes, and amenities to make the appropriate adjustments.

46. During the phone conversation, Mr. Gatti acknowledged that Mr. Van Riper's actions were wrong and informed the Lindsays that the scope of loss would be amended in view of the inaccuracy of Travelers' estimate, which omitted numerous finishes, features, and amenities of the Home.

47. Due to Mr. Van Riper's refusal to reasonably investigate the Claim, the Lindsays had requested that a different adjuster and manager be assigned to the Claim since March 7, 2022. However, the Lindsays' multiple requests for a different adjuster and manager were refused by Travelers.

48. On April 8, 2022, Mr. Van Riper informed the Lindsays that he received confirmation from Travelers' underwriting department that the dwelling limit under the Policy was increased to $1,282,384.43.

49. Travelers also arranged to have Sedgwick, a third-party claims administrator, prepare another scope of loss. Although the Lindsays advised Sedgwick and Mr. Van Riper that they and their building consultant would be available to answer questions, even setting up a website containing numerous photos of the Home in its pre-loss condition, Sedgwick did not ask questions nor seek additional information from the Lindsays or their building consultant after visiting the site on April 21, 2022.

50. Mr. Van Riper refused to provide the Lindsays with the scope of loss prepared by Sedgwick, asserting that the document was "privileged."

51. On June 3, 2022, the Lindsays received correspondence and a scope of loss revised by Travelers showing $1,211,132.42 as the full cost of repair or replacement for the Building (Dwelling), $53,760.00 for debris removal, and $34,293.53 for trees, plants and shrubs. Travelers' scope of loss also indicated $148,231.84, less $49,920.03 in non-recoverable depreciation, as the full cost of repair or replacement for Other Structures. However, the scope was missing significant details about the Home, with entire rooms omitted.

52. The Lindsays spent countless hours, including with their building consultant, to comment on Traveler's scope and provide amendments, specifically, adding 1,069 line items to the scope.

6

53. On August 29, 2022, the Lindsays sent the amended build estimate to Mr. Van Riper with a total repair cost of $2,731,440.74, and pursuant to their phone conversation with Ms. Ruggiero on April 7, 2022, requested that he forward it to Travelers' underwriting department.

54. In response to the Lindsays' email sent on August 29, 2022, Mr. Van Riper informed the Lindsays that Travelers had completed a reformation of the Policy and that an external build estimate "does not appear to be cause for further consideration."

55. Further, Mr. Van Riper instructed the Lindsays to contact their agent with any remaining concerns about the Policy limits, but also advised that Travelers would review the amended build estimate.

56. On or around September 15, 2022, Mr. Van Riper informed the Lindsays that Travelers would review the amended scope of loss submitted by the Lindsays and their building consultant.

57. On October 5, 2022, the Lindsays received an estimate from Travelers showing $1,298,380.72 RCV and $908,524.17 ACV for Dwelling coverage; $158,439.37 RCV/$108,265.05 ACV for Other Structures coverage; $60,051.84 for debris removal; and $34,293.53 for trees, plants and shrubs.

58. Later, Travelers provided an updated cost estimate showing $1,358,432.56 RCV for Building (Dwelling) and debris removal, and $158,439.37 RCV for Other Structures. Travelers omitted the amount of $34,293.53 that it had previously allotted in June 2022 for trees, plants, and shrubs. Moreover, the estimate was produced by Travelers without taking into account the detailed responses provided by the Lindsays noting the hundreds of missing line items in Travelers' scope.

59. Specifically, the October 5, 2022 scope and cost estimate was missing approximately 300 line items totaling $165,148.37, even though Travelers had previously agreed upon those line items; another 264 lines totaling $492,259.79 which were tagged as requiring follow-up, but Travelers indicated they had reached a "final position" without providing explanation; an additional 83 line items totaling $187,800.57 which Travelers represented were moved to other sections of the estimate but could not be found; 71 line items totaling $118,494.23 which Travelers claimed had been included in the pricing of other line items but were, in fact, deleted; and 109 line items totaling $197,342.86 which were improperly removed as errors or duplicates, among other things. Notes related to these line items were received by the Lindsays in an Excel spreadsheet, which was last modified by Sedgwick.

60. Additionally, the October 5, 2022 estimate reduced the window pricing by half with no explanation, removed items that the Lindsays and their building consultant had added to Traveler's scope of loss, and designated those deleted items as "betterment," even though the Lindsays had previously provided photographic proof to Travelers showing that those items existed prior to the fire, among other things.

61. The Lindsays continually offered their assistance in answering any questions and providing clarity to Travelers regarding the scope of loss.

62. Travelers chose to keep only 226 of the 1,069 line items that the Lindsays and their building consultant added to the most recent scope.

63. Additionally, on or around October 5, 2022, Mr. Van Riper sent correspondence to the Lindsays stating that Travelers did not believe "any further reformation discussions are warranted."

64. On October 27, 2022, the Lindsays sent back the scope and cost estimate contained in the spreadsheet to Mr. Van Riper with corrections. The Lindsays meticulously provided detailed information related to the applicable line items, including photos.

65. On November 3, 2022, Mr. Van Riper sent an email to the Lindsays stating that Travelers did not include the numerous items in the builder's scope contained in the spreadsheet because "further support for those items are needed." As an example, Mr. Van Riper indicated that the 154.50 lineal feet of a steel wide flange beam was deleted from Traveler's estimate since "[t]hat does not seem like a typical use of this material, and it was not brought up during our meeting in April."

66. However, at their very first in-person meeting in January 2022, the Lindsays had discussed with and provided to Mr. Van Riper photos of the large steel support beams that were found in the burnt remains of the Home. Mr. Van Riper verbally acknowledged the steel beams in photographs the Lindsays showed him.

67. On November 23, 2022, Mr. Van Riper emailed the Lindsays, indicating that he would follow up shortly regarding Travelers' further analysis of the spreadsheet.

68. On January 31, 2023, Mr. Van Riper sent a revised estimate to the Lindsays without directly responding to the information provided by the Lindsays regarding the specific items listed in the spreadsheet. Travelers' response did not include any itemized reasons for why the insurer rejected the majority of the line items presented by the Lindsays and their building consultant. The estimate indicated $1,330,932.51 RCV/$945,091.66 ACV for Dwelling; $188,789.59 RCV/$129,122.29 ACV for Other Structures; $60,051.84 for debris removal; and $34,293.53 for trees, plants and shrubs.

69. On January 31, 2023, Travelers issued a supplemental payment to the Lindsays of $57,424.43, consisting of $37,451.86 for Dwelling coverage and $19,972,87 for Other Structures coverage.

70. To date, Travelers has not issued payment to the Lindsays in the amount of $34,293.53 for trees, plants, and shrubs.

71. The Lindsays' Home is still severely underinsured, and at this time, they cannot rebuild the Home to its pre-loss condition with the amounts indicated in Travelers' most recent estimate.

72. Travelers' most recent scope of loss is still inaccurate and missing numerous line items.

73. To date, Travelers has not provided responses to the Lindsays' corrections in the spreadsheet sent to Mr. Van Riper in October 2022.

74. Due to representations by Travelers that the reformed Policy limits would be adjusted to reflect the accurate scope and costs to rebuild the Home, and the Lindsays' reliance on those representations, efforts to rebuild the Home have been delayed.

### F. Travelers' Claims Handling Related to Other Coverages

75. In the months following the fire loss, especially around the end of February 2022 when the Lindsays brought home their newborn baby from the hospital, Mr. Van Riper refused to approve certain basic necessities under the Policy's Additional Living Expense (ALE) coverage and was forced to live with many of their belongings scattered on the floor.

76. Not until Mr. Gatti became involved with the Claim almost four months after the fire loss did the Lindsays receive additional essential furniture under the Policy's ALE coverage.

77. The Lindsays did not receive the last piece of requested furniture until August 15, 2022, approximately eight months after the fire loss.

### FIRST CLAIM FOR RELIEF
### (Negligence – Against Defendant Geico)

78. Plaintiffs incorporate the above allegations as if fully set forth herein.

79. Under the standard of care applicable to Colorado insurance producers, Geico owed a duty to Plaintiffs to conduct a replacement cost analysis based on the type and style of the Home, its accurate square footage, the custom features, finishes and amenities in the Home, and the need for replacement cost to exceed the amount of the homeowners policy limits due to the risk of rising construction prices.

80. Geico agreed to obtain the proper coverage for the Home, and therefore Geico owed a duty to Plaintiffs to procure it. Geico also assumed a duty to accurately advise Plaintiffs regarding the availability of insurance products that would provide the proper amount of coverage for the Home.

81. The type of insurance necessary to protect the Home was generally available in the insurance market in Colorado when Geico agreed to obtain the coverage.

82. After the fire loss, the Lindsays, for the first time, discovered that the Home was severely underinsured.

83. As described above, Geico negligently breached its duties.

84. As a direct and proximate result of Geico's breach of its duties, the Lindsays have suffered economic losses and damages, emotional distress, frustration, and inconvenience, in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against Defendant Geico)

85. Plaintiffs incorporate the above allegations as if fully set forth herein.

86. After the Lindsays requested that Geico offer increased policy limits for their Home, Geico supplied false information to the Lindsays, specifically, that no other insurer would sell higher policy limits than what was already provided for in the Travelers policy.

87. Geico failed to exercise reasonable care in communicating that the type of insurance coverage necessary to protect the Home was generally available in the insurance market in Colorado when Geico agreed to obtain the coverage.

88. After the fire loss, the Lindsays, for the first time, discovered how severely underinsured the Home was and that the type of insurance coverage necessary to protect the Home was available when Geico agreed to obtain the coverage.

89. The Lindsays are persons whom Geico knew would rely upon the false information it supplied.

90. The Lindsays justifiably relied on the false information supplied by Geico.

91. As a direct and proximate result of Geico's negligent misrepresentations, the Lindsays have suffered economic losses and damages, emotional distress, frustration, and inconvenience, in amounts to be proved at trial.

## THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against Defendant Travelers)

92. Plaintiffs incorporate the above allegations as if fully set forth herein.

93. After the Lindsays informed Travelers that the initial reformed Policy limits were

based on an inaccurate scope and estimate prepared by Mr. Van Riper, Travelers supplied incorrect information to the Lindsays, specifically, that the Policy would be further reformed in view of the inaccuracy of Travelers' scope and estimate, which omitted numerous finishes, features, and amenities of the Home, and that the Lindsays would be "made whole."

94. Travelers failed to exercise reasonable care when it communicated to the Lindsays that it would reform the Policy limits that would accurately reflect the as/was built condition of the Home.

95. The Lindsays waited for Travelers to reform the Policy limits in order to start the reconstruction process. However, to date, the Policy limits do not accurately reflect the as/was built condition of the Home.

96. The reconstruction of the Home has been delayed due to the Lindsays' reasonable reliance on Travelers' promise to reform the Policy limits that would accurately reflect the as/was built condition of the Home.

97. The Lindsays are persons whom Travelers knew would rely upon the incorrect information it supplied.

98. The Lindsays justifiably relied on the incorrect information supplied by Travelers.

99. As a direct and proximate result of Travelers' negligent misrepresentation, the Lindsays have suffered economic losses and damages, emotional distress, frustration, and inconvenience, in amounts to be proved at trial.

**FOURTH CLAIM FOR RELIEF**
**(Reformation of Policy – Against Defendant Travelers)**

100. Plaintiffs incorporate the above allegations as if fully set forth herein.

101. After the Home was lost in the Marshall Fire, the Lindsays, for the first time, discovered that the Home was severely underinsured.

102. Travelers promised that the Policy limits would be accurately reformed and that the Lindsays would be "made whole."

103. Although Travelers reformed the Policy limits, the reformation was based on Travelers' failure to conduct a reasonable investigation, its inaccurate scopes and estimates that did not account for the numerous unique and custom features, finishes, and amenities in the Home, and its disregard of factual information provided by credible sources in preparing its scopes and estimates, all of which constituted inequitable conduct on Travelers' part.

104. The Lindsays request that the Court reform the Policy to accurately reflect coverage limits based on the accurate as/was-built specifications of the Home, including numerous custom

NOTICE OF REMOVAL - EXHIBIT "A"

features, finishes, and amenities in the Home that have been disregarded by Travelers. Further, the Lindsays request that all other coverage limits under the Policy be correspondingly increased.

### FIFTH CLAIM FOR RELIEF
### (Violation of C.R.S. §§ 10-3-1115 & 1116 – Against Defendant Travelers)

105. Plaintiffs incorporate the above allegations as if fully set forth herein.

106. Sections 10-3-1115(1) and (2), C.R.S., forbid insurers such as Travelers from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

107. The Lindsays are first-party claimants as that term is used under C.R.S. § 10-3-1115(1)(A)(I).

108. Travelers is an entity engaged in the business of insurance.

109. Travelers delayed and/or denied payment of first-party benefits owed to the Lindsays under the Policy and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115(2) for the reasons set forth above.

110. Section 10-3-1116, C.R.S., provides that a first-party claimant whose claim has been unreasonably delayed or denied by an insurer may bring an action to recover reasonable attorneys' fees and court costs and two times the covered benefit that was unreasonably delayed or denied.

111. As described herein, Travelers' acts and omissions violated C.R.S. § 10-3-1115(2).

112. The Lindsays therefore bring this claim to recover damages awardable under C.R.S. § 10-3-1116, separate from and in addition to those remedies and damages available under any other applicable claims for relief.

### SIXTH CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing – Defendant Travelers)

113. Plaintiffs incorporate the above allegations as if fully set forth herein.

114. Under Colorado law, insurers are required to "be at all times actuated by good faith in everything pertaining" to providing insurance to the public. C.R.S. §10-1-101.

115. Travelers failed to perform a reasonable investigation of the fire loss, failed to promptly respond to and pay benefits under the Lindsays' ALE claim, and did not accurately reform the Policy as requested by the Lindsays, despite its promise to do so.

116. Travelers at all times owed to the Lindsays a duty of good faith and fair dealing.

117. Travelers' actions and inactions, as more fully described above, was a breach of this duty.

118. By its actions and inactions, Travelers engaged in one or more of the following acts, some of which are considered Unfair Claim Settlement Practices, pursuant to C.R.S. §10-3-1104(1)(h):

    a. placing the insurer's interests over those of the insured;

    b. not attempting in good faith to effectuate prompt, fair and equitable settlement of the claim;

    c. failing to conduct a reasonable investigation;

    d. disregarding factual information provided by credible sources in the preparation of the scope of loss and estimate;

    e. failing to act reasonably in the adjustment and resolution of the claim; and

    f. unreasonably refusing to accurately reform the Policy.

119. The above-described actions and inactions of Travelers show that it has acted unreasonably toward the Lindsays.

120. Travelers knew that this conduct was unreasonable, or recklessly disregarded the fact that its conduct was unreasonable.

121. As a direct and proximate result of Travelers' unreasonable conduct, the Lindsays have suffered economic losses and damages, emotional distress, frustration, and inconvenience, in amounts to be proved at trial.

**WHEREFORE**, Plaintiffs Erin Lindsay and Christopher Lindsay respectfully request that judgment be entered in their favor and against Defendants The Travelers Home and Marine Insurance Company and Geico Insurance Agency, LLC, for the following:

    a. Compensatory economic and non-economic damages in amounts to be proved at trial;

    b. For reformation of the Policy to reflect coverage limits based on the accurate as/was-built specifications of the Home.

    c.    All remedies available to Plaintiffs as first-party claimants under C.R.S. § 10-3-1115 and 1116;

    d.    For reasonable attorneys' fees, costs, and expenses incurred herein; and

    e.    For all pre- and post-judgment interest, as permitted by law.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 26th day of April, 2023.

Respectfully submitted,

**LEVIN SITCOFF WANEKA PC**

*s/Susan Minamizono*
Bradley A. Levin
Susan S. Minamizono
*Attorneys for Plaintiffs*

Plaintiffs' Address:
814 Trail Ridge Dr.
Louisville, CO 80027

14