IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01413-NYW-STV

ERIN LINDSAY; and
CHRISTOPHER LINDSAY,

        Plaintiffs/Counterclaim Defendants,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,

        Defendant/Counterclaim Plaintiff,

GEICO INSURANCE AGENCY, LLC,

        Defendant.

---

## DEFENDANT/COUNTERCLAIM PLAINTIFF THE TRAVELERS HOME AND MARINE INSURANCE COMPANY'S AMENDED ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIMS

---

Defendant/Counterclaim Plaintiff The Travelers Home and Marine Insurance Company ("Travelers") submits its amended answer and counterclaims:

### CERTIFICATE OF REVIEW

1.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and, on that basis, denies the same.

2.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and, on that basis, denies the same.

3.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and, on that basis, denies the same.

## PARTIES, JURISDICTION, AND VENUE

4.      Travelers admits the allegations in Paragraph 4.

5.      Travelers admits the allegations in Paragraph 5.

6.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and, on that basis, denies the same.

7.      The allegations in Paragraph 7 set forth a legal conclusion to which no response is required. To the extent a response is deemed necessary, Travelers states that this action has been removed to the United States District Court, District of Colorado, which has jurisdiction over this matter.

8.      The allegations in Paragraph 8 set forth a legal conclusion to which no response is required. To the extent a response is deemed necessary, Travelers states that this action has been removed to the United States District Court, District of Colorado, where venue is proper. Travelers denies any remaining allegations in Paragraph 8, including that any torts were committed in Boulder County.

## GENERAL ALLEGATIONS

9.      Travelers admits Plaintiffs purchased the house located at 826 Trail Ridge Drive, Louisville, Colorado 80027 before the Marshall Fire. Travelers denies that the house was a "custom-built house." It was built by a non-custom homebuilder known as McStain. The Lindsays' current custom home-builder, Wood Brothers Homes, LLC has confirmed that the Lindsays' pre-Marshall Fire house was not a custom home. At deposition, Justin Wood testified that McStain is not a custom-home builder. (Wood Dep. 22:3–5.) He also testified that he did not think the Lindsays' prior home that was burned in the Marshall Fire was a custom home. (Wood

2

Dep. 45:16–46:17.) Moreover, Travelers does not admit that the house was 4,072 square feet.

Evidence in discovery regarding that issue is unclear and potentially conflicting. For that reason,

Travelers denies that allegation.

10.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 10, and, on that basis, denies the same.

11.    Travelers admits the allegations in Paragraph 11.

12.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 12, and, on that basis, denies the same.

13.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 13, and, on that basis, denies the same.

14.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 14, and, on that basis, denies the same.

15.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 15, and, on that basis, denies the same.

16.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 16, and, on that basis, denies the same.

17.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 17, and, on that basis, denies the same.

18.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 18, and, on that basis, denies the same.

19.    Travelers lacks information sufficient to form a belief as to the truth of the

allegations in Paragraph 19, and, on that basis, denies the same.

DN 8641152.5

20.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and, on that basis, denies the same.

21.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and, on that basis, denies the same.

22.      Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and, on that basis, denies the same.

23.      Travelers admits the allegations in Paragraph 23.

24.      Travelers admits the allegations in Paragraph 24.

25.      The allegations in Paragraph 25 refer to the Policy, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 25 that are inconsistent with or mischaracterize the Policy.

26.      Travelers admits the allegations in Paragraph 26.

27.      Travelers admits the allegations in Paragraph 27.

28.      Travelers denies the allegations in Paragraph 28.

29.      Travelers denies the allegations in Paragraph 29.

30.      Travelers denies the allegations in Paragraph 30.

31.      Travelers denies the allegations in Paragraph 31.

32.      Travelers admits Plaintiffs provided certain photos and drawings of the home to Travelers. Travelers denies any remaining allegations in Paragraph 32.

33.      Travelers denies the allegations in Paragraph 33.

34.      The allegations in Paragraph 34 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 34 that are inconsistent with

4

or mischaracterize the estimate.

35.     The allegations in Paragraph 35 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 35 that are inconsistent with or mischaracterize the estimate.

36.     Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and, on that basis, denies the same.

37.     Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 37, and, on that basis, denies the same.

38.     Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and, on that basis, denies the same.

39.     The allegations in Paragraph 39 refer to correspondence, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 39 that are inconsistent with or mischaracterize the correspondence.

40.     The allegations in Paragraph 40 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 40 that are inconsistent with or mischaracterize the estimate.

41.     Travelers denies the allegations in Paragraph 41.

42.     Travelers admits that Plaintiffs spoke to Jennifer Ruggiero regarding their concerns arising from their claim. Travelers denies the remaining allegations in Paragraph 42.

43.     Travelers admits that it reformed Plaintiffs' applicable limit of insurance and that Aaron Stone completed a phone call with Erin Lindsay in which he informed her about "reformed policy limits." Travelers denies the remaining allegations in Paragraph 43.

DN 8641152.5

44.    Travelers denies the allegations in Paragraph 44.

45.    Travelers admits that Michael Gatti spoke with Plaintiffs regarding their claim and expressed certain views regarding their claim and that Mr. Gatti listened to them and responded appropriately and respectfully. Travelers denies the remaining allegations in Paragraph 45.

46.    Travelers denies the allegations in Paragraph 46.

47.    Travelers admits that, during the claim, Plaintiffs demanded that Peter Van Riper and his manager be removed from working on the subject claim. Travelers admits that it did not acquiesce to Plaintiffs' demand in this respect. Travelers denies the remaining allegations in Paragraph 47.

48.    Travelers admits that Mr. Van Riper informed Plaintiffs when he received information indicating that their limit of dwelling insurance had been increased. Travelers denies the remaining allegations in Paragraph 48.

49.    Travelers admits it engaged Sedgwick to provide construction consulting services for the subject claim. Travelers denies the remaining allegations in Paragraph 49.

50.    Travelers denies the allegations in Paragraph 50.

51.    The allegations in Paragraph 51 refer to correspondence and a scope of loss, which are written documents that speak for themselves. Travelers denies any allegations in Paragraph 51 that are inconsistent with or mischaracterize the written documents.

52.    Travelers lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and, on that basis, denies the same.

53.    The allegations in Paragraph 53 refer to an estimate, which is a written document

DN 8641152.5

that speaks for itself. Travelers denies any allegations in Paragraph 53 that are inconsistent with or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 53.

54.     Paragraph 54 partially and selectively quotes from a communication from Mr. Van Riper. Travelers denies that Paragraph 54 accurately and fairly summarizes the entire communication or its context. Travelers denies the remaining allegations in Paragraph 54.

55.     Paragraph 55 partially and selectively paraphrases from a communication from Mr. Van Riper, which stated in part, "please contact your agent with any remaining concerns you may still have about such limits. We will provide you with any updates regarding our estimate review." Travelers denies the remaining allegations in Paragraph 55, if any.

56.     Travelers admits that Mr. Van Riper communicated with Christopher Lindsay that Travelers would review his estimate and contact underwriting, if needed, to review. He also conveyed that he would let Mr. Lindsay know if Travelers needed to review with the estimator. Travelers denies the remaining allegations in Paragraph 56.

57.     The allegations in Paragraph 57 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 57 that are inconsistent with or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 57.

58.     The allegations in Paragraph 58 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 58 that are inconsistent with or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 58.

59.     The allegations in Paragraph 59 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 59 that are inconsistent with or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 59.

DN 8641152.5

60.     The allegations in Paragraph 60 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 60 that are inconsistent with or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 60.

61.     Travelers admits that Plaintiffs on multiple occasions communicated with Travelers regarding the scope of loss for the subject claim. Travelers denies the remaining allegations in Paragraph 61.

62.     Travelers denies the allegations in Paragraph 62, in part because of its vagueness.

63.     The allegations in Paragraph 63 refer to correspondence, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 63 that are inconsistent with or mischaracterize the correspondence.

64.     The allegations in Paragraph 64 refer to correspondence, an estimate, and a scope of loss, which are written documents that speak for themselves. Travelers denies any allegations in Paragraph 64 that are inconsistent with or mischaracterize the written documents.

65.     The allegations in Paragraph 65 refer to correspondence, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 65 that are inconsistent with or mischaracterize the correspondence.

66.     Travelers denies the allegations in Paragraph 66.

67.     The allegations in Paragraph 67 refer to correspondence, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 67 that are inconsistent with or mischaracterize the correspondence.

68.     The allegations in Paragraph 68 refer to an estimate, which is a written document that speaks for itself. Travelers denies any allegations in Paragraph 68 that are inconsistent with

DN 8641152.5

or mischaracterize the estimate. Travelers denies the remaining allegations in Paragraph 68.

69.    Travelers admits the allegations in Paragraph 69.

70.    Travelers denies the allegations in Paragraph 70.

71.    Travelers denies the allegations in Paragraph 71.

72.    Travelers denies the allegations in Paragraph 72.

73.    Travelers denies the allegations in Paragraph 73.

74.    Travelers denies the allegations in Paragraph 74.

75.    Travelers denies the allegations in Paragraph 75.

76.    Travelers denies the allegations in Paragraph 76.

77.    Travelers denies the allegations in Paragraph 77.

**FIRST CLAIM FOR RELIEF**
**(Negligence – Against Defendant Geico)**

78.    Travelers incorporates the prior and below paragraphs as if set forth in full.

79.    The allegations in Paragraph 79 are directed towards another party and therefore Travelers is not required to respond. To the extent a response is deemed necessary, Travelers denies the allegations in Paragraph 79.

80.    The allegations in Paragraph 80 are directed towards another party and therefore Travelers is not required to respond. To the extent a response is deemed necessary, Travelers denies the allegations in Paragraph 80.

81.    The allegations in Paragraph 81 are directed towards another party and therefore Travelers is not required to respond. To the extent a response is deemed necessary, Travelers denies the allegations in Paragraph 81.

82.    The allegations in Paragraph 82 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 82.

83.    The allegations in Paragraph 83 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 83.

84.    The allegations in Paragraph 84 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 84.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against Defendant Geico)

85.    Travelers incorporates the prior and below paragraphs as if set forth in full.

86.    The allegations in Paragraph 86 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 86.

87.    The allegations in Paragraph 87 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 87.

88.    The allegations in Paragraph 88 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 88.

89.    The allegations in Paragraph 89 are directed towards another party and therefore

Travelers is not required to respond. To the extent a response is deemed necessary, Travelers

denies the allegations in Paragraph 89.

DN 8641152.5

90.     The allegations in Paragraph 90 are directed towards another party and therefore Travelers is not required to respond. To the extent a response is deemed necessary, Travelers denies the allegations in Paragraph 90.

91.     The allegations in Paragraph 91 are directed towards another party and therefore Travelers is not required to respond. To the extent a response is deemed necessary, Travelers denies the allegations in Paragraph 91.

### THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against Defendant Travelers)

92.     Travelers incorporates the prior and below paragraphs as if set forth in full.

93.     Travelers denies the allegations in Paragraph 93.

94.     Travelers denies the allegations in Paragraph 94.

95.     Travelers denies the allegations in Paragraph 95.

96.     Travelers denies the allegations in Paragraph 96.

97.     Travelers denies the allegations in Paragraph 97.

98.     Travelers denies the allegations in Paragraph 98.

99.     Travelers denies the allegations in Paragraph 99.

### FOURTH CLAIM FOR RELIEF
### (Reformation of Policy – Against Defendant Travelers)

100.     Travelers incorporates the prior and below paragraphs as if set forth in full.

101.     Travelers denies that the house was severely underinsured. Travelers denies any remaining allegations in Paragraph 101.

102.     Travelers denies the allegations in Paragraph 102.

103.     Travelers denies the allegations in Paragraph 103.

DN 8641152.5

104.    Travelers denies Plaintiffs are entitled to any of the relief requested in

Paragraph 104.

## FIFTH CLAIM FOR RELIEF
### (Violation of C.R.S. §§ 10-3-1115 & 1116 – Against Defendant Travelers)

105.    Travelers incorporates the prior and below paragraphs as if set forth in full.

106.    The allegations in Paragraph 106 set forth a legal conclusion to which no response

is required. To the extent a response is deemed necessary, Travelers denies Paragraph 106 is a

complete and accurate statement of the law applicable to this matter or this claim.

107.    The allegations in Paragraph 107 set forth a legal conclusion to which no response

is required.

108.    Travelers admits the allegations in Paragraph 108.

109.    Travelers denies the allegations in Paragraph 109.

110.    The allegations in Paragraph 110 set forth a legal conclusion to which no response

is required. To the extent a response is deemed necessary, Travelers denies the allegations in

Paragraph 110.

111.    Travelers denies the allegations in Paragraph 111.

112.    Travelers denies Plaintiffs are entitled to any of the relief requested in

Paragraph 112.

## SIXTH CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing – Against Defendant Travelers)

113.    Travelers incorporates the prior and below paragraphs as if set forth in full.

114.    The allegations in Paragraph 114 set forth a legal conclusion to which no response

is required. To the extent a response is deemed necessary, Travelers denies Paragraph 114 is a

DN 8641152.5

complete and accurate statement of the law applicable to this matter or this claim.

115.    Travelers denies the allegations in Paragraph 115.

116.    The allegations in Paragraph 116 set forth a legal conclusion to which no response is required. To the extent a response is deemed necessary, Travelers denies Paragraph 116 is a complete and accurate statement of the law applicable to this matter or this claim. For example, Paragraph 116 incorrectly alleges Travelers owed "at all times" certain duties to Plaintiffs, including necessarily a time period when Travelers did not insure their property.

117.    Travelers denies the allegations in Paragraph 117.

118.    Travelers denies the allegations in Paragraph 118, including subparagraphs a through f.

119.    Travelers denies the allegations in Paragraph 119.

120.    Travelers denies the allegations in Paragraph 120.

121.    Travelers denies the allegations in Paragraph 121.

**RESPONSE TO PLAINTIFFS' WHEREFORE CLAUSE**

Travelers denies that Plaintiffs are entitled to the relief requested in the WHEREFORE clause or to any relief whatsoever, and specifically denies all requests for relief contained in their complaint.

**GENERAL DENIAL**

Each and every allegation not expressly admitted is denied.

**AFFIRMATIVE AND OTHER DEFENSES**

Defendant Travelers asserts the following affirmative and other defenses:

1.    Plaintiffs' complaint, in whole or in part, fails to state a claim upon which relief

13

can be granted.

2.      Plaintiffs' alleged injuries, if any, may be due to conditions, causes, damage, or circumstances that are unrelated to the subject incident.

3.      Plaintiffs have failed to mitigate damages, if any, as required by law.

4.      Plaintiffs' claims may be barred or limited by equitable defenses, including, but not limited to, doctrines of waiver, estoppel, laches, and unclean hands, on account of Plaintiffs' conduct in connection with the subject matter of their claims.

5.      Plaintiffs' claims are barred or limited by offset/setoff, recoupment, and/or the doctrine of payment.

6.      Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations or repose.

7.      Plaintiffs' claims are barred by their failure to comply with one or more conditions precedent to recovery of the benefits and/or remedies they seek.

8.      Plaintiffs' claims for damages or losses, if any, are barred or limited by the provisions of C.R.S. § 13-21-102.5, limiting recovery of damages for non-economic loss or injury.

9.      Plaintiffs' claims are barred or reduced on account of the terms, provisions, limitations, and/or exclusions in the Policy. Specifically, the Policy contains the following provision:

> **18. Concealment or Fraud**. We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:
>
>     a. Intentionally concealed or misrepresented any material fact or circumstance;

14

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

The above provision is the Policy's "Concealment Clause." At various times, one or both of
Plaintiffs violated the Concealment Clause in multiple ways, as follows:

### DEBRIS REMOVAL

a.    The Policy includes debris removal coverage. Plaintiffs opted out of the
government's debris removal program associated with the Marshall Fire, which would
have removed debris at no separate charge to Plaintiffs but would have enabled the
government to collect from Travelers the cost of debris removal up to the applicable limit
of insurance. Plaintiffs opted to hire their builder to perform the debris removal work and
to collect debris removal Policy benefits from Travelers directly.

b.    Plaintiffs hired their home builder, Wood Brothers Builders, LLC ("Wood
Brothers"), including contracting with Wood Brothers to perform debris removal at their
Property. On March 4, 2022, Mr. Lindsay informed Wood Brothers that the Policy
provided "$31k for debris removal." Plaintiffs and Wood Brothers then entered into a
contract by which they agreed Wood Brothers would charge exactly that amount—
$31,000—as the total cost of debris removal.

c.    Plaintiffs did not intend to leave any debris removal work undone when
they entered the debris removal contract because, having exhausted the limit of debris
removal coverage Plaintiffs then believed the Policy provided, leaving debris removal
work undone would have required them to pay out of their own pockets to finish that

15

work. Plaintiffs had no intention of doing that, especially not after opting out of the government's debris removal program.

        d.      Wood Brothers' debris removal subcontractor Gorilla Demolition, LLC ("Gorilla") completed the debris removal work no later than April 22, 2022, and around that date Wood Brothers invoiced Plaintiffs the agreed-upon amount of $31,000 for that work. Plaintiffs paid Wood Brothers the invoiced amount—$31,000—likely within ten days of billing.

        e.      The cost of the debris removal is shown in Gorilla's invoice to Wood Brothers, which was produced during this lawsuit pursuant to third-party discovery. Gorilla charged only $18,359 for debris removal. The majority of the markup of Gorilla's invoice to from $18,359 to $31,000 was simply to get all money believed to be available under the Policy by opting out of the government's debris removal program and then overcharging Travelers for debris removal.

        f.      Plaintiffs could not have overcharged Travelers for debris removal work in this manner had they relied on the government's debris removal program. Under that program, the government would have had someone do the debris removal work, and Travelers would have reimbursed the government with no opportunity for Plaintiffs to mark up the debris removal invoice above actual cost.

        g.      Travelers more than doubled the Policy's dwelling limits in April 2022. The increase in limits had the effect of more than doubling the amount of Policy benefits potentially available to pay for debris removal. In the end, $64,119.22 became available for that purpose. After more money became available for debris removal benefits under

16

DN 8641152.5

the Policy, Plaintiffs changed their conduct.

h.    On June 1, 2022, Mr. Van Riper asked Mr. Lindsay: "Before I issue a supplemental payment [based on a new estimate], can you please confirm whether or not you will be going through the FEMA program for debris removal?"

i.    At that time, but unbeknownst to Mr. Van Riper or Travelers, the debris removal contract with Wood Brothers had been performed, invoiced, and paid. Mr. Van Riper asked the question to determine whether debris removal money needed to be included in a supplemental payment because debris removal had been handled by Plaintiffs or their representatives, or whether it should not be included in a supplemental payment because FEMA had handled or would be handling debris removal. In response to Mr. Van Riper's June 1, 2022, email, Mr. Lindsay responded the same day that Plaintiffs "are not participating in the FEMA debris removal program." Mr. Lindsay did not disclose to Travelers at that time that Wood Brothers had already issued an invoice (dated over a month earlier) for the total cost of debris removal.

j.    Mr. Van Riper responded the same day, asking, "Regarding the debris removal, do you have a copy of an executed work authorization for the debris?"

k.    In fact, Plaintiffs did have documentation of the nature requested by Mr. Van Riper: namely, a written contract with and invoice from Wood Brothers and emails exchanged with Wood Brothers reflecting that the contract price had been set for the purpose of exhausting all debris removal coverage believed in March 2022 to be available and noting that Plaintiffs could use the invoice "for insurance reimbursement."

l.    Plaintiffs did not disclose any of this documentation to Travelers and

17

intentionally concealed it at the time of Mr. Van Riper's June 1, 2022, inquiry.

      m.     After Travelers increased the debris removal limit and potentially made higher limits available for that work, Plaintiffs began claiming that the debris removal work done by Wood Brothers—which Mr. Lindsay previously indicated he had spent all of his debris removal insurance benefits on—was incomplete. On June 2, 2022, Mr. Lindsay responded to Mr. Van Riper as follows: "The debris removal is not yet completed. Once it is, I can get you the invoice." In fact, Wood Brothers had already issued an invoice in April 2022 for the total cost of the debris removal work—$31,000— and Plaintiffs had already paid it. Mr. Lindsay did not disclose its existence at that time and instead intentionally concealed it.

      n.     Compounding this conduct, Mr. Lindsay sent a January 5, 2023, email to Mr. Van Riper, with a secret copy to his counsel in this lawsuit, attaching the Wood Brothers debris removal invoice for $31,000. Mr. Lindsay represented to Travelers that "the debris removal" described in the $31,000 invoice was for "partial work," stating "There is still work to be done that we are working with" the "builder to arrange that." Mr. Lindsay said this after the limits were increased and thus with the expectation that more than the previous debris removal limits could be recovered from Travelers.

      o.     Plaintiffs have not provided any documentation showing they owe more than $31,000 to Wood Brothers or anyone else for debris removal work, much less that any such additional charges are warranted.

      p.     Notwithstanding this, months after Travelers increased the debris removal limit of insurance well above $31,000, Plaintiffs submitted in August 2022 an estimate

18

they prepared with assistance from Glimmer Claim Services, which is affiliated with

Wood Brothers. The estimate purported to itemize $64,833.72 in debris

removal/demolition costs, months after Plaintiffs had already been invoiced $31,000 by

none other than Wood Brothers for the total cost of all debris removal. To this day,

Plaintiffs' own purported "accurate" "scope of loss" still includes this inflated and

inaccurate amount. Because Plaintiffs knew they had entered into a debris removal

contract with Wood Brothers that was invoiced for $31,000, and because they knew that

amount represented the total cost of the work, Plaintiffs also knew that the Glimmer

estimate—which they claim to have spent many hours studying and editing in detail—

inflated and overstated the actual total cost of debris removal.

      q.    At least one of the charges in the Glimmer estimate associated with debris

removal is a false and fraudulent charge. The Glimmer estimate charges thousands of

dollars to rent a water truck and pay an operator. As part of its investigation, Travelers

subpoenaed Gorilla to determine whether a water truck was actually rented. The owner of

Gorilla, Ms. Ashley Ekwall, responded to the subpoena and also confirmed Gorilla did

not use a water truck for the debris removal. Ms. Ekwall produced documentation of

equipment rental for this debris removal project. The documentation reflects rental of a

track excavator and a skid steer for use in debris removal at eight separate properties. The

average cost for the equipment rental comes to $1,610.44 for each address. Gorilla's

documentation of equipment rental contains no invoice or paperwork for rental of a water

truck or of hiring an operator for this job.

      r.    On top of this conduct, Plaintiffs also have attempted to cause Travelers to

DN 8641152.5

pay redundant charges for still more debris removal costs, in addition to the inflated and false charge identified above. For example, the Glimmer estimate, which Plaintiffs claim they reviewed and edited in detail, includes a charge to "Remove Brick veneer—High grade," "Remove Wood window—double hung" in multiple instances, and "Remove Siding trim." These estimated charges are false and impossible, given that the Marshall Fire destroyed the home, and removal of all debris from the fire (including all of these burned elements, if any remained) was charged separately. The Glimmer estimate includes other similar estimated costs that are also false.

      s.      Plaintiffs breached the Concealment Clause by their above conduct. They concealed the Wood Brothers debris removal contract from Travelers during the pertinent time period. They concealed the debris removal invoice for months, until after they had provided an estimate seeking over $60,000 in debris removal costs. They concealed the email chain with Wood Brothers, and the information within it, showing that the contract's $31,000 price for debris removal had been set based on Mr. Lindsay's determination of the debris removal policy limit in March 2022. They concealed the true cost of the debris removal work from Travelers. Mr. Lindsay then misled Travelers to believe that the cost reflected in the debris removal invoice reflected only a part of the debris removal work, when in fact it priced the total cost of such work, according to Wood Brothers' principal Justin Wood. Plaintiffs then presented an estimate for debris removal work containing a false charge for water truck rental for thousands of dollars. When Travelers asked about work-authorization documentation to do debris removal work, Mr. Lindsay concealed the true facts and provided misleading answers, while he

20

and Glimmer worked to prepare an inflated estimate of debris removal costs that, once again, aligns closely with the increased debris removal Policy limits.

t.      The information Plaintiffs concealed and misrepresented was material to Travelers. A reasonable insurer in Travelers' position would attach importance to the information Plaintiffs concealed regarding debris removal.

u.      Although reliance is not required for Travelers to assert this defense, Travelers has relied on Plaintiffs' misrepresentations and concealment regarding debris removal. Because it was deprived of the Wood Brothers debris removal contract, invoicing, and related documentation, Travelers did not know that the full cost of the debris removal work could not exceed $31,000 and has paid Plaintiffs $60,051.84 in debris removal benefits, resulting in overpayment by at least $29,051.84.

v.      Although ignorance of falsity is not required to Travelers to assert this defense, Travelers did not know the information Plaintiffs had concealed regarding debris removal at the pertinent time. Had Travelers known, it would have (i) paid less for debris removal, (ii) sought to credit overpayments to any other amounts due, or (iii) sought reimbursement of overpayments.

w.      Although scienter is not required for Travelers to assert this defense, the circumstances support it here. Plaintiffs' actions indicate that they intended to deceive and defraud Travelers by concealing the information described above and leading Travelers to believe the full cost of debris removal had not been determined in June 2022 and January 2023, so that Plaintiffs could charge over $60,000 for a debris removal project performed for less than a subcontractor cost of $20,000 and which had been

21

invoiced for $31,000. On information and belief, Plaintiffs intentionally concealed the information described above to try to pocket the difference between the increased debris removal limits of over $60,000 and the $31,000 invoiced by Wood Brothers. Such conduct is fraud and violates the Policy's Concealment Clause.

**ALTERNATIVE LIVING EXPENSES AND ALLEGED DELAY IN REBUILDING**

      a.      In this matter, Plaintiffs demanded Travelers disregard the time limitations on their alternative living expense ("ALE") coverage and effectively grant ALE coverage without a date-certain limit as to time, until Plaintiffs returned to their future house.

      b.      As a justification for deviating from the Policy's ALE coverage in this manner, Plaintiffs claimed that Travelers had caused the delays in their construction of a new house. According to Plaintiffs, Travelers' alleged failure to provide an "accurate" scope of loss—by which they meant disagreement with Plaintiffs' approximate $2,730,000 million estimate to rebuild a house they bought for $890,000—blocked or prevented them from rebuilding because, they claimed, the lack of agreement from Travelers inhibited their ability to determine a budget, obtain permits, assure their builder of payment, or sign a construction contract.

      c.      Specifically, on August 29, 2022, Mr. Lindsay emailed Mr. Van Riper and represented that Plaintiffs "cannot sign our final contract with our builder, or submit for permitting, without knowing what our budget will be for our rebuild." Mr. Lindsay stated, "We expect this," meaning the disagreement with Travelers over the amount it would pay towards a rebuild, to be "resolved before the end of September to avoid any further delays." Mr. Lindsay thus represented to Travelers that construction had been

delayed because of Travelers.

d.      On January 5, 2023, Mr. Lindsay emailed Mr. Van Riper, with a secret copy to his counsel in this lawsuit, stating that "[o]ur scope" of loss under discussion with Travelers "**continues** to **prevent** further **work** with our builder . . . ." (Emphasis added). Mr. Lindsay indicated that Travelers' disagreement with Plaintiffs' demand to increase the Policy's dwelling limits further was preventing construction of a new home because the builder required Plaintiffs to "commit to a budget and show our builder that we can **pay** for the rebuild. They will not sign **a contract** with us without that proof." (Emphasis added.) Mr. Lindsay demanded "that you please return an accurate scope of loss to us promptly **so that we can continue our rebuild**." (Emphasis added.) By these statements, Mr. Lindsay represented to Travelers that construction on a new house could not move forward without a so-called "accurate scope of loss" from Travelers, meaning Travelers had to provide the assurance of payment in the amount of Plaintiffs' own approximate $2,730,000 rebuild estimate.

e.      This was false, and Plaintiffs knew it was false. Mr. Lindsay misrepresented to Travelers that its disagreement with Plaintiffs' approximate $2,730,000 cost estimate (to rebuild a house Plaintiffs bought for $890,000 in 2015) "continue[d]" to prevent "further work" with his builder, prevented a contract from being signed, prevented permitting, and prevented him from demonstrating his ability to "pay for the rebuild."

f.      All of this was false, and Plaintiffs knew it was false.

g.      First, between August 2022 and January 2023—when Mr. Lindsay sent

23

two emails making these claims—he in fact was working with his builder. For instance, Wood Brothers sent Plaintiffs a build budget dated October 10, 2022. Not only did Mr. Lindsay know that Wood Brothers continued to perform work for Plaintiffs during the August 2022 to January 2023 time period (i.e., when Mr. Lindsay said the opposite to Travelers), Mr. Lindsay also did not disclose to Travelers the budget Wood Brothers prepared at that time, which budget tended to show the grossly inflated nature of Plaintiffs' approximate $2,730,000 estimate. On April 2, 2023, Mr. Lindsay informed his builder he hoped to "pick up again with the architects and engineering." There had been no material change in Travelers' position at that time. Rather, Plaintiffs needed to restart because Mr. Lindsay had been seeking a new job and did not have a nanny to care for his child.

h.      Second, Plaintiffs knew that Travelers' disagreement with Plaintiffs exorbitant approximate $2,730,000 estimate had not prevented them from demonstrating to their builder their ability to pay for construction. Describing its "proof of funds" policy as "very lenient with these fire victims," Wood Brothers confirmed at its principal Justin Wood's deposition that it does not require insurance to fully fund its projects and is willing to do projects where the contract price exceeds the limit of insurance on the policy for the customer. Indeed, the positions taken by Travelers that Plaintiffs claimed prevented them from demonstrating ability to pay are the same today as in January 2023. Wood Brother nevertheless agreed to build them a new house based on Plaintiffs' assurance of payment (at a contract price far less than the over $2,730,000 Plaintiffs demanded from Travelers). When Mr. Lindsay told Travelers it needed to agree to

24

Plaintiffs' estimate or Wood Brothers would not be assured of payment (and stop all

progress), Plaintiffs knew Wood Brothers did not require, and was willing to proceed

without, insurance backing. Mr. Lindsay wrote to Wood Brothers in February 2023—

only weeks after telling Travelers that its agreement was needed to assure the builder of

payment—and provided Wood Brothers his own assurance he would be able to pay for a

rebuild with his own resources (presumably including but not limited to money received

from Travelers). He told Wood Brothers he expected to receive a "large severance"

package from his employer and that he wanted to move forward with building, almost the

opposite of what he had told Travelers weeks before. At deposition, Wood Brothers'

principal Justin Wood agreed that Plaintiffs asked to move forward with the rebuild on

this basis, regardless of what happened with Travelers. Plaintiffs provided other

assurances to Wood Brothers of the same nature in the months after February 2023,

leaving no doubt they knew for a fact that Wood Brothers did not require an insurer to

fund the project at all and that Plaintiffs themselves had the resources to do so.

     i.       Third, Plaintiffs' representation that Travelers needed to change its

position regarding the dwelling limits to enable permitting of the construction project was

also false. In fact, Plaintiffs knew that, when Mr. Lindsay made that representation, they

had already signed a "Phase 1 Engagement Agreement" with Wood Brothers dated

March 11, 2022. According to Wood Brothers' principal Justin Wood, the purpose of the

agreement was "[t]o get them to permit." The "Phase 1 Engagement Agreement"

nowhere requires Travelers' participation, assurances, or anything else. Moreover,

Plaintiffs in fact obtained a building permit to construct their new house without any

25

change in Travelers' position regarding the dwelling limits or the cost to rebuild since

Mr. Lindsay's January 2023 email. In their building-permit application, Plaintiffs

informed the building department that the "Valuation" of the construction project was

"$1,500,000," far less than their exorbitant demand for a rebuild valuation of

approximately $2,730,000. While the permit application was submitted by Wood

Brothers, Plaintiffs were heavily involved in permitting and, on information and belief,

therefore knew about the valuation contained in the application. Travelers first discovered

Plaintiffs' building permit application on its own by searching public records. Plaintiffs

concealed and did not produce it timely.

j.      Fourth, Travelers' decision not to further increase Plaintiffs' dwelling

limits, and to disagree with Plaintiffs' inflated approximate $2,730,000 construction cost

estimate, did not prevent Plaintiffs from signing a contact with Wood Brothers. In fact,

they are under contract now—at a time when Travelers has maintained substantially the

same positions Mr. Lindsay criticized in his January 2023 message to Mr. Van Riper,

which Mr. Lindsay untruthfully indicated were preventing a contract from being signed.

Plaintiffs knew these representations were false.

k.      Although Plaintiffs' representations were false, Travelers did extend

Plaintiffs' ALE coverage, without conceding or agreeing to Plaintiffs' allegation that

Travelers unreasonably delayed their rebuild.

l.      Plaintiffs' untrue statements and concealment are material to the claim.

They pressured Travelers to extend ALE benefits for years after the one-year period

provided for in the Policy. As of now, Plaintiffs expect Travelers to continue funding

26

temporary housing under ALE coverage until they move into their new house, which is projected to be completed as late as August 23, 2025.

m.      Plaintiffs, not Travelers, delayed their rebuild. Contrary to their representation to Travelers in their January 2022 meeting with Mr. Van Riper that they wanted to rebuild the same home, Plaintiffs set out to build their "forever home" or dream home.

n.      The house currently under construction substantially differs from the house that existed at the time of the Marshall Fire. It is substantially better, larger, and upgraded relative to their prior home. Wood Brothers' principal Justin Wood testified at deposition that the goal for his company was not to rebuild the same house but to build something better. Wood Brothers did not even analyze the specific differences between Plaintiffs' old house and their new build.

o.      Plaintiffs took more time to complete construction of a new structure than certain of their neighbors who used the same builder and saw the same type of fire loss not due to Travelers but in part because of the substantial amount of time Plaintiffs spent researching and planning the minutest details of their "forever home."

p.      For instance, Plaintiffs explored many options for their new house that complicated and lengthened the planning and construction process. These included Plaintiffs' desire to analyze the potential for (i) later adding an elevator, (ii) wheelchair access, (iii) a geothermal heating system, (iv) a heated driveway and walkways, (v) modifications to reduce shaking of the home from wind, (vi) foundation extensions, (vii) piers underneath the retaining wall, (viii) multiple types of upgraded roofs,

DN 8641152.5

(ix) sound insulation and absorption in their studio and crawlspace, (x) sound mitigation around the mechanical closet, (xi) treating the garage as a conditioned space, and (xii) many more design and specification details too numerous to describe here. As to many of these, and many more, Plaintiffs spent substantial time asking questions of their design professionals and builder, researching building materials, and exploring with professionals numerous permutations of designs and specifications, both aesthetic and functional. Plaintiffs continued to explore design changes at least through November 2023.

      q.     Plaintiffs lengthened the time to rebuild because of the time they took to build their perfect "forever home." They have charged Travelers with unnecessary ALE benefits while they have done so, and they have justified extending their temporary housing benefits by falsely blaming Travelers for supposedly delaying their project.

      r.     Plaintiffs concealed and misrepresented these material facts intentionally.

      s.     The facts Plaintiffs concealed or misrepresented that are identified above were material to the claim because they directly affected Plaintiffs' demands for extensions of ALE benefits beyond the one-year term they originally purchased.

      t.     Travelers did extend Plaintiffs' ALE beyond what the Policy provided after Plaintiffs asserted that Travelers had prevented them from rebuilding.

      u.     Travelers did not know the true facts Plaintiffs had concealed regarding these issues when it agree to extend Plaintiffs' ALE benefits beyond what the Policy provided.

**DWELLING COVERAGE**

DN 8641152.5

a.      Plaintiffs have also violated the Concealment Clause by intentionally "padding" or grossly inflating their insurance claim for the cost of rebuilding their original home. *Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 892 (Colo. 1992).

b.      In 2015, Plaintiffs paid $890,000 to purchase their original home and the land on which it sat. During claim adjustment, Plaintiff asserted the cost of rebuilding the house would be $2,731,440.74, based on an estimate they created with assistance from Glimmer Claim Services.

c.      During claim adjustment, Plaintiffs demanded Travelers (i) pay 100% of their dwelling benefits, without being required to rebuild, contrary to the Policy's requirements, and also (ii) reform the dwelling limit to match their facially exorbitant and inflated building-cost estimate. On February 22, 2022, Mr. Lindsay emailed Mr. Van Riper and sought payment of extended replacement cost benefits without being required to incur any actual costs before reimbursement. Mr. Lindsay provided a link to Division of Insurance Bulletin No. B-5.44 (Feb. 8, 2022), entitled, "Concerning the Communication of Certain Coverage Limits by Homeowners' Insurance Companies to Policyholders that Experienced a Loss Resulting from the Boulder County Fires." Mr. Lindsay asked, "When can we expect to receive a check for the additional 25% listed in our policy?"

d.      The Policy requires Plaintiffs to incur the cost of rebuilding to receive replacement cost coverage, and the bulletin did not require otherwise.

e.      The estimate Plaintiffs prepared with Glimmer's help is dated August 9,

29

2022. On information and belief, that estimate contains many intentional misrepresentations and overcharges.

      f.      For example, Plaintiffs' August 2022 estimate redundantly charges for debris removal. In addition to including an entire demolition section that covers all debris removal work, Plaintiffs' estimate also includes charges to remove items that had been destroyed in the fire and that at most constituted debris to be removed. These improper charges include the cost to remove 164 square feet of brick veneer and to remove four windows and 61 linear feet of siding at the east elevation, among others.

      g.      As another example, Plaintiffs' August 2022 estimate includes charges for two 164-square foot veneers—one brick, another stone—to be installed on the east elevation. This is improper, because only one such veneer could be installed and the original home could have had only one veneer at that location. Plaintiffs did the same on the north elevation, charging for two veneers (one brick, another stone), where only one should be constructed. Plaintiffs did the same thing with the upper roof, charging for two ridge caps, where only one ridge cap existed.

      h.      Plaintiffs and Glimmer actually knew that the original house did not have two upper-roof ridge caps, two veneers on the east elevation, and two veneers on the north elevation. They also knew the original home had been burned down in the fire and there was no need to charge extra, in addition to debris removal, to remove destroyed items.

      i.      Moreover, Plaintiffs' rebuild estimate from August 2022 misrepresents the cost to rebuild when compared with actual construction costs known to Plaintiffs. The

DN 8641152.5

estimate dramatically exceeds the cost valuation on Plaintiffs' building permit application to construct a new, improved, upgraded house. Plaintiffs submitted to the building department a permit application valuing the construction of their new, superior, upgraded "forever home" at $1,500,000—over $1,000,000 less than the amount they demanded from Travelers to rebuild their old house. Plaintiffs knew of the construction value listed on their permit documentation and continued to seek over $2,700,000 in dwelling limits from Travelers after they knew this, without timely disclosing these facts to Travelers, and concealing from Travelers the construction valuation figures included in the permit application. Wood Brothers' principal, Justin Wood, testified at deposition that the $1,500,000 cost valuation in Plaintiffs' permit application (again, to build an upgraded house), plus an additional 10% for overhead and 10% for profit, would yield a rebuild cost of $1,800,000, which is almost $1,000,000 *less* than Plaintiffs' exorbitantly inflated estimate to rebuild their original house.

      j.      Plaintiffs also knew from Wood Brothers' October 2022 proposed cost estimate that their upgraded "forever home" would cost hundreds of thousands of dollars less than the approximate $2,730,000 in dwelling limits they demanded from Travelers. At deposition, Wood Brothers' principal Justin Wood testified he knew as of October 10, 2022, that Plaintiffs' significantly upgraded, planned new house was "never going to cost $2.73 million" to build, as follows:

> Q. Okay. And your estimate, Exhibit 39, page LINDSAY 12872, dated October 10, 2022, turned out to be pretty accurate, right?
>
> A. They usually are pretty close.

DN 8641152.5

Q. Yeah. **You knew as of October 10, 2022, it was never going
to cost $2.73 million to rebuild the new home that the Lindsays
wanted to build, correct?**

**A. I knew that.**

Q. Yeah, and you provided or your company provided to the
Lindsays a copy of Exhibit 39, the build estimate, page LINDSAY
12872, correct?

A. Correct.

Q. And you agree there's **a pretty big difference between $2.172
million and $2.73 million**, **right?**

**A. I think there's a big difference.**

(Emphasis added.)

k.       Plaintiffs also knew this because they received Wood Brothers' budget

around October 2022. But they continued to misrepresent the cost of rebuilding to

Travelers by claiming it was approximately $2,730,000. At the same time, Plaintiffs

concealed, and did not disclose to Travelers, Wood Brothers' substantially smaller budget

to construct an upgraded and superior home.

l.       Plaintiffs' August 2022 estimate is unreliable and intentionally

misrepresents the cost of rebuilding the house.

m.       Plaintiffs' intentional misrepresentations and concealments described

above were material to the claim. Travelers attaches importance to such information and

to Plaintiffs' representations regarding such information.

n.       Further, other limits of insurance in the Policy are tied to the dwelling

limits. Had Plaintiffs succeeded in causing Travelers to increase the dwelling limit to

approximately $2,730,000, it would have substantially increased many other limits and

DN 8641152.5

potentially triggered advances under other coverages far above Plaintiffs' actual fire-related loss.

## PERSONAL PROPERTY/CONTENTS COVERAGE

a.      During pre-suit claim handling, Plaintiffs repeatedly pressured Travelers to pay 100% of their personal property/contents limit without providing an inventory itemizing their personal property, as required by the Policy. On February 15, 2022, Mr. Lindsay claimed to Travelers that their neighbors were "getting full payouts" of their contents coverage "without having to submit an inventory." He asked, "Is Travelers remaining competitive by following suit?" On February 22, 2022, Mr. Lindsay emailed Mr. Van Riper and stated, "I'd like you to waive the requirement that we itemize and value each individual item." He said, "in theory, we are owed the full amount of our Contents insurance limits."

b.      To date, Travelers has paid Plaintiffs $538,617 in personal property/contents benefits.

c.      On information and belief, Plaintiffs did not lose in the Marshall Fire personal property valued at $538,617.

d.      On information and belief, Travelers has overpaid Plaintiffs for their personal property/contents loss.

e.      Travelers has requested on multiple occasions that Plaintiffs complete an inventory of their lost personal property, as required by the Policy conditions. For instance, on February 16, 2022, regarding Plaintiffs' contents claim, claim professional Peter Van Riper emailed Mr. Lindsay had told him that the "next step is for you to submit

33

your contents inventory." On February 22, 2022, Mr. Van Riper emailed Mr. Lindsay and told him, "[b]ased on the policy, Travelers requires that the inventory be submitted so that we can complete our evaluation of the claim." On May 18, 2022, claim professional Nikki White again requested an inventory from Plaintiffs, including "any and all supporting documentation, such as: pre-loss photographs, receipts, invoices, appraisals, proof of online purchases etc."

      f.      Completing such an inventory and providing such supporting documentation would inform Travelers whether it has overpaid Plaintiffs' personal property/contents loss.

      g.      Throughout the claim process, Plaintiffs asserted Travelers should pay them more for their personal property loss. They also initially demanded in discovery in this case over $500,000 in connection with their personal property-based claims.

      h.      After Travelers further asked Plaintiffs for the information required on an inventory, Plaintiffs reversed course and now claim to have dropped their personal property/contents claim and are concealing information that would be provided on an inventory. To this date, Plaintiffs have not documented on an inventory a single lost item of personal property.

      i.      On information and belief, Plaintiffs have changed course, after spending substantial time working to prepare their personal property/contents inventory and asking Travelers numerous questions about such a claim, because they have realized that Travelers overpaid the personal property/contents claim. On information and belief, Plaintiffs are concealing the evidence required to be included in an inventory to prevent

34

Travelers from obtaining a credit/offset for overpayments on this claim, or from

recovering back any such overpayments.

        j.      Plaintiffs' concealment conduct in this regard is intentional.

        k.      The information Plaintiffs are concealing is material. That information

would likely entitle Travelers to a credit/offset or to reimbursement.

        l.      The Concealment Clause vitiates coverage for Plaintiffs' claims.

Travelers reserves the right to assert any and all other defenses, as set forth in the Federal

Rules of Civil Procedure, that investigation, discovery, or trial may reveal to be applicable.

## JURY DEMAND

Travelers requests a trial before a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Travelers respectfully requests that this Court:

1. Enter judgment against Plaintiffs and in favor of Travelers;

2. Dismiss Plaintiffs' claims with prejudice;

3. Award Travelers all costs and attorneys' fees permitted by applicable law; and

4. Order any such further relief that this Court may determine is proper.

DN 8641152.5

## TRAVELERS' COUNTERCLAIMS

### PARTIES

1.      Counterclaimant Travelers is incorporated under the laws of Connecticut with its

principal place of business in Connecticut.

2.      Counterclaim Defendants Christopher Lindsay and Erin Lindsay (the "Lindsays")

are natural persons who are citizens of Colorado.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on

complete diversity of citizenship and the amount in controversy exceeding $75,000.

4.      Venue is proper under 28 U.S.C. § 1391 because the Lindsays are located in this

judicial district, because the insurance policy that is the subject of this action was issued or

delivered in this judicial district, or because a substantial part of the events giving rise to this

action occurred in this judicial district.

### FIRST COUNTERCLAIM
### (Declaratory Judgment That Travelers Is Not Obligated to Pay Any Additional Coverage Amounts to the Lindsays)

5.      Travelers incorporates by reference the paragraphs above as if set forth in full in

this paragraph.

6.      Travelers incorporates by reference the averments above in support of its ninth

defense.

7.      On December 30, 2021, the Marshall Fire destroyed the Lindsays' dwelling

located at 826 Trail Ridge, Louisville, Colorado (the "Property").

8.      Travelers issued policy number 994039763-1 to Erin A. Lindsay and Christopher

36

DN 8641152.5

J. Lindsay (the "Policy"). The Policy was in effect during the policy year from June 4, 2021, to

June 4, 2022, and, at the time it was issued, provided certain coverage to the Lindsays for the

Property, subject to all of the Policy's terms, conditions, provisions, limitations, and exclusions.

9.      The Lindsays' submitted a claim to Travelers following the Marshall Fire for the

loss they sustained as a result (the "Claim").

10.     Travelers has paid monetary benefits to the Lindsays for the Claim.

11.     An actual and justiciable controversy has arisen between Travelers, on the one

hand, and the Lindsays, on the other hand, concerning whether Travelers owes any obligation

under the Policy to pay any further amounts with respect to the Claim.

12.     Declaratory relief is requested pursuant to 28 U.S.C. § 2201 and Federal Rule of

Civil Procedure 57. This Court has power and jurisdiction to declare and adjudicate the rights

and other legal relationships of all parties with respect to the issues raised by this pleading.

13.     The Lindsays allege Travelers owes them additional benefits for the Claim.

14.     Due to the circumstances described above with respect to Travelers' ninth

defense, Travelers is not obligated to pay any further insurance benefits to the Lindsays for the

Claim.

15.     The Policy does not permit the Lindsays to maintain claims against Travelers

unless they have fully complied with the terms of the Policy. Further, pursuant to the

Concealment Clause, the Policy provides that the Lindsays are not entitled to recover benefits for

any loss if they or their agents concealed or misrepresented any material fact or committed fraud.

16.     As set forth above in connection with Travelers' ninth defense, the Lindsays have

not complied with the terms of the Policy and have violated the Concealment Clause.

DN 8641152.5

17.      As a result of the Policy noncompliance and misconduct described in in support of Travelers' ninth defense above, the Lindsays' continued maintenance of the Claim is improper and not permitted by law.

18.      As a result of these facts, Travelers has no obligation to pay any further benefits or money to the Lindsays for the Claim.

19.      The Court should enter a judgment declaring that Travelers owes no obligation to pay any further benefits or money to the Lindsays for the Claim.

## SECOND COUNTERCLAIM
### (Declaratory Judgment That Travelers Is Entitled to Recover All Amounts Paid to the Lindsays, or Alternatively, to Recover Overpayments)

20.      Travelers incorporates by reference the paragraphs above as if set forth in full in this paragraph.

21.      An actual and justiciable controversy has arisen between Travelers, on the one hand, and the Lindsays, on the other hand, concerning whether—as a result of the Lindsays' concealment and misrepresentations of material facts and fraud—Travelers is entitled to recover from the Lindsays all amounts Travelers paid Plaintiffs under the Claim.

22.      Declaratory relief is requested pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. This Court has power and jurisdiction to declare and adjudicate the rights and other legal relationships of all parties with respect to the issues raised by this pleading.

23.      The Policy does not permit the Lindsays to retain monies paid by Travelers unless they have fully complied with the terms of the Policy. Further, pursuant to the Concealment Clause, the Policy provides that the Lindsays are not entitled to recover benefits for any loss if they or their agents concealed or misrepresented any material fact or committed fraud.

38

24.     As set forth above in connection with Travelers' ninth defense, the Lindsays have not complied with the terms of the Policy and have violated the Concealment Clause.

25.     As a result of the Policy noncompliance and misconduct described in in support of Travelers' ninth defense above, coverage is vitiated, and the Lindsays must return to Travelers all amounts Travelers paid under the Claim.

26.     The Court should enter a judgment declaring that the Lindsays must return to Travelers paid under the Claim.

27.     Alternatively, the Court should enter a judgment declaring that the Lindsays must return to Travelers all amounts Travelers paid the Lindsays in excess of benefits due and owing for debris removal, personal property/contents losses, and ALE.

## THIRD COUNTERCLAIM
### (Breach of Contract)

28.     Travelers incorporates by reference the paragraphs above as if set forth in full in this paragraph.

29.     Under Colorado law, a party attempting to recover a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

30.     The Policy Travelers issued to the Lindsays was a valid contract between the parties.

31.     At all times, Travelers fulfilled its obligations under the Policy.

32.     Due to the circumstances described above in Travelers' ninth defense, Travelers is

39

entitled to reimbursement and recoupment of all amounts paid to the Lindsays in connection with the Claim.

33.    As alleged above, the Policy, among other requirements, contains the Concealment Clause mandating that the Lindsays would not conceal or misrepresent any material fact or commit fraud and vitiating coverage in the event of any such concealment, misrepresentation, or fraud.

34.    The Lindsays breached the Concealment Clause by the conduct described above Travelers' ninth defense.

35.    The Lindsays' material breaches of the Policy have caused Travelers to suffer actual damages, including amounts wrongfully obtained by the Lindsays and substantial expenses and fees associated with the Claim, including accrued, but unpaid, interest on money wrongfully obtained by the Lindsays. *See Frontier Expl., Inc. v. Am. Nat'l Fire Ins. C*o., 849 P.2d 887, 893 (Colo. App. 1992) (finding "damages [for breaching the fraud clause] to include the entire $117,050 paid to [the insured]"); *Sunflower Condo. Ass'n v. Owners Ins. Co*., No. 16-cv-02946- WJM-NYW, ECF No. 236 (D. Colo.) ("Owners's damages are breach-of-contract damages equal to policy payments it had no duty to make given Sunflower's breach of the fraud clause.").

36.    As a result of the Lindsays' material breaches of the Policy, the Lindsays forfeited coverage under the Policy, and Travelers is entitled to all amounts previously paid to the Lindsays. *See American Diver's Supply & Mfg. Corp. v. Boltz*, 482 F.2d 795, 798 (10th Cir. 1973) ("The penalty for attempted fraud in an insurance case where a fraud clause exists . . . is not simply forfeiture of the excess or inflated recovery amount but the voiding of all actual loss

40

benefits as well."); *see also Nw. Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360, 1361–62 (Colo. App.

1985) (expressing agreement with the language quoted above from *American Diver's*).

37.    Alternatively, Travelers is entitled to all amounts it paid to the Lindsays in excess

of benefits due and owing for debris removal, personal property/contents losses, and ALE

## FOURTH COUNTERCLAIM
### (Reimbursement/Recoupment)

38.    Travelers incorporates by reference the paragraphs above as if set forth in full in

this paragraph.

39.    Travelers has paid the Lindsays money for the Claim.

40.    As explained in detail above in support of Travelers' ninth defense, the Lindsays

intentionally concealed from Travelers, made material misrepresentations to Travelers, and

engaged in fraud regarding coverage and the amount of covered losses at the Property.

41.    As a result, Travelers is entitled to reimbursement or recoupment of all amounts

paid to the Lindsays, plus accrued, but unpaid, interest on the money wrongfully obtained.

42.    Pursuant to the aforementioned cases of *American Diver's Supply*, *Frontier

Exploration*, *Sunflower Condominium Association*, and *Barnhart*, Travelers is entitled to recover

the full amounts of previous Claim payments made to the Lindsays.

43.    Alternatively, Travelers is entitled to reimbursement or recoupment of all

amounts paid to the Lindsays in excess of benefits due and owing for debris removal, personal

property/contents losses, and ALE.

## FIFTH COUNTERCLAIM
### (Unjust Enrichment)

44.    Travelers incorporates by reference the paragraphs above as if set forth in full in

DN 8641152.5

this paragraph.

45.     The Lindsays received a benefit from Travelers in the form of benefits to which they are not entitled.

46.     As more fully set forth above regarding the Lindsays' concealment and misrepresentations of material facts and fraud as to the Claim, the Lindsays received that benefit from Travelers under circumstances that would make it unjust for them to retain that benefit.

47.     Travelers is therefore entitled to repayment of all amounts paid to the Lindsays, plus accrued, but unpaid, interest on the money wrongfully obtained.

48.     Alternatively, Travelers is entitled to repayment of all amounts paid to the Lindsays in excess of benefits due and owing for debris removal, personal property/contents losses, and ALE.

## JURY DEMAND

Travelers demands a trial by jury on all issues so triable.

## CONCLUSION

WHEREFORE, Travelers prays for judgment as follows:

1.      An order of the Court declaring, adjudicating, decreeing, and clarifying the rights and responsibilities of Travelers and the Lindsays as follows: That the Lindsays are not entitled to any further insurance benefits from Travelers for the Marshall Fire under the Policy.

2.      An order of the Court declaring, adjudicating, decreeing that Travelers is entitled to recoupment or recovery from the Lindsays of all amounts Travelers has paid for the Claim.

3.      Alternatively, an order the Court declaring, adjudicating, and decreeing that Travelers is entitled to recoupment or recovery from the Lindsays of all amounts Travelers to the

42

Lindsays in excess of benefits due and owing for debris removal, personal property/contents losses, and ALE.

        4.      All compensatory damages as determined by a jury.

        5.      Equitable relief in the amount by which Plaintiffs were unjustly enriched by Travelers' payment of benefits under the Claim.

        6.      Pre- and post-judgment interest.

        7.      An award of attorney fees and costs as may be permitted by applicable law.

        8.      Such other and further relief as the Court may deem proper.

Dated: May 3, 2024                Respectfully submitted,

                                *s/ Nathaniel Scott Barker*
                                Evan Bennett Stephenson
                                Nathaniel Scott Barker
                                Spencer Fane LLP
                                1700 Lincoln Street, Suite 2000
                                Denver, CO 80203
                                Telephone: (303) 839-3800
                                Facsimile: (303) 839-3838
                                Email:   estephenson@spencerfane.com

                                Attorney for Defendant The Travelers
                                Home and Marine Insurance Company

DN 8641152.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 2, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Ryan C. Gill**
  ryan.gill@lewisbrisbois.com, April.Knoke@lewisbrisbois.com, MN.E-Storage@lewisbrisbois.com

- **Bradley Aaron Levin**
  brad@lsw-legal.com, nicole@lsw-legal.com, karen@lsw-legal.com, nelson@lsw-legal.com

- **Susan S. Minamizono**
  susan@lsw-legal.com, nicole@lsw-legal.com, karen@lsw-legal.com

*s/ Nathaniel Scott Barker*
Nathaniel Scott Barker