**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01413-NYW-STV

ERIN LINDSAY and CHRISTOPHER LINDSAY,

Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and
GEICO INSURANCE AGENCY, LLC,

Defendants.

---

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Erin Lindsay and Christopher Lindsay, by and through their attorneys, Bradley A. Levin and Susan Minamizono of LEVIN SITCOFF PC, hereby submit their Motion for Summary Judgment, and states as follows:

## CERTIFICATE OF CONFERRAL

Undersigned counsel certifies that she has conferred with counsel for Defendants in accordance with D.C.Colo.LCivR 7.1(a). Undersigned counsel is advised that Defendant Travelers opposes the relief requested herein. Defendant GEICO does not take a position.

## INTRODUCTION

This matter involves the total loss of a home owned by Plaintiffs Erin and Christopher Lindsay ("the Lindsays") in the Marshall Fire in December 2021. Defendant

The Travelers Home and Marine Insurance Company ("Travelers") insured the home at the time of the loss.

On June 6, 2024, Travelers filed its Answer to Plaintiffs' First Amended Complaint and Counterclaims (ECF No. 77). Travelers seeks to avoid coverage and recoup all benefits paid to the Lindsays under the insurance policy's Concealment or Fraud clause, offering baseless and offensive allegations that the Lindsays intentionally concealed or misrepresented material facts. (See ECF No. 77, at 14-35 (Ninth Affirmative Defense) and 37-43 (Counterclaims)). To succeed on the affirmative defense, Travelers must prove the Lindsays misrepresented or omitted a fact, the misrepresentations or omissions were material, and the Lindsays intended to deceive Travelers. *See Duran v. Homesite Ins. Co.*, No. 24-cv-00635-NYW-NRN, 2024 WL 4884484, at *3 (D. Colo. Nov. 25, 2024). Since Travelers cannot meet this burden, as further explained below, summary judgment should therefore be granted in Plaintiffs' favor on the Ninth Affirmative Defense and all Counterclaims, which are premised on the allegations set forth under the Ninth Affirmative Defense.

**STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")**

1. All debris removal efforts at Plaintiffs' home located at 826 Trail Ridge Drive, Louisville, Colorado 80027 were not completed until February 2024, when breaking ground occurred. **Ex. 1**, C. Lindsay Depo., 311:16-312:1; **Ex. 2**, C. Lindsay Decl., ¶ 3.

2. Even after Wood Brothers' subcontractor performed the initial debris removal at the Lindsays' home in 2022, other material was left on the property, including buried helical piers or caissons. Before excavation or breaking ground commenced, there

was no way of knowing whether additional debris removal was required. **Ex. 1**, C. Lindsay Depo., 313:6-314-21; **Ex. 3**, Wood Depo., 75:4-76:2. 77:13-24.

3. Wood Brothers tried to include in their budget extra work that might be necessary to remove remaining debris, since demolition was not required as part of the initial phase for debris removal. **Ex. 3**, Wood Depo., 75:14-22.

4. After the Lindsays broke ground in February 2024, Mr. Lindsay was informed by a contractor on site that the new house could be built around the buried helical piers or caissons, and no further debris removal was required. The Lindsays then discovered that Travelers had paid them an overage of $29,051.84 for debris removal. **Ex. 2**, C. Lindsay Decl., ¶¶ 3-4.

5. The Lindsays have paid back Travelers $29,051.84, the unused amount for debris removal. **Ex. 2**, C. Lindsay Decl., ¶ 4; **Ex. 9**, Minamizono Decl., ¶ 3, Ex. B.

6. Soon after the total loss of their home, the Lindsays sought a scope of loss agreed upon by Travelers, listing all components and features of the home they lost in the fire *without* any costs attached, as the first step before submitting the scope to a builder for cost estimating. **Ex. 1**, C. Lindsay Depo., 250:11-253:15; **Ex. 4**, E. Lindsay Depo., 25:18-26:7, 31:8-20, 33:5-34:13.

7. The Lindsays sought an accurate scope of loss so that it would inform how much to budget for the construction of their new home and to determine the additional amounts of their own money they would need to spend to complete the reconstruction. **Ex. 1**, C. Lindsay Depo., 239:3-10, 241:22-242:3.

8. Travelers' claims adjuster, Peter Van Riper, refused to provide a full and

complete scope of loss to the Lindsays from the outset of the claim. **Ex. 4**, E. Lindsay Depo., 35:21-36:2. **Ex. 5**, Van Riper Depo., 160:7-162:6.

9. Only after Travelers' Assistant Vice President became involved with the claim in April 2022 did Travelers retain third-party Sedgwick Claims to assist with the preparation of a detailed scope of loss and cost estimating for the home. **Ex. 6**, Gatti Depo., 84:19-86:4.

10. The Lindsays, Mr. Van Riper, Stephanie Brown of Glimmer Claims, and Michael Gurule of Sedgwick Claims, attended an in-person meeting on April 21, 2022, to discuss the features and components of the home the Lindsays lost in the fire. The Lindsays informed Mr. Van Riper and Mr. Gurule that debris removal was partially completed, and there may be additional costs to complete the work. Mr. Gurule acknowledged that this made sense. **Ex. 5**, Van Riper Depo., 97:3-23, 98:7-17; **Ex. 2**, C. Lindsay Decl., ¶ 5.

11. Sedgwick Claims provided a scope of loss, to which the Lindsays responded in late August 2022. The exchange of information between Travelers and the Lindsays regarding corrections to the scope of loss continued through November 2022. **Ex. 1**, C. Lindsay Depo., 237:12-238:2; **Ex. 2**, C. Lindsay Decl., ¶ 2; **Ex. 5**, Van Riper Depo., 164:11-22.

12. In October 2002 Mr. Lindsay advised Travelers that he found errors in the initial Glimmer estimate of approximately $2.73 million, as well as errors made by Travelers. **Ex. 1**, C. Lindsay Depo., 203:7-205:10; **Ex. 2**, C. Lindsay Decl., ¶ 1.

13. Mr. Van Riper reduced Sedgwick's cost estimate by almost $600,000, with

no clear, detailed rationale for the reduction, even though Travelers had retained Sedgwick to provide an accurate scope of loss. **Ex. 5**, Van Riper Depo.,160:7-162:6; **Ex. 7**, Seigal Decl. and Initial Report dated 4/1/25, at 91 (last bullet point).

14. Travelers refused to reform the Policy limits for the second time. **Ex. 5**, Van Riper Depo., 138:18-139:9; **Ex. 7**, Seigal Decl. and Initial Report dated 4/1/25, at 16 (bullet point nos. 3-5),

15. Mr. Lindsay paused on moving forward with the rebuild of the home from the end of January 2023 to the end of March 2023 after being laid off. **Ex. 1**, C. Lindsay Depo., 62:23-65:10.

16. There is no specific requirement in the Policy for the insureds to provide all communications to and from their contractors and construction-related documents to the insurer, unless specifically requested by Travelers. **Ex. 7**, Seigal Decl. and Rebuttal Report dated 8/18/25, at 5 (first paragraph)**; Ex. 8**, certified copy of the Travelers policy.

17. Travelers informed the Lindsays that they would not need to provide a contents inventory if they chose not to pursue benefits over 60% of the policy limit, or $538,617 paid by Travelers. **Ex. 1**, C. Lindsay Depo., 50:23-51:2; **Ex. 9**, Minamizono Decl., ¶ 2, Ex. A.

18. The Lindsays' partial inventory list of contents places the value at $788,343.99 RCV/$513,406.93 ACV. **Ex. 10**, Banach Decl. and report dated August 18, 2025, at 2.

19. Travelers did not conduct any fraud or SIU investigation of the Lindsays' claim prior to the commencement of the litigation. **Ex. 7,** Seigal Decl. and Rebuttal Report

dated 8/18/25, at 12-13.

20. If fraudulent conduct by insureds is suspected, fraud indicators are documented by claims adjusters, and if the fraud indicators are significant enough, the claim file is immediately referred over to the insurer's Special Investigations Unit. **Ex. 11**, Vels Decl.

## LEGAL STANDARD

Summary judgment is warranted if the moving party shows there are no genuine disputed material facts, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *Chateau Village North Condominium Ass'n v. American Fam. Mut. Ins. Co*., 170 F. Supp.3d 1349, 1354-1355 (D. Colo. 2016). A dispute is "genuine" if the evidence is such that it might lead a reasonably jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co*., 631 F.3d 1153, 1160 (10th Cir. 2011). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir.1998)

The moving party bears the initial burden of showing the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513,1518 (10th Cir. 1994). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Id.* at 1517. The nonmoving party, however, may not rest solely on the allegations in the pleadings but must instead designate "specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; see also Fed. R. Civ. P. 56(c). The moving party's version of the facts must find support in the record at the summary judgment stage. *Thompson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009). A court should credit only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).

## **ARGUMENT**

In order to avoid coverage under a policy's Concealment or Fraud clause, the insurer must prove "(1) the insured misrepresented or omitted a fact, (2) the misrepresentations or omissions were material, and (3) the insured intended to deceive the insurer." *Duran,* 2024 WL 4884484*,* at *3. An affirmative defense by the insurer with respect to the insured's alleged violation of the clause cannot be based on "mere negligent or accidental omissions." *Id.*

### I. Travelers Cannot Establish the Lindsays Made Material Misrepresentations

Under Colorado law, a misrepresentation is "material" if "a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998) (quoting *Long v. Insurance Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982)); *Olave v. Am. Family Mut. Ins. Co.*, 2023 WL 6160694, at *5 (D. Colo. Sept. 21, 2023). The materiality inquiry focuses on whether the fact would have been important to the insurer's investigation, "even if the fact is not ultimately significant to the disposition of the case." *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F.Supp.3d 1187, 1202 (D. Colo. 2022).

**A. The Lindsays Fully Cooperated With Travelers' Investigation**

The undisputed facts demonstrate that the Lindsays fully cooperated with Travelers' investigation and provided all requested information. The Lindsays promptly reported their total loss to Travelers following the Marshall Fire. (SUMF ¶ 6). From the outset, they sought to work with Travelers to establish an accurate scope of loss to properly budget for reconstruction of their destroyed home. (*Id.* at ¶¶ 6-7).

The Lindsays participated in an in-person meeting with Travelers' representatives, including Sedgwick Claims, to discuss in detail the features and components lost in the fire. (SUMF at ¶ 10). Following this meeting, they responded to Sedgwick's scope of loss and continued exchanging information regarding necessary corrections through October 2022. (*Id.* at ¶ 11). Far from concealing information, the Lindsays proactively identified errors in both the Glimmer estimate and Travelers' own calculations, demonstrating their commitment to accuracy. (*Id.* at ¶ 12).

Moreover, the Policy itself contained no requirement for the insureds to specifically provide all communications with contractors or construction-related documents, yet Travelers faults the Lindsays for not voluntarily producing every piece of correspondence. (SUMF at ¶ 16). This expectation goes beyond the Policy's requirements and cannot form the basis for a fraud defense.

In view of the foregoing, Travelers has failed to identify any specific factual misrepresentation made by the Lindsays in support of its Ninth Affirmative Defense (ECF No. 77 at 14-35). The undisputed evidence shows the Lindsays engaged in an iterative,

good-faith process to establish an accurate scope of loss, which is precisely the type of cooperation insurance adjusting requires.

**B. The Lindsays Disclosed Basis for Reconstruction Delay**

Travelers alleges in its Ninth Affirmative Defense that the Lindsays misrepresented the reasons for delays in their reconstruction. (ECF No. 77 at 22-29). However, the undisputed facts show that the Lindsays paused reconstruction temporarily for about two months due to a job layoff—a legitimate personal and financial setback that they disclosed to Travelers. (SUMF ¶ 15). Once their financial situation stabilized, the Lindsays resumed the reconstruction project. This temporary pause due to job loss cannot reasonably be characterized as concealment or misrepresentation, particularly when the Lindsays kept Travelers informed of their circumstances.

**C. The Lindsays Voluntarily Repaid Debris Removal Benefits, Demonstrating Good Faith, Not Fraud**

Crucially, the Lindsays voluntarily repaid Travelers $29,051.84 in unused debris removal funds after breaking ground in February 2024 revealed that no further debris removal was required, and that Travelers had paid an overage for this portion of the claim. (SUMF ¶¶ 1-5). In 2022, there was no way for anyone, including rebuild contractors, to know whether additional debris removal was necessary, namely, the removal of deeply buried helical piers or caissons, since the demolition process had not begun. (*Id.* at ¶¶ 2-3). The Lindsays' voluntary repayment is the antithesis of fraudulent intent. An insured seeking to defraud their insurer does not voluntarily return tens of thousands of dollars in overpayments. This conduct alone refutes Travelers' extensive allegations regarding

debris removal in its Ninth Affirmative Defense (ECF No. 77 at 15-22) and demonstrates the Lindsays' good faith throughout the claims process.

### D. The Lindsays' Partial Contents Inventory Does Not Support Travelers' Allegations of Fraud

Travelers informed the Lindsays that they would not need to provide a contents inventory if they chose not to pursue benefits over 60% of the policy limit, or $538,617 paid by Travelers. (SUMF ¶ 17). The Lindsays' partial inventory list of contents is valued at $788,343.99 RCV/$513,406.93 ACV. (*Id.* at ¶ 18). This valuation falls below the threshold Travelers itself established for requiring a full inventory.

This cannot constitute a material misrepresentation when Travelers expressly waived the requirement for a complete inventory. *See Wagnon*, 146 F.3d at 768. Travelers cannot now claim fraud based on the Lindsays' failure to provide documentation that Travelers itself told them was unnecessary. Travelers' allegations in its Personal Property/Contents Coverage section of the Ninth Affirmative Defense (ECF No. 77 at 33-35) lack merit.

### E. Travelers Cannot Establish Any Intent to Deceive by the Lindsays

Even if Travelers could identify a factual misrepresentation, which it cannot, it must prove that "the insured made the misrepresentations knowingly and deliberately" before the intent to deceive will be implied. *Wheatridge*, 578 F.Supp.3d at 1202 (citing *Wagnon*, 146 F.3d at 771). "Mere negligent or accidental omissions" cannot support this affirmative defense. *Duran*, 2024 WL 4884484, at *3.

The record is devoid of any evidence of knowing and deliberate misrepresentations. To the contrary, every aspect of the Lindsays' conduct demonstrates

good faith. The Lindsays actively sought to establish an accurate scope of loss from the beginning of the claims process. (SUMF ¶¶ 6-7). They participated fully in meetings with Travelers and its consultant to ensure all features and components were properly documented. (*Id.* at ¶ 10). They continued to exchange information and make corrections to the scope of loss through October 2022. (*Id.* at ¶ 11). They proactively identified errors in estimates provided by Travelers' own vendor, demonstrating a commitment to accuracy rather than inflating their claim. (*Id.* at ¶ 12). They disclosed the reason for temporarily pausing reconstruction for two months and resumed the project when financially able. (*Id.* at ¶ 15). Most importantly, they voluntarily repaid Travelers $29,051.84 in debris removal funds after their contractor confirmed that the buried helical piers did not need to be removed. (*Id.* at ¶¶ 4-5).

This pattern of conduct is wholly inconsistent with an intent to deceive, as alleged by Travelers. The Lindsays' voluntary repayment of debris removal funds is particularly significant, as it demonstrates their good faith and undermines any inference of fraudulent intent.

## II. Travelers' Own Conduct Demonstrates It Did Not Reasonably Rely on Any Alleged Misrepresentation Nor Consider the Importance of Such Alleged Misrepresentation

Even assuming *arguendo* that Travelers could identify a misrepresentation, the misrepresentation made by the insured during the course of the insurer’s investigation must be a fact that a reasonable insurance company would have considered salient. *Olave*, 2023 WL 6160694, at *5. Here, the undisputed facts demonstrate that Travelers did not attach any importance to the alleged misrepresentations during the course of its

claims investigation. Rather, Travelers made coverage decisions based on its own arbitrary adjustments and evaluation.

### A. Travelers' Claims Adjuster Refused to Provide a Complete Scope of Loss and Later Arbitrarily Reduced Its Own Expert's Estimate

Despite the Lindsays' repeated requests for a complete and accurate scope of loss, Travelers' claims adjuster, Peter Van Riper, refused to provide one. (SUMF ¶ 8). This refusal persisted despite the Lindsays' cooperative efforts to work with Travelers to establish the appropriate scope. Only after Travelers' Assistant Vice President became involved, escalating the matter internally within Traveler, did Travelers finally retain Sedgwick to assist with preparing a detailed scope. (*Id.* at ¶ 9).

After retaining Sedgwick specifically to provide an accurate scope of loss, Mr. Van Riper then reduced Sedgwick's cost estimate by almost $600,000 with no clear, detailed rationale. (SUMF ¶ 13). This arbitrary reduction occurred even though Travelers had hired Sedgwick as its own expert consultant for the express purpose of determining an accurate scope of loss.

If Travelers genuinely believed the Lindsays had misrepresented the scope of loss, it would have relied on its own expert's assessment. Instead, Travelers disregarded its own expert's conclusions and made arbitrary reductions. This demonstrates that Travelers' coverage position was not based on any alleged misrepresentation by the Lindsays, but rather on Travelers' own internal decision to pay less than its own expert determined was appropriate. Subsequently, and despite acknowledging issues with the adequacy of the original policy limits, Travelers refused to reform the Policy limits a second time based on an accurate scope of loss. (SUMF ¶ 14). Once again, this decision

was not based on any alleged misrepresentation by the Lindsays, but on Travelers' own coverage position.

### B. Travelers Did Not Conduct a Fraud Investigation

The undisputed evidence establishes that Travelers did not conduct any fraud or SIU (Special Investigations Unit) investigation of the Lindsays' claim. (SUMF ¶ 19). This fact is fatal to Travelers' concealment and fraud defense asserted in its Ninth Affirmative Defense and to its related counterclaims.

Insurance companies routinely conduct fraud investigations when they have a good faith belief that an insured has engaged in material misrepresentations or fraud. (SUMF ¶¶ 19-20, **Ex. 7,** Seigal Report dated 8/18/25, at 12-13). If fraudulent conduct by insureds is suspected, fraud indicators are documented by claims adjusters, and if the fraud indicators are significant enough, the claim file is immediately referred over to the insurer's Special Investigations Unit. (*Id*. at ¶ 20). Here, there is no such evidence in the claim file. (*Id*. at ¶ 19). The lack of such investigation prior to the commencement of the litigation demonstrates that Travelers itself did not consider any alleged misrepresentations material at the time of the claims handling. If Travelers genuinely believed during the claims process that the Lindsays had engaged in material misrepresentations sufficient to void coverage entirely—as it now alleges in this litigation—it would have conducted a fraud investigation. The absence of any fraud investigation is compelling evidence that Travelers' current allegations are litigation positions adopted after the fact, not good faith beliefs held during the claims adjustment process. This undermines both the materiality element—a reasonable insurer would

investigate if the alleged misrepresentations were truly material—and the intent element, namely, Travelers' own conduct shows the insurer did not believe the Lindsays intended to deceive.

**III. Travelers' Ninth Affirmative Defense Should be Dismissed**

To prevail on its Ninth Affirmative Defense, Travelers must prove all three factors as set forth in *Duran*. 2024 WL 4884484, at *3. The undisputed facts establish that Travelers cannot prove any of these elements.

Regarding the first element, misrepresentation or omission of fact, Travelers has not identified any specific factual misrepresentation. The Lindsays fully cooperated with the investigation (SUMF ¶¶ 6-7, 10-11), provided all information required by the Policy (*id.* at ¶ 16), disclosed legitimate reasons for reconstruction delays (*id.* at ¶ 15), and proactively identified errors in estimates (*id.* at ¶ 12). The Lindsays’ partial inventory list resulted in a value that Travelers had agreed, prior to litigation, as not requiring documentation. (*Id.* at ¶¶ 17-18).

Regarding the second element, materiality, no reasonable insurer would attach importance to the Lindsays' disclosure of temporary financial hardship, or their failure to provide documents not required by the Policy or specifically requested by Travelers. (SUMF ¶¶ 15-16). Moreover, Travelers' own conduct—refusing to provide a complete scope (*id.* at ¶ 8), arbitrarily reducing its own expert's estimate by $600,000 (*id.* at ¶ 13), and failing to conduct a fraud investigation (*id.* at ¶ 19)—demonstrates that Travelers itself did not consider any alleged misrepresentations material.

Regarding the third element, intent to deceive, the Lindsays' voluntary repayment of $29,051.84 in overage benefits refutes any inference of intent to deceive. (SUMF ¶¶ 4-5). Along with their consistent cooperation with Travelers (*id.* at ¶¶ 6-7, 10-12), disclosure of reconstruction delays (*id.* at ¶ 15), and proactive corrections to the scope of loss (*id.* at ¶ 12), the record contains no evidence of knowing and deliberate misrepresentations by the Lindsays. Because Travelers cannot establish any of the three required elements, summary judgment should be granted in favor of Plaintiffs on the Ninth Affirmative Defense.

## IV. Travelers' Counterclaims Should be Dismissed

Travelers has asserted five counterclaims based on the same factual allegations underlying its Ninth Affirmative Defense: (1) Declaratory Judgment That Travelers Is Not Obligated to Pay Any Additional Coverage Amounts; (2) Declaratory Judgment That Travelers Is Entitled to Recover All Amounts Paid or to Recover Overpayments; (3) Breach of Contract; (4) Reimbursement/Recoupment; and (5) Unjust Enrichment. (ECF No. 77 at 37-43).

Each of these counterclaims is premised on the allegation that the Lindsays violated the Policy's Concealment or Fraud Clause through material misrepresentations made with intent to deceive. Because the undisputed facts establish that Travelers cannot prove any of these elements, as explained above, all of Travelers' counterclaims fail as a matter of law.

At bottom, the undisputed facts demonstrate that the Lindsays promptly reported their loss and fully cooperated with Travelers' investigation; that they sought to establish

an accurate scope of loss and proactively identified errors in estimates; that they voluntarily repaid $29,051.84 in debris removal benefits, demonstrating good faith rather than fraudulent intent; that they disclosed legitimate reasons for temporarily pausing reconstruction and resumed the project; that the Policy did not require the Lindsays to provide all documents Travelers now claims should have been produced; and that Travelers expressly waived the requirement for a complete contents inventory, while the Lindsays' partial inventory fell below the threshold requiring full documentation.

Moreover, Travelers' own conduct demonstrates it did not rely on any alleged misrepresentation or consider whether any alleged misrepresentation was salient to its claims investigation. Instead, its adjuster refused to provide a complete scope, engaged a consultant, Sedgwick, but arbitrarily reduced its own expert's estimate by $600,000, and refused to reform inadequate policy limits. Most tellingly, Travelers conducted no fraud investigation, showing it was not concerned with any misconduct during the claims process that it now alleges in this litigation.

## CONCLUSION

Accordingly, Plaintiffs Erin and Christopher Lindsay respectfully request that the Court grant their Motion for Summary Judgment with respect to Travelers' Ninth Affirmative Defense and all Counterclaims seeking declaratory judgment, breach of contract, reimbursement/recoupment, and unjust enrichment remedies.

DATED this 17th day of October 2025.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/Susan Minamizono*
Bradley A. Levin
Susan Minamizono
455 Sherman St., Suite 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
susan@lsw-legal.com
***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2025, a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Evan Stephenson
Nathaniel Barker
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
estephenson@spencerfane.com
nbarker@spencerfane.com
***Attorneys for Defendant The Travelers Home and Marine Insurance Company***

Ryan C. Gill
Jackson D. Beal
Lewis Brisbois Bisgaard & Smith LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Ryan.Gill@lewisbrisbois.com
Jackson.Beal@lewisbrisbois.com
***Attorneys for Defendant Geico Insurance Agency***

*s/Nicole R. Peterson*
Nicole R. Peterson