

**CIVIL ACTION NO. 1:23-cv-01413-NYW-STV**

**ERIN LINDSAY AND CHRISTOPHER LINDSAY**

**V.**

**THE TRAVELERS HOME AND MARINE INSURANCE COMPANY AND**

**GEICO INSURANCE AGENCY, LLC,**

**DEPOSITION OF:**

**BREANNA WEBB**

**DATE:**

**February 28, 2025**



 (855) 693-3767 | (720) 738-1300

 schedule@yournextdepo.com

**www.pikereporting.com**

EXHIBIT 8

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 2 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
97

1      Q.    Okay.  Is it fair to say that, when he said --

2   mentioned that he had consulted applicable business

3   partners within Travelers, that that included your

4   department?

5      A.    I would agree that that was what he was

6   implying, yes.

7      Q.    I understand -- I mean, you didn't send this

8   e-mail, but are there any other business partners who

9   would be involved in the reformation decision?

10      A.    No.

11      Q.    Do you know if Mr. Meisinger was involved in

12   the final determination with respect to the second

13   request for reformation?

14      A.    Again, I can't imagine -- I don't recall

15   specifically, but I can't imagine we would've gone to

16   Joe without a reason to reform, given the attributes

17   hadn't changed.  There -- there wasn't any new

18   information for us per Peter's information to consider.

19          MS. MINAMIZONO:  Well, I believe that's all the

20      questions I have for now.  I'll open it up to the

21      other attorneys.  I may have some follow-up after

22      that.

23                CROSS-EXAMINATION

24   BY MR. STEPHENSON:

25      Q.    Okay.  I'll be real quick.  Ms. Webb, has

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 3 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
98

1    Travelers ever offered in Colorado a guaranteed

2    replacement cost policy to homeowners?  And to be clear,

3    what I mean, I mean one where Travelers -- Travelers

4    will just pay for the cost of what it takes to repair or

5    replace a home, no matter what it is, without limits.

6    Has it ever offered anything like that in Colorado?

7        A.    No.  We've never offered a guaranteed

8    replacement policy or endorsement option to a policy for

9    that of coverage.

10       Q.    And can you just identify just briefly what

11   you did to verify that?

12       A.    Yeah, absolutely.  I -- I confirmed that we've

13   never offered that with our VP of our coverage and

14   forms, and then also with our VP of product, just to

15   make sure that I didn't miss in my research as well.

16       Q.    Okay.  And I'm actually logging into the Zoom

17   right now on my -- my laptop so that I can just share

18   Exhibit 87 real quick, so everyone can see it on the

19   screen.  And here I come, hopefully it won't create an

20   echo.  Okay.  All right.  I'm going to share my screen

21   here.  Can you see my screen here, Ms. Webb?

22       A.    Yes, I can see.

23       Q.    And you recognize that this is Exhibit 87, the

24   inspection report?

25       A.    Yes.

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

The Deposition of BREANNA WEBER, taken on February 28, 2025

1    Q.    And I'm just going to scroll down here.  I --

2    I want to just focus in on what the inspector tried to

3    do to try to get into this house.  So you see on Page

4    Travelers 3114 of Exhibit 87, you see there's this

5    comment section just below the survey date of July 2nd,

6    2015.  Do you see that?

7    A.    Yes.

8    Q.    You see where the inspector -- and actually,

9    before I get onto that, let me just ask you this.  Is --

10   is the inspection report a standard business record of

11   Travelers as part of its underwriting?

12   A.    Yes.

13   Q.    And it's created by someone who has an

14   obligation to report to Travelers things that happen

15   around the time that the report is created, correct?

16   A.    Correct.

17   Q.    And this is a business record of Travelers,

18   correct?

19   A.    Yes.

20   Q.    It's kept in the ordinary course of Travelers'

21   business, true?

22   A.    Correct.

23   Q.    And you analyzed this Exhibit 87 and relied on

24   it in making your recommendations and decisions, at

25   least at the analytical level, when you were working on

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1    this case, correct?

2        A.    Yes.

3        Q.    And the -- the actual reformation wasn't based

4    on this report, was it?

5        A.    (No verbal response.)

6        Q.    Yeah.  But it is something that you considered

7    as part of your analysis, true?

8        A.    Uh-huh.  Yes.

9        Q.    Okay.  So now looking at what this inspector

10   did, do you see there's a -- a comment that says,

11   "Remarks, someone appeared to be home.  However, they

12   did not answer the door."  Do you see that?

13       A.    I do.

14       Q.    And so when Travelers sent the inspector out,

15   you know, who tried to get someone to answer the door,

16   they could -- could they see someone in there?

17       A.    It would appear so that they -- they saw some

18   person or movement, yes.

19       Q.    And -- and when the inspector tried to get

20   that person's attention to answer the door, what

21   happened?

22       A.    The comment says they did not answer.

23           MS. MINAMIZONO:  Objection.  Foundation and --

24   BY MR. STEPHENSON:

25       Q.    Well then, and is that Travelers' fault if --

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 6 of 18
The Deposition of BREANNA WEBER, taken on February 28, 2025
101

```
 1    if they won't answer the door?

 2            MS. MINAMIZONO:  Objection.  Foundation.

 3    BY MR. STEPHENSON:

 4        Q.   Okay.  And then do you see where the inspector

 5    says in the next sentence, "We did not attempt to access

 6    the backyard"?  Do you see that?

 7        A.   I do.

 8        Q.   And do you agree that's something you would

 9    expect an inspector to want to do if they can get

10    access?

11            MS. MINAMIZONO:  Objection.  Foundation.

12            THE WITNESS:  Yes.

13    BY MR. STEPHENSON:

14        Q.   Okay.  And then -- and so as a result of not

15    being able to get access to the backyard, what kinds of

16    photos or measurements were missing from the inspection

17    report, according to the next sentence of Exhibit 87?

18        A.   We were unable --

19            MS. MINAMIZONO:  Objection --

20            THE WITNESS:  We were unable to see the -- the

21        rear of the property.  We were unable to measure it

22        that way.  We didn't understand what kind of

23        basement there was or the size of the property.

24    BY MR. STEPHENSON:

25        Q.   All right.  So I -- one of the things that you
```

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 7 of 18
The Deposition of BREANNA WEBER, taken on February 28, 2025
102

1    changed when you updated the reform limits was, you

2    added a walkout basement; remember that?

3        A.    I do.

4        Q.    And it -- does that increase or decrease the

5    limits?

6        A.    That would increase the coverage limit.

7        Q.    So if the Lindsays had just answered their

8    door and let the inspector go into the backyard, how

9    would that have helped Travelers to have that included

10    in the original limits?

11            MS. MINAMIZONO:  Foundation and form.

12        Objection.

13            THE WITNESS:  The coverage reported from the

14        inspection would've likely been higher.

15    BY MR. STEPHENSON:

16        Q.    Okay.  So is that -- is that Travelers' fault

17    or is that the Lindsays' decision?

18            MS. MINAMIZONO:  Objection.  Form and

19        foundation.

20            THE WITNESS:  Our vendor did try to attempt, as

21        they're supposed to, but unfortunately, the customer

22        didn't respond.

23    BY MR. STEPHENSON:

24        Q.    Okay.  All right.  So let's go down further

25    and see this inspection report.  I'm just going to go

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

The Deposition of BREANNA WEBER taken on February 28, 2025

103

1    down below the -- the photos.  And do you see -- there's

2    a section that says contact attempts.  Do you see that?

3        A.    I do.

4        Q.    And you see where the inspector says they

5    called on June 19th?  You see that?

6        A.    Yes.

7        Q.    At 10:00 a.m.  You see that?

8        A.    Yes.

9        Q.    You see anything wrong or out of the ordinary

10   about trying to contact the insured in that way?

11       A.    No.  This was originally supposed to be an

12   interior inspection, and so that would be an expected

13   attempt.  And

14       Q.    And by the way, are the Lindsays required to

15   cooperate with an inspection like this?

16       A.    It is -- it is required, yes.  They -- they --

17   we needed to have an interior inspection to confirm

18   coverage and condition of the property.

19       Q.    Okay.  And -- and do you see what happened as

20   the result of this first attempt?

21       A.    There was no answer.

22       Q.    Yeah.  Well, the -- and do you see it says

23   answering machine?

24       A.    I do.

25       Q.    Okay.  And -- and what does that tell you

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

The Deposition of BREANNA WEBB, taken on February 28, 2025

104

1    about whether this inspector left a message?

2         MS. MINAMIZONO:  Objection.  Form and

3       foundation.

4         THE WITNESS:  There was the potential to leave

5       a message -- there was an answering machine.  That

6       would be the expectation.

7    BY MR. STEPHENSON:

8       Q.   Okay.  And have you seen any evidence that the

9    Lindsays ever called back?

10      A.   No.  I would think that we would have an -- an

11   interview time and date in order to complete the

12   interior inspection.

13      Q.   Okay.  And then you see the second attempt,

14   when the inspector tried to contact the Lindsays, do you

15   see that?

16      A.   Yes.

17      Q.   What date was that?

18      A.   Nine days later on the 28th.

19      Q.   At what time?

20      A.   1:00 p.m.

21      Q.   And did the Lindsays answer their phone then?

22      A.   It does not appear so.

23      Q.   And so what did they do where it says -- you

24   see where it says, answering machine?

25      A.   We assume --

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 10 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
105

1          MS. MINAMIZONO:  Objection.  Form and

2      foundation.

3  BY MR. STEPHENSON:

4      Q.   Go -- go ahead and finish your answer, though.

5      A.   Sure.  We assume that they -- they were going

6  to leave a message as required.

7      Q.   Okay.  And then there's even a third attempt,

8  although it doesn't say the date or time.  Do you see

9  that?

10      A.   Yes.

11      Q.   You see where it says, again, answering

12  machine?

13      A.   Yes.

14      Q.   So according to Travelers' business records,

15  how many times does it appear that the inspector called

16  the Lindsays to try and reach them?

17      A.   There were two attempts with the Lindsays, and

18  one with the agent and agency, in order to get ahold of

19  the Lindsays to complete the interior inspection.

20      Q.   Okay.  And -- and have you seen any evidence

21  in Travelers' business records that the Lindsay ever

22  responded to anything Travelers did in connection with

23  this inspection, to give Travelers access to the inside

24  of their house or their backyard?

25      A.   No, which is why the inspector only completed

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 11 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
106

1  an exterior report, as it converted to an exterior only

2  since we never received a response.

3      Q.    Yeah.  Let's go down to the bottom of this

4  next comment section.  It's Roman numeral III comments,

5  and the page here is -- is Travelers 3118 of Exhibit 87.

6  So you see where the inspector writes in the report

7  dated July 2nd, 2015, "We have been unsuccessful in our

8  telephone attempts to contact the insured to schedule an

9  appointment for the interior survey"?  Do you see that?

10      A.    I do.

11      Q.    So per the special instructions, we are

12  converting the report to a dwelling observational value

13  survey.  Do you see that?

14      A.    I do.

15      Q.    And which would be more useful to you?

16      A.    It would definitely be more useful to have the

17  interior view of the property.

18      Q.    Okay.  And then even after all this, in fact,

19  I -- I'm going to go to the letter that Ms. Minamizono

20  showed you.  Even after all this, there's a letter that

21  was sent out.  It's Bates Page Travelers 179.  Remember

22  you were showed this letter earlier today by Ms.

23  Minamizono?

24      A.    Yes.

25      Q.    And this letter is dated what?

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

1    A.    July 14th, 2015.

2    Q.    And it's from Travelers to who?

3    A.    It went to -- directly to the Lindsays.

4    Q.    Okay.  And -- and you see where it says, "Dear

5    policyholder," to the Lindsays, "we're committed to

6    helping you find the right insurance solutions to

7    protect what matters most, so we can be there when

8    things go wrong."  Do you see that?

9    A.    I do.

10    Q.    And then it says, "In order to do this, we

11    conduct onsite inspections on the properties we insure."

12    You see that?

13    A.    Yes.

14    Q.    So what is Travelers explaining to the

15    Lindsays in writing, after they've tried at least four

16    times to get access to their property?  What is it

17    telling them that -- that it needs this inspection for?

18         MS. MINAMIZONO:  Objection.  Foundation.

19         THE WITNESS:  -- to identify and make sure that

20      their property is correct, and we have all the

21      variables correct to provide a coverage limit

22      necessary.

23    BY MR. STEPHENSON:

24    Q.    Right.  And below, do you see where it says,

25    "The following areas require your attention"?

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV   Document 128-8   filed 10/17/25   USDC Colorado
pg 13 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
108

1    A.   Yes.

2    Q.   So what is that telling the Lindsays about

3 whether they need to pay attention to this letter?

4    A.   That this is --

5         MS. MINAMIZONO:  Objection.  Foundation.

6 BY MR. STEPHENSON:

7    Q.   You see this big bold heading that says,

8 "Important property coverage information"?

9    A.   Yes.

10    Q.   Okay.  And then it says, "Please review the

11 estimated reconstruction cost carefully."  Do you see

12 that?

13    A.   Yes.

14    Q.   "As it is your responsibility to know and

15 understand the amount of insurance you need to

16 purchase."  Do you see that?

17    A.   Yes.

18    Q.   So according to Travelers, who -- whose

19 responsibility is it to make sure they have the right

20 amount of insurance?

21    A.   The policyholder.

22    Q.   And then Travelers tells them, "The estimated

23 reconstruction cost calculated for your home considers

24 square footage, construction type, and other attributes

25 of the home."  You see that?

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 14 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
109

1      A.    Yes.

2      Q.    And what was the estimated reconstruction cost

3   based on the partial exterior inspection that they were

4   able to do?

5      A.    Much lower at 399,252, since we only had

6   partial information.

7      Q.    And so they -- and then they actually wrote

8   them a policy that was more than that, right?

9      A.    We maintained that, yes.

10     Q.    Okay.  Now, look at the next sentence.  Do you

11   see where it says, "Based on the estimated

12   reconstruction cost of $393,252 for your home, we would

13   like you to consider whether the current coverage amount

14   is appropriate.  We will not reduce the coverage without

15   your approval."  Do you see that?

16     A.    Yes.

17     Q.    And does this -- does this apply to both

18   lowering or increasing it?

19     A.    The sentence -- the second sentence only

20   applies for what's considered over-insurance, because we

21   would never reduce your coverage without your approval.

22     Q.    Okay.  But at the same time, did -- did this

23   notify the Lindsays that, if they thought it was too

24   little because of information that was missing, they

25   could have done that as well?

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 15 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
110

1       A.    Yes.  We -- we state next that, if you have

2    information, we could update it for you.

3       Q.    Okay.  **You see that sentence where it says,**

4    **"If you have information that would result in a**

5    **different estimated construction cost, please contact."**

6    **Do you see that?**

7       A.    Yes.

8       Q.    **And different here could mean higher or lower,**

9    **right?**

10      A.    Yes.

11      Q.    **All right.  And have you seen any evidence in**

12   **Travelers' business records that the Lindsays ever**

13   **responded to this letter at all?**

14      A.    I don't recall seeing that they responded to

15   the letter specifically to -- to request increased

16   coverage, or make modifications.

17      Q.    **Okay.  And all the things that Ms. Minamizono**

18   **showed you, on that spreadsheet of things that you**

19   **changed to, you know, increase their limits, are those**

20   **all things that the inspector would absolutely have seen**

21   **if the Lindsays had let them into their house, either by**

22   **answering their door or answering their phone and giving**

23   **access?**

24      A.    Yes.  We would've been able to see those.

25      Q.    **And what other option, you know, if the**



Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202

PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

The Deposition of BREANNA WEBB, taken on February 28, 2025

111

1   **Lindsays just didn't -- just didn't want to have an**

2   **inspector in their house, right, for whatever reason, if**

3   **they're shy or they just don't want someone in their**

4   **house, what was another option that Travelers gave them**

5   **in the letter in July 2015, to tell Travelers anything**

6   **they wanted to about their home, if they thought they**

7   **didn't have enough coverage?**

8           MS. MINAMIZONO:  Objection.  Foundation and

9       form.

10          THE WITNESS:  They could have called us --

11  BY MR. STEPHENSON:

12      **Q.   Sorry, go ahead.**

13      A.   Yes.  They could have called us for a

14  reconsideration of -- of their current limits with

15  additional information provided.

16      **Q.   Okay.  And by the way, when you reran the**

17  **CoreLogic numbers in 2022, was that the amount that**

18  **CoreLogic was pricing in terms of reconstruction costs**

19  **for 2015?**

20      A.   No.  We don't have an ability to go to the

21  historical pricing value, so the value provided was

22  current day pricing.

23      **Q.   Right.  So what -- so when you ran the**

24  **CoreLogic numbers in 2022, you were giving the Lindsays**

25  **a number for reconstruction costs for what year?**

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 17 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
114

1    We insure -- well, let me re-read this.  So the second

2    paragraph here says, "In order to do this, we conduct on

3    onsite inspections of the properties we ensure.  The

4    inspections are performed to identify possible

5    conditions that may contribute to a future loss or

6    jeopardize the safety of the property.  An independent

7    property service completed an inspection on your home."

8    Goes on to say, "Our findings are outlined below, along

9    with next steps and when we need to hear from you.  It's

10   important that we hear from you to ensure we can

11   continue to provide coverage for this property."

12   Nowhere in this letter does Travelers indicate that they

13   completed an incomplete inspection of the Lindsays'

14   home, right?

15       A.    There is no indication that they converted it,

16   because they did complete the inspection.

17       Q.    Okay.  And --

18       A.    They just -- there's no indication they didn't

19   get inside the property.

20       Q.    Right.  And so there's nothing in this letter

21   stating that Travelers attempted to conduct an interior

22   inspection, but because the Lindsays were not available

23   or didn't provide access to the home, they were unable

24   to complete the interior inspection, right?

25       A.    Not in this letter, but the Lindsays were made

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com

Case No. 1:23-cv-01413-NYW-STV    Document 128-8    filed 10/17/25    USDC Colorado
pg 18 of 18
The Deposition of BREANNA WEBB, taken on February 28, 2025
115

1  aware in their new business policy packet that they

2  would be required to complete an interior inspection.

3     Q.   How do you know that?

4     A.   That was standard in all of our new business

5  packets.

6     Q.   Okay.  And then going to Exhibit 93, this is

7  what we had gone over earlier in your deposition.  It

8  was a letter from GEICO to the Division of Insurance in

9  which it recounted conversations that GEICO had with the

10  Lindsays.

11          And you agree here that GEICO indicated that

12  Ms. Lindsay in 2019 had contacted GEICO requesting to

13  recalculate the dwelling limit, right?

14     A.   That's what Mr. O'Malley indicates in his

15  letter, yes.

16     Q.   And he further indicates that the agent

17  reviewed the home components with Mrs. Lindsay and

18  recalculated the replacement cost as $436,205, which was

19  lower than their dwelling limit at the time, right?

20     A.   That is what it says, yes.

21     Q.   And then you recall reviewing earlier today

22  underwriting logs indicating that there were

23  conversations with the Lindsays, and the acronym for

24  over-insured was included in those notes; do you recall

25  that?

Pike Reporting Company
410 17th Street, Suite 1350
Denver, CO 80202


PIKE
REPORTING
COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300
schedule@yournextdepo.com
www.pikereporting.com