| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, STATE OF COLORADO<br>1777 6TH Street<br>Boulder, CO 80302<br>(303) 441-3750<br><br>Plaintiffs: DANIEL WYSS and WENDY WYSS<br><br>v.<br><br>Defendants: TIMOTHY J. CAMPBELL and FARMERS INSURANCE EXCHANGE | DATE FILED: July 11, 2024 11:15 AM<br>CASE NUMBER: 2022CV30810<br><br>▲  COURT USE ONLY  ▲<br><br>Case Number: 2022CV30810<br>Div. 5 |
| **COMBINED ORDER RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** | |

THIS MATTER comes before the Court on motions filed on behalf of Defendant Timothy J. Campbell ("Campell") and Farmers Insurance Exchange ("Farmers") seeking summary dismissal of Plaintiffs' claims. The Court, having considered the pleadings, file and applicable law finds that the motions are GRANTED.

## INTRODUCTION

1. <u>Nature of Litigation</u>. This litigation arises from insurance claims made by Plaintiffs Danial and Wendy Wyss (the "Wyss'") after their home at 7302 Spring Court, Boulder, Colorado (the "Spring Court Residence") was destroyed in the Marshall Fire in December 2021. "The Spring Court Residence was insured under a Farmers Smart Plan Home Policy … [which was] procured … through [Plaintiffs'] insurance agent, Defendant Campbell. … The Spring Court FIE Policy has a coverage limit of $698,000 for Coverage A – Dwelling, Extended Replacement Cost of 25% ($174,500), Coverage B – Separate Structure $34,900, Coverage C – Personal Property Contents Replacement Coverage $272,900 and Coverage D – Loss of Use $136,900 for a term

EXHIBIT 12

of 24 months." 2nd Am. Cmpl ¶s 9, 10 and 14.  The subject policy was obtained in March 2021 with an effective date through March 22, 2022.  The Wyss' made a claim under the policy for damage to their home and property.  They subsequently obtained "an 'as/was' build estimate … to rebuild the Spring Court Residence …[for] $1,754,507.00." 2nd Am. Cmpl ¶28.  They also discovered, after the fire, that "the Farmers Smart Plan Home Application for Insurance ('Application') … contained the incorrect square footage for the Spring Court Residence … Specifically … the Application listed the square footage … as 1,740 square feet … [Whereas] … the square footage … is approximately 2,740 square feet." 2nd Am. Cmpl ¶s31-33   The Wyss' requested reformation of their policy.  Farmers refused to reform the policy.  Plaintiffs assert the following Claims for Relief against Defendants:

> [First Claim] – <u>Negligence</u> (against Campell).  Plaintiffs generally allege that Campell breached a duty to obtain proper insurance coverage by failing to "conduct a replacement cost analysis based on the type and style of the Spring Court Residence, its accurate square footage, and the need for replacement cost coverage to exceed the amount of the policy limit due to the risk of rising construction prices." 2nd Am.Cmpl ¶44
>
> [Second Claim] – <u>Breach of Fiduciary Duty</u> (against Campell).  Plaintiffs assert that they had a special relationship with Campbell which required him to "advise regarding the proper amount of coverage and … to procure such coverage." 2nd Am. Cmpl ¶55
>
> [Third Claim] - <u>Reformation of Policy</u> (against Farmers). Plaintiffs allege that the "Policy does not represent the true agreement of the parties" because the Application contained the wrong square footage. 2nd Am. Cmpl ¶60
>
> [Fourth Claim] – <u>Statutory Delay/Denial Insurance Claim</u> (against Farmers). "As a result of [Farmers] refusal to reform the Spring Court FIE Policy, [Farmers] delayed and/or denied payment of first-party benefits" in violation of §10-3-115(2) and 1116, C.R.S. 2nd Am. Cmpl ¶s 67-68.

[Fifth Claim] - <u>Breach of Duty of Good Faith & Fair Dealing</u> (against Farmers) Plaintiffs assert that Farmers has acted unreasonably in failing and refusing to reform the subject policy.

The matter is presently set for a five-day jury trial starting on August 5, 2024.

2. <u>Farmers Motion for Summary Judgment</u>. Farmers seeks dismissal of the Third, Fourth and Fifth claims of relief asserting generally that the language of the subject policy precludes the relief sought by Plaintiffs. Farmers states that it has paid 100% of the policy coverage for dwelling, personal property and loss of use and Plaintiffs have not yet presented any support for Extended Coverage. Further, Farmers argues that there is no duty or obligation to reform the Policy as "Farmers provided the insurance coverages requested…" Farmers MSJ, 2. In support of its motion, Farmers set forth the following relevant material facts:

- … in March 2021 … Plaintiffs submitted an application for property insurance. Farmers MSJ, Facts ¶2

- The Application … stated that the Property was comprised of 1,724 square feet. Farmers MSJ, Facts ¶3

- The Application … [contained] an acknowledgement of true and accurate information that was electronically signed by Plaintiff Daneil Wyss: [The Acknowledgement contained the following language:]

    … I **acknowledge that the selected options and limits** indicated in this application **accurately reflect the coverage and limits options I want.** … I confirm that I have supplied the **information entered in the application** and that all such information **is true, correct and complete** to the best of my knowledge.

    … I have read the above Application for Insurance. I agree that this application accurately summarizes the insurance for which I have applied and agree to the terms and conditions of insurance. (Emphasis added) Farmers MSJ, Facts ¶4, Ex.A, App 10-11.

- The application contained … [the following] additional language …

3

Farmers uses an estimating program to calculate the Estimated Reconstruction Cost to rebuild your home based on the unique characteristics and geographic location of your home that you confirmed with your agent. **The estimate is a guide … and is not a guarantee that your home can be rebuilt for the amount of the estimate**. Please verify that all the information on the estimate is complete and correct… **You may choose to insure your home for the estimated amount, or you may select a different amount.** Your agent cannot choose the coverage amount for you. **It is your right and responsibility to determine the amount of insurance coverage required to rebuild your home**. (Emphasis added) Farmers MSJ, Facts ¶4, Ex.A App, 3.

- [The policy provided the following coverage amounts]:

    a. Coverage A – Dwelling up to a limit of $698,000 with extended replacement cost of 25% ($174,000),

    b. Coverage B – personal property up to a limit of $279,200 with replacement coverage, and

    c. Coverage C – Loss of Use up to $139,600 with Additional Living Expense for a term of 24 months. Farmers MSJ, Facts ¶6, Ex.B Policy Dec Page

- For [the] Extended Replacement Cost coverage to apply at the time of the covered loss or damage to the dwelling [Insured] must have complied with each of the following conditions, as applicable:

    a. you must have **notified us within 60 days of any inaccuracy or change in any information *you have provided*** us regarding the physical characteristics of your dwelling;

    b. you must have notified us within 60 days of any inaccuracy or change in information *we have provided* to you regarding the physical characteristics of your dwelling;

    c. …

    d. you must have selected or increased the Coverage A (Dwelling) amount to an amount at least equal to the estimated replacement cost …

    e. **you must actually repair, rebuild or replace** the loss or damage to the dwelling.

4

> If you do not comply with conditions a., b., c and d. above prior to covered loss or damage to the dwelling and with condition e. above after the loss or damage, then this Extension of Coverage will not apply. (Emphasis added) Farmers MSJ, Facts, ¶7, Ex.B Policy, 15

- The Policy coverages were reviewed in August 2021. Farmers MSJ, Facts ¶11, Ex.E

- As of November 2021, Plaintiffs did not request any changes to the Policy, Farmers MSJ, Facts ¶12, Ex.G

- On January 5, 2022, 6 days after the fire, Farmers paid Plaintiffs 100% of the dwelling coverage available under Coverage A of the Policy and made a payment of $698,000. Farmers MSJ, Facts ¶20, Ex.D

- Farmers also paid 100% of the personal property coverage … Farmers MSJ, Facts ¶21, Ex.D.

- As Plaintiffs submitted receipts for Additional Living Expenses (ALE) Farmers paid them. Farmers MSJ, Facts ¶22, Ex.D

- Farmers paid 100% of the Loss of Use benefits supported by receipts or other proof of payment … Farmers MSJ, Facts ¶23, Ex.D

Farmers argues that it "fully performed its obligations under the insurance Policy and timely paid the benefits owed to Plaintiffs." Farmers MSJ, 11. Defendant asserts that there is no factual basis for any claim for statutory bad faith delay or denial of benefits for Extended Replacement "[a]s no repairs have been made and the dwelling has not been rebuilt." Farms MSJ, 12. Finally, Farmers contends that it had "no duty to reform the Policy where there was no mistake regarding the terms of requested coverage and the coverage provided under the Policy." Farmers MSJ, 13.

3. <u>Campbell's Motion for Summary Judgment</u>. Defendant Campbell seeks summary dismissal of Plaintiffs First and Second claims of relief against him. Cambell sets forth the following Undisputed Facts:

5

- … Plaintiffs … engaged Defendant Campbell to act as their insurance agent. Campbell MSJ, Facts ¶3

- Plaintiffs contacted Defendant Campbell to obtain insurance on their Property in February 2021. Campbell MSJ, Facts ¶7, Ex.A D.Wyss Depo 21:6-13

- Defendant Campbell appeared on site to observe the Property to assemble a quote for insurance through Defendant Farms. Campbell MSJ, Facts ¶8, Ex.A 40:4-10

- Defendant Campbell inputted information, including publicly available assessor information, about the Property into Defendant Farmers' computer system using 'raters' software utilized by Farmers to calculate coverage limits and premiums. Campbell MSJ, Facts ¶9, Ex.B Campbell Depo 79:11-19

- Plaintiffs acknowledge receipt of the February 25, 2021, quote for the Policy prior to it being bound. Campbell MSJ, Facts ¶13, Ex.C Depo Ex28

- **Plaintiff had in their possession the information identifying the specific limits of coverage** on the perils that would be covered by the Policy if it was purchased. (Emphasis added) Campbell MSJ, Facts ¶14, Ex.C , Ex.D

- Farmers issued the requested Policy, which was transmitted by Defendant Campbell to Plaintiffs along with another copy of all the specific coverages and limits, with instruction to review and address any questions to Defendant Campbell. Campbell MSJ, Facts ¶20, Ex.E.

- Having all this information about the Policy's coverages and specific limits, and having attested that they reviewed the same, Plaintiffs never contacted Defendant Campbell to make any changes to the Policy. Campbell MSJ, Facts ¶22, Ex.A.

Campbell asserts that Plaintiffs negligence claims should be dismissed because the undisputed facts demonstrate that he did not violate the standard of care for insurance agents in Colorado. Campbell argues that "[i]n Colorado, an insurance agent does not have a duty to ensure a client is completely protected or to recommend higher limits."

Campbell MSJ, 8[1] Defendant Campbell notes that "Plaintiffs admit that they had three opportunities to review in plain English a quote, an application, and the Policy itself, each with attestations of review …" Campbel MSJ, 9, ref'd Facts ¶s12-22. Campbell further argues that he did not owe any enhanced duty to Plaintiffs as there is no basis to claim that he assumed any additional responsibilities beyond those of any agent to act with reasonable care, rather "there are no disputed facts that Defendant Campbell did anything other than act as a general insurance agent for Plaintiffs. They freely admit that they have never entrusted or compensated him directly for any purpose other than his procurement of their insurance…" Campbel MSJ, 11.

4. <u>Plaintiffs' Response to Motions for Summary Judgment</u>. In responding to the motions for summary judgment Plaintiffs admit the following facts:

Response to Farmers Facts

- Admit that the application simply notes 1,724 for Square Footage… Rsp Farmers MSJ, Facts, ¶3

- Admit that the application contained the cited language and was electronically signed by Mr. Wyss … Rsp Farmers MSJ, Facts ¶4

- Deny that the policy provided an extended replacement cost … admit to the remaining coverages… Rsp Farmers MSJ, Facts ¶6

- Admit that the policy contained the cited language [related to Extended Coverage but assert that] the language in paragraph D is vague and ambiguous … Rsp Farmers MSJ, Facts ¶7

- Admit that the policy contains the cited language … [related to confirming the accuracy of information] Rsp Farmers MSJ, Facts ¶8

- Admit [policy limits]. Rsp Farmers MSJ, Facts ¶9

---

[1] Defendant cites to *Apodaca v. Allstate Ins. Co.*, 232 p3d 253, 259 (Colo. App. 2009); *Kaercher v. Sater*, 155 P3d 437, 441 (Colo. App. 2006) and 4 Couch on Insurance §55:5 (3d ed.)

7

- [Dispute date of payment stating,] farmers paid $698,000 on January 10, 2022 [not January 5]. Rsp Farmers MSJ, Facts ¶20.

- Admit that Farmers has paid $279,200 under personal property coverage. Rsp Farmers MSJ, Facts ¶21

- The Wysses admit that Farmers paid Additional Living Expenses for 24 months but not beyond that point. Rsp Farmers MSJ, Facts ¶22

- The Wysses admit that Farmers paid Loss of Use/Additional Living Expenses for 24 months but not beyond that period. Rsp. Farmers MSJ, Facts ¶23

- The Wysses admit that they have not provided any documents for payment of the Extended Replacement benefits because they have not been able to rebuild the Spring Court home. Rsp Farmers MSJ, Facts ¶24.

<u>Response to Campbell's Facts</u>

- Admit [Plaintiffs' utilization of Defendant Campbell's services has never been for anything other than 'strictly insurance.'] Rsp Campbell MSJ, Facts ¶6

- Admit [Defendant Campbell appeared on site to observe the Property to assemble a quote for insurance through Defendant Farmers.] Rsp Campbell MSJ, Facts ¶8

- The Wysses admit that Defendant Campbell inputted 'some of the figures off of the assessor's report' into Defendant Farmers' computer system using a rater, which was pre-filled, in addition to information he believed was correct based on notes he took during inspection of the Wysses home – [adding] Defendant Campbell also had the ability to manually change information in the rater, such as the square footage of the home. Rsp Campbell MSJ, Facts ¶9.

- Deny [that [t]he software calculated the values for limits of available coverages appropriate for the Property] [Plaintiffs assert instead that] Defendant Campbell … selected certain limits and amounts that he believed were appropriate and later recommended to Plaintiffs. Rsp Campbell MSJ, Facts ¶10.

- Plaintiffs admit that they were later informed of the limits by Defendant Campbell. Rsp Campbell MSJ, Facts ¶s14 -15.

8

- Admit [Plaintiffs were provided, and on March 14, 2021, electronically signed the application to purchase the Policy.] Rsp Campbell MSJ, Facts ¶16

- Admit [Plaintiff Daniel Wyss signed that application which attested that, as the signer he had read the application and it accurately summarized the insurance he wished to receive from Farmers.] Rsp Campbell MSJ, Facts ¶19

- **Admit [Having all this information about the Policy's coverages and specific limits,** and having attested that they reviewed the same, Plaintiffs never contacted Defendant Campbell to make any changes to the Policy.] (Emphasis added) Rsp Campbell MSJ, Facts ¶22

While Plaintiffs generally agree with the facts as set out by Farmers and Campbell, they argue that they "were led to believe" that the policy would cover the full cost to rebuild their home. Rsp Farmers MSJ, 5. They contend that Farmers use of a "rating software tool," produced an estimate for coverage that was inadequate. They state that "Defendant Campbell promise[d] to procure full coverage for the home but instead offered a policy based on inaccurate replacement cost that did not cover the accurate square footage of the … home and included extended replacement and personal property coverages that Defendant Campbell significantly reduced without ever informing the Wysses that he had done so." Rsp Campbell MSJ, 8.

Plaintiffs assert that Defendant Campbell "mischaracterizes the Wysses' theory of liability for negligence," explaining that "Defendant Campbell was fully aware, from his past dealings with the Wysses and their prior flood loss, that they wanted to ensure that they could rebuild their home after a loss …" but he… "failed to follow the directive from Defendant Farmers to review each of the inputs in the rating software with the Wysses, failed to inform the Wysses that he selected extended replacement cost coverage in an amount less than what he had previously procured for the [Plaintiffs' prior home], and

9

made a unilateral decision, without their input, to reduce the personal property coverage." Rsp Campbell MSJ, 9-11.

5. <u>Defendants' Replies in support of Motions.</u> Farmers asserts that the "Policy language at issue here regarding coverages and limits are objectively unambiguous…The limits and coverages are unambiguous, and clearly disclosed that the Policy did not offer guaranteed replacement cost." Farmers Rply, 5-6. Plaintiffs have acknowledged that Farmers has paid all amounts due under the policy, thus there can be no claim based on any delay or failure to pay. Finally, Farmers summarizes Plaintiffs' argument by pointing out that "Plaintiffs concede that payments made thus far were timely. [Therefore], unless the Policy is reformed, their claims all fail as a matter of law." Farmers Rply,2. Farmers disputes that there is any basis for reformation of the policy where Plaintiffs "appear to concede that they unilaterally made the mistake that the policy offered guaranteed replacement cost, and that Farmers insured the house based on the allegedly incorrect square footage. …[T]his argument is unpersuasive [because] Farmers disclosed, multiple times, exactly how the offered coverages were determined." Farmers Rply,4.

Defendant Campbell emphasizes that "a plaintiff cannot maintain a claim against her or his insurance agent when the basis of their cause of action arises from information they had in their possession prior to injury." Campbell Rply, 10. Thus, he argues, even if he admits all of the additional facts asserted by Plaintiffs, such as failure to go line-by-line over the application, inserting inaccurate square footage into the estimator software, or selecting a reduced property damage limit, the Plaintiffs were provided with the limits of coverage prior to accepting the policy. As to Plaintiffs'

10

Fiduciary Duty claim, Campbell replies that "Plaintiffs admit all facts necessary to eliminate this claim from the case on summary judgment." Campbell Rply,13.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. If the non-moving party cannot produce enough evidence to establish a triable issue, then the moving party is entitled to summary judgment as a matter of law." *Gibbons v. Ludlow*, 304 P3d 239, 243-44 (Colo. 2013). "For purposes of summary judgment, a 'material fact' is one that will affect the outcome of the case." *Morley v. United Services Automobile Association*, 465 P3d 71, 74 (Colo. App. 2019). "Under C.R.C.P. 56(e), when a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *A-1 Auto Repair 7 Detail, Inc. v. Bilunas-Hardy*, 93 P3d 598, 603 (Colo. App. 2004). "A litigant cannot avoid a summary disposition of his case by merely asserting a fact, without any evidence to support it … unsubstantiated, self-serving testimony in an affidavit does not create a genuine issue of material fact for summary judgment purposes where the record does not contain corroborating evidence." *Coffman v Williamson*, 348 P3d 929, 938 (Colo. 2015). "The interpretation of a written contract is generally a question of law for the court to decide. As such, it is appropriate to resolve contract interpretation disputes on summary

11

judgment." *Anderson v. Denver Public School Employees' Pension and Ben. Ass'n.*, 935 P2d 31, 33 (Colo. App. 1996).

## Insurance Contracts

"The interpretation of an insurance policy is a matter of law. … An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided." *Allstate Ins. Co., v. Huizar*, 52 P3d 816, 819 (Colo. 2002). "A trial court may not look beyond the plain words of an insurance contract to interpret it based on the contracting parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract." *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P2d 483,486 (Colo. App. 1997). "[T]he determination whether [a] contract is ambiguous [is a] question[ ] of law…" *Terra Matrix, Id*.

In this case, the policy language concerning the limits of coverage is clear and unambiguous. Where the language in an insurance policy is unambiguous an insured "in possession of this policy [is] charged with knowledge of the restrictions in the policy." *Pete's Satire, Inc. v. Commercial Union Ins. Co.* 698 P2d 1388, 1391 (Colo. App. 1985). Farmers issued a policy with stated policy limits for coverage of a loss of Plaintiffs' home. Farmers paid 100% of those policy limits. Although Plaintiffs may have desired a policy that would cover full replacement cost of their home, the Farmers policy did not provide any such guarantee and the Plaintiffs had full knowledge of the coverage limits. They had the opportunity to obtain greater coverage but declined to take any action to do so.

**Contract Reformation**

"Reformation is an appropriate remedy when the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. … However, where a party's unilateral mistake is the result not of fraud, but of its own failure to use due diligence in reading the contract before signing it, that party will be held to the terms of the contract." *Poly Trucking, Inc. v. Concentra Health Services, Inc.*, 93 P3d 561, 563 (Colo. App. 2004). "A court may not reform an insurance contract absent proof of a mutual mistake between the parties. An essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that represents the actual expectations of the parties and provides the basis upon which a court orders reformation." *Continental Western Ins. Co. v. Jim's Hardwood Floor Co., Inc.*, 12 P3d 824, 827 (Colo. App. 2000). "Such a mistake must be one which is reciprocal and common to both parties, and both parties must labor under the same erroneous conception with respect to the terms and conditions of the instrument." *Simon v. Truck Ins. Exchange*, 757 P2d 1123, 1124 (Colo. App. 1988)

Here, Plaintiffs assert that they desired to obtain an insurance policy that provided full replacement cost for their home in case of a loss. It is undisputed that Farmers offered a policy with specifically stated limits for coverage. Plaintiffs accepted the policy with those limits. Even if the Court were to accept that Plaintiffs "mistakenly" believed that the policy provided full replacement cost coverage, there is no evidentiary basis for the Court to find that Farmers had a similar belief. Therefore, there is no mutual mistake upon which reformation could be based.

**Bad Faith Delay or Denial of Insurance Payments**

"Every contract in Colorado contains an implied duty of good faith and fair dealing. …Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort. … an insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances." *Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P3d 409, 414 (Colo 2004).  "In 2008, the General Assembly enacted sections 10-3-1115 and 1116 … [which] concern the improper denial of claims." *Kisselman v American Family Mut. Ins. Co.*, 292 P3d 964, 970 (Colo. App. 2011). These provisions provide, in part, that: "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant … [and] … an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Kisselman, Id.* at 970-71.

In this case it is undisputed that Farmers paid 100% of the limit for benefits provided under the policy within days of the loss (either January 5 or January 10, 2022 for a December 30, 2021 loss).  The only benefit not paid, to date, is for Extended Coverage.  However, Plaintiffs admit that they have not submitted any request for payments under this portion of the policy, since they have not rebuilt their home.  There has been no delay or refusal to pay and therefore Plaintiffs cannot sustain their claim for breach of the duty of good faith and fair dealing or their statutory bad faith claim.

**Insurance Agent Negligence**

"Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy. … [The] general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete protection. … No duty to give advice is created simply because the insurance intermediary becomes a person's agent. This applies both to advice about what policies should be purchased as well as advice about what coverage is contained in an insured's existing policy. … Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage." *Kaercher v Sater*, 155 P3d 437, 441 (Colo. App. 2006). "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Richardson v. Amica Mutual Ins. Co.*, 693 F. Supp3d 1181, 1186 (D. Colo. 2023), quoting *Univ. of Denver v. Whitlock*, 744 P2d 54, 56 (Colo. 1987).

In *Richardson*, the federal district court for Colorado, applying Colorado law, dismissed claims of negligence against defendant insurer based on an alleged failure "to secure contents coverage or issue a Homeowners Policy with modified coverage…" *Richardson, Id.* at 1186. That court found that there was no duty "to watch out for all rights of the insured and inform the latter of them … [and] … the insurer has no duty to

15

affirmatively advise or warn a customer of provisions contained in an insurance policy." *Richardson, Id.* at 1188.

Here Plaintiffs assert that Campbell owed them enhanced duties because of a "special relationship" between the parties. "Whether a special relationship has been formed turns on whether there is 'entrustment,' that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competence and skills." *Kaercher, Id.* at 441. The plaintiffs in *Richardson* asserted that there was a "special relationship' between plaintiffs and the insurance agent which the court addressed, finding that no such relationship was formed simply because the agent had worked with the client in the past to procure insurance. The court analyzed the relevant law on the subject stating:

> Plaintiffs have not cited any case where a Colorado court found that an insurance agent had a duty to procure coverage for a customer on the basis of the agent's previous dealings with the customer, and the Court is aware of none. However, there are cases from other states that have recognized special relationships arising from defendants' prior dealings, but in those cases the defendants had taken care of the insureds' needs over many years without consulting them or obtaining express orders to do so. [internal citations omitted]. … The Court has found no case where a special duty arose from one instance of an insurance company issuing or renewing a policy without direction from the policyholder.

*Richardson, Id.* at 1188.

"Even when an agent represents that he or she is knowledgeable about insurance coverages, and regularly in the course of his or her business, informs, counsels, and advises customers about their insurance needs, the agent does not incur duties beyond those of the standard policyholder-insurance agent relationship. Thus, in most

16

circumstances, an insurance agent does not have a duty to advise of additional and available insurance coverages suitable for the customer's needs." *Apodaca v. Allstate Ins Co.*, 232 P3d 253, 259 (Colo. App. 2009).

Although Plaintiffs allege that there was a "special relationship" with Campbell, they at best reference only that he was more detailed in his discussion about a policy that covered their prior home. Further, Plaintiffs admit that they only retained Campbell's services for the purpose of obtaining insurance and that he never acted in any other capacity, such as a financial consultant or advisor. There was no long-term relationship of any sort between the parties. Plaintiffs' allegations, even if taken as true, are insufficient to create any fiduciary duty owed on the part of Campbell.

## CONCLUSION

For the reasons set out above, the Court finds that Defendant Farmers motion for summary judgment dismissing Plaintiffs Third (Reformation), Fourth (Statutory Bad Faith) and Fifth (Breach of Duty of Good Faith) Claims for Relief is GRANTED.

The Court similarly finds that Defendant Campbells motion for summary judgment dismissing Plaintiffs First (Negligence) and Second (Breach of Fiduciary Duty) Claims for Relief is also GRANTED.

SO ORDERED THIS July 11, 2024.

BY THE COURT:

Elizabeth Beebe Volz
District Court Judge