| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 South Potomac Street<br>Centennial, Colorado 80112<br><br>Plaintiffs: CRAIG BARSHINGER and JODI BARSHINGER<br><br>v.<br><br>Defendants: STATE FARM FIRE AND CASUALTY COMPANY and MICHELE VANAGS | DATE FILED<br>March 5, 2025 2:55 PM<br>CASE NUMBER: 2023CV31178<br><br>▲ COURT USE ONLY ▲<br><br>Case Number: 2023CV31178<br>Div. COC |
| --- | --- |
| **COMBINED ORDER ON MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY & MICHELLE VANAGS** | |

THIS MATTER comes before the Court on motions filed on behalf of Defendant State Farm Fire and Casualty Company ("State Farm") and Michelle Vanags ("Vanags") seeking summary dismissal of Plaintiffs claims. The Court, having considered the pleadings, file and applicable law, finds that the motions are GRANTED.

## INTRODUCTION

1.  <u>Nature of Litigation</u>. This litigation arises out of Plaintiffs Craig and Jodi Barshinger's (jointly the "Barshingers") insurance claim following the destruction of their home in the Marshall Fire. Plaintiffs generally allege that they relied on representations of Defendant Michele Vanags ("Ms. Vanags"), an insurance producer, and State Farm that Plaintiffs had purchased an insurance policy which "would provide coverage for 100% of the replacement cost of their Home." Am.Cmpl ¶21. They further allege that after submitting their claim they learned that the policy falls short by $281,278.39

EXHIBIT 13

needed for full replacement. Plaintiffs also allege that State Farm has failed to properly handle their claim.  Plaintiffs set forth claims of relief[1]  against State Farm for:

1.    Reformation of Policy (First Claim)

2.    Breach of Contract (Second Claim)

3.    Bad Faith Breach of Insurance Contract – Unfair or Deceptive Practices (Third Claim)

4.    Improper Denial or Unreasonably Delay of Insurance Claim (Fourth Claim)

5.    Intentional Misrepresentation (Sixth Claim)

6.    Vicarious Liability (Ninth Claim)

Plaintiffs asserted the following claims of relief against Defendant Vanags:

1.    Negligence (Seventh Claim)

2.    Negligent Misrepresentation (Eighth Claim)

### Undisputed Facts

2.    In their respective motions, Defendants set forth various statements of "Undisputed Facts."  Plaintiffs added "Additional Disputed Facts" in their responses to the motions.  The Court finds the following relevant facts are undisputed:

a.    On March 30, 2018, [State Farm] issued Plaintiffs' homeowners' policy no. 06-CW-W506-6 ([the] 'Policy'), which provided coverage for the Property's improvements, subject to the Policy's terms, conditions, provisions, limitations, and exclusions. State Farm Facts ¶3/Pltfs Rsp Facts ¶3 "Admitted"

b.    Plaintiffs purchased the Policy through Vanags' agency. State Farm Facts ¶6/Pltfs Rsp Facts ¶6 "Admitted

c.    [Plaintiffs] … told Vanags that Plaintiffs wanted to purchase 'adequate insurance coverage,' meaning a policy that provided '100 percent replacement cost,' and would 'make Plaintiffs whole,' 'build

---

[1] Plaintiffs withdrew a claim of Negligent Misrepresentation against State Farm.

them a house' and give them money to build a house in the event of a total loss. State Farm Facts ¶7/Pltfs Rsp Facts ¶7 "Admitted."

d.    From 2018 through 2021, the Policy was renewed annually… State Farm Facts ¶8/Pltfs Rsp Facts ¶8 "Admitted."

e.    … State Farm sent Plaintiffs renewal notices advising that:

> IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET.
>
> *****
>
> ***PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS***

State Farm Facts ¶13/Pltfs dispute receiving all notices but do not dispute that such notices are contained in the Policy documents.

f.    State Farm [also] sent Plaintiffs renewal notices advising that:

> ***It is up to you to choose the coverages and limits that meet your Needs***. We recommend that you purchase a coverage limit equal to the estimate replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or your agent can provide an estimate from Xactware, Inc. using information you provide about your home …
> Higher limits are available at higher premiums. … We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

State Farm Facts ¶14/Pltfs dispute receiving all notices/ Pltfs Rsp Vanags MSJ, Add'l Facts ¶2 includes this same language.

g.    … State Farm sent Plaintiffs a Summary of Coverage, stating:

> The coverage listed on your attached declaration page is only an Estimate of the replacement cost value of your insured property***. It may not be sufficient to replace your property in the event of a total loss***. If you have concerns about the estimated replacement cost amount used to derive your coverage, you should take an opportunity to discuss this with us to ensure your property has enough coverage in the event of a total loss.
>
> State Farm Facts ¶15/Pltfs dispute receiving all notices.

h.    [Although Plaintiffs deny receiving all of the policy documents sent by State Farm, Plaintiffs provide the following in their] 'Statement of Additional Disputed Facts ('SADF'): At least four of the policy documents allegedly sent to the Barshingers by State Farm contain the following notation:

> **IMPORTANT: In Colorado, there is potential for large and even total losses due to fires, tornadoes, other natural disasters, or other causes of loss. It is extremely important to conduct an annual review of your property coverage to ensure you are adequately insured. If you have questions or concerns regarding your insurance coverage, be sure to discuss them with your insurance agent or company representative. Please maintain a copy of this document and your entire policy in a safe and secure location away from your property.**

Pltfs Rsp Vanags MSJ, Add'l Facts ¶1.

i.    The total square footage information on the replacement cost estimate was modified by Agent Vanags or one of her employees before the policy was issued by State Farm. Pltfs Rsp State Farm MSJ, Add'l Facts ¶1.

j.    … neither Ms. Vanags nor anyone from her office shared the 360Value (Xactware) report that was prepared for purposes of estimating the home's replacement cost value nor did they go through each line of the Barshingers' Xactware report with the Barshingers. Plaintiffs Rsp State Farm MSJ, Add'l Facts ¶3.

k.    Nowhere in the Policy documents are the total square footage or other specifications and features of the Barshingers' home included. Plaintiffs Rsp State Farm Add'l Facts ¶12.

l.    [Prior to the Marshall Fire] … Mr. Barshinger protested the Boulder County Assessor's valuation of the Property … and estimated the Property's value **with land and improvements** to be $450,000 … $38,000 **less** than the limit of the Policy's coverage for the dwelling alone. Vanags' MSJ Facts ¶13/ Plaintiffs dispute the effect of this statement acknowledging that "Mr. Barshinger … started negotiations with the agency by presenting a lower tax basis of $450,000. After the appeal process Boulder County ultimately determined the tax basis amount somewhere between $852,000 and $1.3 million." Pltf Rsp Vanags MSJ, Facts¶13..

**State Farm's Motion for Summary Judgment**

3.    <u>State Farm's Motion for Summary Judgment – Claim for Reformation</u>.

State Farm asserts that Plaintiffs claim for Reformation of their insurance policy to

provide unlimited coverage should be dismissed as a matter of law because the undisputed facts are that "the Policy contains clearly stated coverage limits … that State Farm advised Plaintiffs of those coverage limits, that selecting coverage limits was their responsibility …[and] Plaintiffs knew the Policy's coverages and are legally bound by them." State Farm MSJ, 11.

*Plaintiffs Response.* Plaintiffs assert that "Reformation is not an extraordinary remedy in the context of insurance policies" (Rsp State Farm MSJ, 12) … "[d]ue to the unequal bargaining position between insurers and insureds." Rsp State Farm MSJ, 12. They argue that they did not know that the square footage of their home, which was used to estimate an amount of coverage was incorrect as "no policy document that was purportedly later mailed to the Barshingers contained square footage information nor other specifications or features of their home." Rsp State Farm MSJ, 13. Plaintiffs go on to argue that "State Farm was aware of public facing data on underinsurance following prior wildfires" and thus State Farm was required to take further action to determine replacement cost more accurately. Rsp State Farm MSJ, 16.  Therefore, they assert that "the policy should be reformed when there is unilateral mistake by the insured, and inequitable conduct or fraud on the part of the insurer, which the Barshingers' are arguing here." Rsp State Farm MSJ, 16.

*State Farm Reply.*  State Farm points out that Plaintiffs have "confessed they knew the Policy had limits" but erroneously believed that the policy limits would adequately provide coverage in the event of a total loss. Such argument, State Farm asserts is fatal to Plaintiff's Reformation claim. State Farm Rply, 2. Further, State Farm argues, "Plaintiffs never pled inequitable conduct as the basis of their reformation claim,

never sought leave to amend their complaint, and never met the requirements to amend." State Farm Rply, 6. Thus, Defendant objects to raising such argument now.

    4.   <u>State Farm's Motion – Intentional Misrepresentation Claim</u>. State Farm seeks summary judgment dismissing Plaintiff's Intentional Misrepresentation Claim arguing that Plaintiffs' claim is apparently based on Plaintiffs' assertion that State Farm or its agent Ms. Vanags stated that the policy provided "unlimited coverage." State Farm MSJ, 16.  However, "multiple documents State Farm sent Plaintiffs advising of the Policy's coverage limits, that setting the limits was Plaintiff's responsibility … that they should review those limits, and that those limits may be insufficient to cover all costs related to a rebuild in the event of a total loss," refute any allegation that State Farm represented that the policy would provide total rebuild cost without any limit. State Farm MSJ, 16, citing to, Undisputed Facts ¶s 11, 13-15.

    *Plaintiffs Response*. Plaintiffs assert that their Intentional Misrepresentation claim against State Farm is premised on State Farm's marketing of a 100% replacement cost policy. Plaintiffs argue that there was "no process in place to verify the accuracy of the specifications of the home," and thus State Farm "induced Mr. Barshinger to purchase" the policy, believing it was a "100% replacement cost" policy. Rsp State Farm MSJ, 20.

    *State Farm Reply*. State Farm argues that "Plaintiffs' response fails to provide any evidence that State Farm (or Vanags for that matter) did anything with 'knowledge of its untruth, or recklessly and willfully … without regard to its consequences, and with an intent to mislead and deceive … the square footage input in the application was obtained from the Boulder County Assessor – the same square footage Plaintiffs never disputed when seeking to pay less property tax. Plaintiffs submitted no evidence that

Vanags knew the Boulder County Assessor's square footage was not accurate and that she intended to mislead and deceive the Barshingers by using it." State Farm Rply, 13. Further, State Farm argues "post-loss estimates of the home's replacement cost are irrelevant to determining whether an insurer made an intentional misrepresentation when issuing the Policy three years earlier." State Farm Rply, 14.

5.    State Farm's Motion – Vicarious Liability Claim. State Farm argues that Plaintiff's Vicarious Liability Claim asserted against it based on Defendant Vanags' alleged conduct should be dismissed because "as a matter of law, Vanags owed Plaintiffs no duty to secure 'unlimited' coverage, her alleged misrepresentations are not actionable, and Plaintiffs did not reasonably rely on her alleged misrepresentations … [and therefore] [b]ecause Vanags is not liable for negligence or negligent misrepresentation, State Farm is also entitled to summary judgment as to Plaintiffs' vicarious liability claim…" State Farm MSJ, 19.

*Plaintiffs' Response.* Plaintiffs contend that "Agent Vanags, who admits being a captive agent for State Farm, [negligently] inputted incorrect information regarding the Barshingers' home … [when submitting the application for insurance and therefore] … State Farm is vicariously liable for Agent Vanags' misconduct…" Rsp State Farm MSJ, 20.

*State Farm Reply.* State Farm replies that it was not unreasonable for Vanags to use square footage of the home as set out in the County Assessor records "and Plaintiffs never protested otherwise." State Farm Rply, 3.  State Farm argues that Ms. Vanags did not owe a duty to Plaintiffs to guarantee sufficient coverage for their property and therefore, there was no negligence or misrepresentation on her part and

no basis for vicarious liability against State. Farm. State Farm adds that "Plaintiffs do not dispute that, if Vanags is not independently liable under Plaintiffs' tort theories, State Farm is not vicariously liable for that conduct." State Farm Rply, 16.

6.    State Farm's Motion for Partial Summary Judgment – Contract and Bad Faith Claims. Finally, State Farm seeks partial summary judgment on Plaintiffs' claims that it breached its contractual obligations by failing to pay amounts over the policy limits.  It is undisputed that State Farm paid Plaintiffs policy limits for coverage of their dwelling, increased dwelling and upgrade limits, within forty-days of the fire. State Farm issued "$121,353.90 under the Policy's personal property coverage … just seven days after the fire, [and] $564,631.27 under the Policy's dwelling coverage that it paid just forty days after the fire." State Farm's MSJ, 20.  Defendant argues that "[a]s a matter of law, therefore, these two payments made within forty days of the loss and totaling $685,984.17 were not unreasonably delayed for purposes of section 10-3-1115, [and therefore the] Court should enter partial summary judgment as to Plaintiff's statutory claim …" State Farm MSJ, 22.

*Plaintiffs' Response*. Plaintiffs "acknowledge that there is no dispute as to the time of the payments of $121,353.90 for Coverage B (30% contents advance) and $564,631.27 for Coverage A (actual cash value settlement), and do not oppose the partial summary judgment as to those sums only." Rsp State Farm MSJ, 21-22. However, Plaintiffs contend that their claim for reformation increasing the coverage amounts for the dwelling and related costs preclude summary judgment on the remainder of the Breach of Contract claims.

*State Farm Reply*. As noted above, Plaintiffs do not dispute that State Farm is entitled to partial summary judgment on their statutory claim, and further "Plaintiffs do not dispute that, if the Court dismisses their reformation claim, then State Farm has paid the limits of certain coverages and therefore cannot be liable for any more benefits under those coverages." State Farm Reply, 15.

## Vanags Motion for Summary Judgment

7.    <u>Vanags' Motion – Negligence Claim</u>. Defendant Vanags seeks dismissal of Plaintiffs' negligence claim which is based on Plaintiffs' allegation that she failed to obtain insurance coverage sufficient to cover a complete rebuild of Plaintiffs' home.  Ms. Vanags submits that she did not owe a duty to sell them a policy for unlimited coverage and therefore there could be no breach of such a duty.   Ms. Vanags sets forth facts that "Plaintiffs asked Vanags for nothing more than to sell them insurance. Vanags never provided financial advice or served as a financial advisor, nor did Plaintiffs ever ask Vanags to place specialized coverage … Vanags acted only as an ordinary insurance agent and therefore had no 'special relationship' with Plaintiffs that could potentially impose heightened duties." Vanags' MSJ, 13-14, citing to Undisputed Facts ¶s 7-16.

*Plaintiffs' Response*. In response to this motion, Plaintiffs assert that their "Negligence and Negligent Misrepresentation claims [against Ms. Vanags] are not premised on State Farm's failure to provide 'unlimited coverage.' Rather, the Policy was underwritten with a total square footage that was approximately 1,000 square feet less than what was measured by an adjuster contracted with State Farm after the loss…" Rsp Vanags' MSJ, 5, ¶20.  Plaintiffs contend that "Ms. Vanags imposed on herself two supplementary legal duties when she voluntarily acted beyond the scope of what an

insurance agent normally does. Specifically, … when she (a) filled out the Barshingers' insurance application and (b) counseled and assured them that the coverage she was selling them was adequate." Rsp Vanags MSJ, 13-14. Plaintiffs argue that Ms. Vanags breached a duty of care to use reasonable care and skill in filling out the application for insurance. They also contend that Vanags breached a duty of care to properly counsel them as to the effect of the coverage provided by the State Farm Policy.   Finally, Plaintiffs submit that Ms. Vanags "was also subject to a third duty, (c) that she provide a more thorough explanation of coverage available in response to the Barshingers' request for coverage that would cover 100% of the replacement cost of their home in the event of a total loss." Rsp Vanags' MSJ, 14. Plaintiffs assert that Vanags breached this duty in the context of their "request to Ms. Vanags for adequate homeowners' insurance coverage … [and her failure] to explain to [them] the fact that [their] coverage was capped at a numeric (insufficient) limit." Rsp Vanags MSJ, 20.

*Vanags' Reply*. Ms. Vanags' replies that Plaintiffs argument against summary judgment constitutes "their contention that, regardless of the lack of any 'special relationship' between them and Ms. Vanags', [Plaintiffs maintain that] the Court should impose on an insurance agents broad new duties as personal guarantors of the adequacy of policy limits." Vanags' Rply, 2.

8.    <u>Vanags' Motion – Negligent Misrepresentation Claim</u>. Ms. Vanags first argues that "a negligent misrepresentation claim cannot be stated in the absence of a breach of a duty of care." Vanags MSJ, 14. Additionally, she asserts that Plaintiffs' misrepresentation claim is based on an allegation that Ms. Vanags purportedly gave her opinion that the policy limits obtained would be sufficient to rebuild.  Defendant argues

that such "a statement is the epitome of an expression of future opinion that is not actionable under any negligence theory." Vanags MSJ, 15. Finally, Ms. Vanags contends that Plaintiffs cannot establish a justifiable reliance on any statements regarding the sufficiency of the policy. "A negligent misrepresentation claim will fail if the insured has a copy of their policy and can see that the alleged oral misrepresentation contradicts the express terms of the policy." Vanags MSJ, 15, quoting *Colorado .Pool Systems, Inc. v. Scottsdale Ins. Co.* 317 P3d 1262, 1272 (Colo .App. 2012).

*Plaintiffs Response.* Plaintiffs first argue that their Negligent Misrepresentation claim against Ms. Vanags should not be dismissed in this summary judgment motion because the Court declined to dismiss this claim on Ms. Vanags' previously filed motion to dismiss.  Plaintiffs also assert that Ms. Vanags' argument that there can be no justifiable reliance on statements purportedly made by Ms. Vanags concerning the sufficiency of coverage should be rejected because, they assert the "argument is premised entirely on the proposition that Colorado presumes that insureds know the contents of their policy, regardless of any specific facts of any case." Pltfs Rsp Vanags MSJ, 21. Plaintiffs go on to argue that they may justifiably rely on statements of their agent "which lull the insured into the belief that such insurance has been [obtained]," even where the insured has knowledge of the policy limits. Pltfs Rsp Vanags MSJ, 22, citing to *Estate of Hill v Allstate Ins. Co.*, 354 F. Supp2d 1192, 1197-98 (D.Colo. 2004) quoting 4 Couch on Insurance §46:46.

*Vanags' Reply.* Ms. Vanags asserts that the Court should reject Plaintiffs argument that the law of the case doctrine precludes dismissal of the Negligent Misrepresentation claim simply because the Court denied Ms. Vanags' motion to

dismiss on this claim, noting that the standard of review for a motion to dismiss is far different then the standard of review on a motion for summary judgment. Ms. Vanags renews her argument that any "statement that the home had been insured for 100% of the replacement cost [is not actionable] because this claim must pertain to representations of past or present material facts," and such a statement relates only to future events. Vanags' Rply, 14.Ms. Vanags also disputes Plaintiffs reliance on case law in which an agents "misrepresentations about an ambiguous policy term," support justifiable reliance, asserting that "Ms. Vanags could not have 'lulled Plaintiffs into the belief that' the Policy provided 'unlimited' coverage: it clearly and unambiguously did not." Vanags Rply, 16

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. If the non-moving party cannot produce enough evidence to establish a triable issue, then the moving party is entitled to summary judgment as a matter of law." *Gibbons v. Ludlow, 304 P3d 239, 243-44 (Colo. 2013).* "For purposes of summary judgment, a 'material fact' is one that will affect the outcome of the case." *Morley v. United Services Automobile Association*, 465 P3d 71, 74 (Colo. App. 2019). "Under C.R.C.P. 56(e), when a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *A-1 Auto Repair 7 Detail, Inc. v. Bilunas-*

*Hardy*, 93 P3d 598, 603 (Colo. App. 2004). "The interpretation of a written contract is generally a question of law for the court to decide. As such, it is appropriate to resolve contract interpretation disputes on summary judgment." *Anderson v. Denver Public School Employees' Pension and Ben. Ass'n., 935 P2d 31, 33 (Colo. App. 1996).*

### Insurance Contracts

"The interpretation of an insurance policy is a matter of law. … An insurance policy is a contract, which should be interpreted consistently with the well-settled principes of contractual interpretation. The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided." *Allstate Ins. Co., v. Huizar*, 52 P3d 816, 819 (Colo. 2002). "A trial court may not look beyond the plain words of an insurance contract to interpret it based on the contracting parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract." *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P2d 483,486 (Colo. App. 1997). "[T]he determination whether [a] contract is ambiguous [is a] question[ ] of law…" *Terra Matrix, Id.*

In this case, the policy language concerning the limits of coverage is clear and unambiguous. Where the language in an insurance policy is unambiguous an insured "in possession of this policy [is] charged with knowledge of the restrictions in the policy." *Pete's Satire, Inc. v. Commercial Union Ins. Co*. 698 P2d 1388, 1391 (Colo. App. 1985). Ms. Vanags obtained, and State Farm issued a policy with stated policy limits for coverage of a loss of Plaintiffs' home. Within days of the destruction of Plaintiffs' home, State Farm paid 100% of the policy limits for applicable claims. Plaintiffs do not dispute the timely payment of these claims.

Plaintiffs assert that despite the language of the Policy setting forth limits of coverage, they intended to purchase a policy that provided 100% replacement coverage. However, this required Plaintiffs to consider what that cost might be at some point in the future. They assert that their agent understood their desire and should have done more to calculate the cost of a future full replacement, but they do not dispute the information contained in the policy and the limits set forth therein. Plaintiffs had full knowledge of the coverage limits. They had the opportunity to obtain greater coverage but did not take any action to independently ascertain the value of their home, or the potential costs to rebuild, instead relying solely on the statements of their agent that the policy limits were sufficient to cover a loss in the future. Such statements cannot overcome or replace the plain language of the Policy.

### Contract Reformation

"Reformation is an appropriate remedy when the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. … However, where a party's unilateral mistake is the result not of fraud, but of its own failure to use due diligence in reading the contract before signing it, that party will be held to the terms of the contract." *Poly Trucking, Inc. v. Concentra Health Services, Inc.*, 93 P3d 561, 563 (Colo. App. 2004). "A court may not reform an insurance contract absent proof of a mutual mistake between the parties. An essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that represents the actual expectations of the parties and provides the basis upon which a court orders reformation." *Continental Western Ins. Co. v. Jim's Hardwood Floor Co., Inc.*, 12 P3d 824, 827 (Colo. App. 2000). "Such a

mistake must be one which is reciprocal and common to both parties, and both parties must labor under the same erroneous conception with respect to the terms and conditions of the instrument." *Simon v. Truck Ins. Exchange*, 757 P2d 1123, 1124 (Colo. App. 1988)

Here, Plaintiffs assert that they desired to obtain an insurance policy that provided full replacement cost for their home in case of a loss. It is undisputed that State Farm offered a policy with specifically stated limits for coverage.  Plaintiffs accepted the policy with those limits.  Plaintiffs argue that the Court should "reform" the Policy to provide coverage up to the actual amount necessary to replace their home because the insurance carrier knew this was their desire and should have done more to determine if the policy limits as stated in the Policy would in fact provide funds sufficient to rebuild their home.  Plaintiffs have not provided any legal basis for the Court to impose such a requirement on an insurance carrier. In this case there is no mutual mistake upon which reformation could be based and there is no legal basis to impose a duty on the part of insurance carriers to precisely determine the future costs of replacing a home and then offer a policy that contains such coverage.

### Intentional Misrepresentation

"A 'false representation' is defined as any words or conduct that creates an untrue or misleading impression of the actual past or present fact in the mind of another. … Whether circumstances, conduct, or words are the means allegedly used to deceive, however, the means used must be of a 'definite and specific character' because a party has no right to rely on circumstances, conduct, or words that are equivocal, such that 'they comport equally with innocence and good faith as with bad motivation.'" *Rocky*

*Mountain Exploration, Inc. v. Davis Graham & Stubbs LLP*, 420 P3d 223, 233 (Colo. 2018). "A statement as to the legal effect of a document may constitute a false representation if it is intentionally false or is made with reckless disregard for its truth or falsity, and the declarant has special or superior knowledge about the law and such knowledge is not reasonably available to the person to whom the statement is made. … [T]he application of this special or superior knowledge exception … is generally applicable where there is an agreement between two parties, and one of the parties, who possesses special or superior knowledge, opines on an issue that is material to the agreement between the parties." *Brodeur v. American Home Assur. Co.*, 169 P3d 139, 154 (Colo. 2007). Here, Plaintiffs assert that State Farm as an insurance carrier has superior knowledge as to potential costs of construction as well as the method by which the carrier calculates such costs in making a policy proposal. However, Plaintiffs do not dispute that regardless of how State Farm came up with the policy limits it offered Plaintiffs, there is no ambiguity that the policy limits were clearly stated and that Plaintiffs had full knowledge of such limits. Further, it is undisputed that State Farm routinely advised that insureds should take action to determine whether such limits in fact are sufficient belying any argument that only State Farm has the ability or obligation to determine what replacements costs might be.

Similarly, the elements of fraudulent concealment are "(1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the

concealment in resulting in damages." *Mullen v Allstate Ins. Co.*, 232 P3d 168, 173 (Colo. App. 2009).   *Mullen* was a class action lawsuit filed against a number of insurance companies, including Allstate, "alleging that each insurance company had a duty to advise them of the effect of *DeHerrera v. Sentry Insurance Co.*, 30 P3d 167 (Colo. 2001), that UM/UIM coverage 'follows' the insured, and, as a result of *DeHerrera,* they had received no benefit from the premiums paid for UM/UIM coverage on more than one vehicle…[generally alleging that] coverage sold by the insurance companies was illusory." *Mullen, Id.* at 170. Allstate moved for summary judgment providing affidavits "that described language in the policy forms and identified the premiums charged." *Mullen Id* at 171. The trial court granted summary judgment to Allstate, stating, in part:

> Insurance companies have a duty to disclose sufficient accurate information about the coverage they sell to permit an insured to make an informed decision concerning the purchase of UM/UIM coverage; however, that duty does not extend to advising insureds about competitor business practices and alternative coverage options that may be found in the insurance marketplace.

*Mullen, Id* at 171.

The grant of summary judgment in *Mullen* was upheld on appeal.  In reviewing the trial court's decision, the Court of Appeals also addressed plaintiffs' argument that Allstate acted in bad faith by failing to advise them that UM/UIM coverage was only necessary on one vehicle.  The court stated:

> We conclude the undisputed facts establish Allstate did not engage in bad faith. The Allstate policy informed customers that purchase of UM/UIM coverage provided UM/UIM coverage for all class one and class two insured in all vehicles. We agree with the district court that an offer that includes accurate information about the additional benefits

> provided, that is, insurance of class two insures, is sufficient.
> … Therefore, we conclude Allstate did not fail in its
> obligation to act in good faith.

*Mullen, Id.* at 175

The analysis in *Mullen* is useful here, in so far as State Farm provided accurate information as to the policy limits for the Policy purchased by Plaintiffs.  While Plaintiffs assert that State Farm had a duty to more accurately determine what the replacement costs might be for their home and provide such information to Plaintiffs the Court does not find that the law imposes such obligation on the part of an insurance carrier.  There is no evidence that State Farm, or Vanags had information as to the value of Plaintiffs home that was unknown or unavailable to Plaintiffs themselves.  Indeed, State Farm provided clear statements that homeowners should take action to determine for themselves whether or not the limits of the insurance policy offered was sufficient for their needs.

### Insurance Agent Negligence – Negligent Misrepresentation

"Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy. … [The] general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete protection. … No duty to give advice is created simply because the insurance intermediary becomes a person's agent. This applies both to advice about what policies should be purchased as well as advice about what coverage is contained in an insured's existing policy. … Insurance

agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage." *Kaercher v Sater*, 155 P3d 437, 441 (Colo. App. 2006).

"A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Richardson v. Amica Mutual Ins. Co.*, 693 F. Supp3d 1181, 1186 (D. Colo. 2023), quoting *Univ. of Denver v. Whitlock*, 744 P2d 54, 56 (Colo. 1987). In *Richardson*, the federal district court for Colorado, applying Colorado law, dismissed claims of negligence against defendant insurer based on an alleged failure "to secure contents coverage or issue a Homeowners Policy with modified coverage…" *Richardson, Id.* at 1186. The *Richardson* court found that there was no duty "to watch out for all rights of the insured and inform the latter of them … [and] … the insurer has no duty to affirmatively advise or warn a customer of provisions contained in an insurance policy." *Richardson, Id.* at 1188. The plaintiffs in *Richardson* asserted that there was a "special relationship' between plaintiffs and the insurance agent which the court addressed, finding that no such relationship was formed simply because the agent had worked with the client in the past to procure insurance.

Here Plaintiffs do not really assert that Ms. Vanags owed them enhanced duties because of a "special relationship" between the parties, rather, Plaintiffs contend that Ms. Vanags took on additional duties based on Plaintiffs statements that they wanted insurance coverage that would fully protect them from any financial loss if their home was destroyed, followed by Ms. Vanags' agreement to obtain insurance for them.

"Whether a special relationship has been formed turns on whether there is 'entrustment,' that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competence and skills." *Kaercher, Id.* at 441.

"Even when an agent represents that he or she is knowledgeable about insurance coverages, and regularly in the course of his or her business, informs, counsels, and advises customers about their insurance needs, the agent does not incur duties beyond those of the standard policyholder-insurance agent relationship. Thus, in most circumstances, an insurance agent does not have a duty to advise of additional and available insurance coverages suitable for the customer's needs." *Apodaca v. Allstate Ins Co.*, 232 P3d 253, 259 (Colo. App. 2009). Plaintiffs' assertion that Ms. Vanags understood their desire for coverage sufficient to rebuild their home in the future if there was a total loss, is insufficient to create any enhanced duty of care owed by Ms. Vanags.

Separately, "[i]n every negligent misrepresentation case, the plaintiff must show justifiable reliance on the alleged misrepresentation. Contrary to plaintiff's view, we conclude that an insurer's agent should be allowed to assert any relevant fact – including the fact that the insured had access to the policy  - to show that the insured's alleged reliance may not have been justifiable." *Colorado Pool, Id. at 1272.*  In *Colorado Pool* plaintiff asserted that the insurance company's claims adjuster made material misrepresentations about what construction activities would be covered by the policy. Plaintiffs in that case claimed that they undertook demolition and replacement action based on these statements.  The trial court granted summary judgment in favor of the

insurance company/adjuster finding that the policy clearly stated what conduct would be covered. On review, the Court of Appeals reversed the summary judgment finding, not on the basis that plaintiff had relied on the adjuster's statements alone, but because the court found that "the policy terms were not sufficiently unambiguous to defeat, as a matter of law, plaintiffs' assertion of justifiable reliance." *Colorado Pool, Id.* at 1272.

The facts of this case are different from the facts of *Colorado Pool*. Here, there is no dispute that the Policy clearly stated the limits of coverage available for loss of a dwelling. Plaintiffs concede that the Policy limits are set out in the insurance documents. Their argument is that they accepted the agent's opinion that the policy limits were sufficient to provide enough funds to rebuild if there was a total loss of their home. Plaintiffs had the ability to decide for themselves whether the amount stated in the Policy was sufficient based on their knowledge of the value of their home. "[A] negligent misrepresentation claim will fail if the insured has a copy of his or her policy and can see that the alleged oral misrepresentation contradicts the express terms of the policy." *Colorado Pool, Id.* at 1272. Whether or not Ms. Vanags' stated opinion as to the sufficiency of the Policy limits can even constitute a misrepresentation (because it is based on some unknown future event), Plaintiffs are not justified in relying solely on such statement to determine the effect or sufficiency of their insurance coverage.

Plaintiffs' reliance on *Estate of Hill* to create a situation of justifiable reliance is misplaced. In *Estate of Hill* plaintiffs sought reformation of an automobile insurance policy for enhanced PIP coverage, and specifically alleged claims of relief against their insurance agent based on "their contention that [Agent], despite her agreement to procure an automobile insurance policy for the [plaintiffs] that complied with Colorado

law, failed to advise them of the availability of enhanced PIP benefits." *Estate of Hill, Id.* at 1196.  The court found that such allegations were insufficient to state a claim of negligence or negligent misrepresentation against the agent noting that "the general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of he insured and inform the latter of them. Absent a special relationship between he insured and the insurer's agent, an insurer's agent has no duty to affirmatively advise or warn his or her customer of provisions contained in an insurance policy." *Estate of Hill, Id.* at 1197.   Again, even accepting that Plaintiffs told Ms. Vanags that they were looking for a policy that would provide full replacement cost for the loss of their home, and even accepting that Ms. Vanags opined that the policy limits of the State Farm policy were sufficient to provide such coverage, such statements did not "lull the insured into the belief that [the] insurance" Policy provided such coverage, where the clear and unambiguous limits of coverage were stated in the Policy, Plaintiffs knew of the limits, and had the ability to determine for themselves whether or not such policy limits were sufficient for the value of their home.

### Bad Faith Delay or Denial of Insurance Payments

"Every contract in Colorado contains an implied duty of good faith and fair dealing. …Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort. … an insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances." *Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P3d 409, 414 (Colo 2004).   "In 2008, the General Assembly

enacted sections 10-3-1115 and 1116 … [which] concern the improper denial of claims."
*Kisselman v American Family Mut. Ins. Co.*, 292 P3d 964, 970 (Colo. App. 2011). These
provisions provide, in part, that: "A person engaged in the business of insurance shall
not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of
any first-party claimant … [and] … an insurer's delay or denial was unreasonable if the
insurer delayed or denied authorizing payment of a covered benefit without a
reasonable basis for that action." *Kisselman, Id.* at 970-71.

In this case it is undisputed that State Farm promptly paid policy limits for the
claims submitted by Plaintiffs.  Plaintiffs do not contest that such payments were issued
promptly.  Plaintiffs' bad faith claims are based on their theory that the Policy should be
reformed to allow for greater coverage than the Policy limits.  There has been no delay
or refusal to pay and therefore Plaintiffs cannot sustain their claim for breach of the duty
of good faith and fair dealing or their statutory bad faith claim.

## CONCLUSION

For the reasons set out more fully above, the Court finds that:

A.    State Farm's Motion for Summary Judgment is GRANTED.

B.    Vanags' Motion for Summary Judgment is GRANTED.

SO ORDERED THIS March 5, 2025.

BY THE COURT:

Elizabeth Beebe Volz
District Court Judge

23