**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-CV-01413-NYW-STV

ERIN LINDSAY and CHRISTOPHER LINDSAY,

      Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and
GEICO INSURANCE AGENCY, LLC

      Defendants.

---

**DECLARATION OF BRITTANY JOHNSON**

---

I, Brittany Johnson, declare as follows:

      1.      I have personal knowledge of the facts and circumstances stated in this declaration, and they are true and correct to the best of my knowledge and belief.

      2.      I make this declaration in support of the Motion for Summary Judgment filed by Geico Insurance Agency ("GIA").

      3.      I have been employed by GIA for approximately 22 years. My current job title is Partner Relations Manager, in which I manage the relationships between GIA and its partners. Prior to this position, I have worked in a variety of roles with GIA, including as a line supervisor in which I supervised GIA's agents located in Fredericksburg, Virgina.

      4.      GIA uses a call center model. When a customer calls GIA to place insurance, the call is taken by an available agent at one of GIA's call centers in Fredericksburg, VA, Virginia Beach, VA, Buffalo, NY, or Kansas City, KS. GIA's customers do not have one-on-one relationships with a particular agent.

1

Sensitivity: Company-Internal

5.      Erin and Christopher Lindsay became customers of GIA in 2015 with the procurement of homeowners' insurance. Ms. Lindsay called GIA on or about April 30, 2015 to obtain homeowners insurance. Ms. Lindsay's call was taken by Jonathan Aisel, an agent at GIA's call center.

6.      To obtain a quote for a homeowners' policy, Mr. Aisel first used a decision tree program to identify Travelers as the insurance carrier best suited to insure the Lindsays' Property. When Travelers was selected, Mr. Aisel then interfaced with Travelers' electronic system to quote a homeowners' insurance policy for the Lindsay's.

7.      In order to complete a quote for homeowners insurance, Travelers required that GIA use a replacement cost estimator tool from Marshall Swift/Boeckh ("MSB") to estimate the replacement cost for the Lindsays' Property. Mr. Aisel obtained information about the components and characteristics of the Lindsays' Property from Ms. Lindsay and other available resources, and input that information into the MSB replacement cost estimator. Mr. Aisel generated two replacement cost estimates for the Lindsays' Property, in the respective amounts of $443,050 and $482,204. True and correct copies of the April 30, 2015 Replacement Cost Estimates are attached as **Exhibit 9** to GIA's Motion.

8.      Based on the replacement cost estimates, GIA provided a quote for a homeowners' policy with Travelers. Several days later, the Lindsays opted to move forward with the Travelers policy. On May 11, 2015, Travelers issued a homeowners policy to the Lindsays, policy number 994039763-633-1 showing a policy period from June 4, 2015 to June 4, 2016 (the "2015 Policy").

9.      I understand that Travelers retained Information Providers, Inc. to inspect the Property after the 2015 Policy issued. GIA does not work with Information Providers, had no involvement in the inspection process, and never received a copy of the inspection report. It was

2

Sensitivity: Company-Internal

not GIA's responsibility to review the inspection report or to compare the inspection report findings to the prior estimate prepared by the MSB replacement cost estimator.

10.    Over the next six years, the Lindsays renewed their homeowners policy in 2016, 2017, 2018, 2019, 2020, and 2021. GIA was not involved in the renewal process for any of the six policy renewals. Travelers sent renewal notices to the Lindsays and handled each of the six policy renewals directly with the Lindsays and without GIA's involvement or input. GIA was never asked to submit any information to Travelers in connection with their policy renewals.

11.    On or about March 28, 2019, Ms. Lindsay called GIA. Ms. Lindsay's call was taken by Jesse Broulette, an agent at GIA's call center. During this call, Jesse Broulette used Travelers' MSB replacement cost estimator to generate a new replacement cost estimate in the amount of $436,205. A true and correct copy of the March 28, 2019 Replacement Cost Estimates is attached as **Exhibit 20** to GIA's Motion.

12.    The March 28, 2019 replacement cost estimate was less than the dwelling limit contained in the 2019 Policy. If the replacement cost estimate obtained by GIA on March 28, 2019 had exceeded the dwelling limit in the 2019 Policy, GIA would have required the Lindsays to increase their dwelling limit.

13.    The March 28, 2019 call with Ms. Lindsay was the last communication the Lindsays had with GIA concerning the limits of their homeowners insurance prior to the December 30, 2021 fire loss at issue in this case. The Lindsays did not contact GIA to request guidance or other assistance with the policy renewals in 2019, 2020, or 2021. Travelers sent the renewal notice to the Lindsays when their policy was up for renewal and completed the renewal process with the Lindsays directly. GIA had no involvement with the 2021 Policy that was in effect on the date of the Lindsay's December 30, 2021 fire loss.

3

Sensitivity: Company-Internal

14.     I am informed that the Lindsays have argued that GIA should have educated them about an insurance product known as "guaranteed replacement cost" coverage. However, GIA did not sell guaranteed replacement cost policies during the relevant time period from 2015 to 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 16, 2025

DocuSigned by:

*Brittany Johnson*

16041A461587404...

Brittany Johnson

4

Sensitivity: Company-Internal