# GIA MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 4

**CHRISTOPHER LINDSAY - September 04, 2024**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01413-NYW-STV
_____

VIDEOTAPE DEPOSITION OF:
CHRISTOPHER LINDSAY - September 4, 2024
_____

ERIN LINDSAY and CHRISTOPHER LINDSAY,

Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY; and GEICO INSURANCE AGENCY, LLC,

Defendants.
_____

       PURSUANT TO NOTICE, the videotape deposition of CHRISTOPHER LINDSAY was taken on behalf of the Defendant The Travelers Home and Marine Insurance Company at 1200 28th Street, Suite 302, Boulder, Colorado 80303, on September 4, 2024, at 9:02 a.m., before Carin C. Geist, Registered Diplomate Reporter and Notary Public within Colorado.

CHRISTOPHER LINDSAY - September 04, 2024

1       A.   When we were purchasing the house,
2  yes.
3       Q.   Okay.  Who -- who ran point on
4  purchasing the house?
5       A.   That was more shared.  There were
6  enough pieces that we divvied up the pieces as they
7  came up.
8       Q.   Who ran point on selecting an insurance
9  agent?
10      A.   Erin.
11      Q.   Who ran point on selecting which
12 insurance carrier to go with?
13      A.   Erin.
14      Q.   Okay.  This was -- these were all
15 decisions that you had to agree on, though, correct?
16      A.   We had to agree on the decisions.
17      Q.   So if I really want to know the
18 nitty-gritty of why GEICO was selected as the
19 insurance agent, I would need to ask your wife, Erin
20 Lindsay; is that right?
21      A.   She was the one who made the phone
22 calls.  I could speak to, you know, certain parts of
23 the decision-making, but not to any of the specifics
24 of the actual interactions.
25           MR. GILL:  Can we go off the record?

CHRISTOPHER LINDSAY - September 04, 2024

1  company had the money in escrow.  So they were
2  paying them.
3         Q.   You received policy mailings from the
4  insurance company or your agent when the policy
5  would come up for renewal, correct?
6         A.   I did not have an exact agent, so I
7  don't have any communications from an agent
8  specifically.  We got communications from GEICO for
9  a myriad of things.  We also had our auto insurance
10 under them, and I remember seeing at some point some
11 mailings from Travelers.  I don't remember what was
12 in them exactly, but I believe that -- how do I say?
13 Yeah, I'll just -- yeah, that's it.
14        Q.   Did you get mail from Travelers
15 concerning your policy on the subject property?
16        A.   I believe I did.
17        Q.   And did you open and read it?
18        A.   I have no specific memory of that, so I
19 don't know.
20        Q.   Okay.  In 2015 when the subject policy
21 was originally purchased to cover your property, you
22 knew you had $500,000 of dwelling coverage, and you
23 accepted that, correct?
24        A.   Yes.
25        Q.   This is not a situation where there was

CHRISTOPHER LINDSAY - September 04, 2024

1  some kind of mistake about what the policy says or
2  what it was providing, correct?
3              MS. MINAMIZONO:  Objection.  Form.
4       A.   I knew that the policy was for 500,000
5  and that we were told that was more than enough to
6  completely rebuild our home.
7       Q.   (BY MR. STEPHENSON)  Were you told
8  that?
9       A.   I was not told that directly.  That was
10 part of my -- my understanding of that from my
11 wife.
12             MR. STEPHENSON:  And I just want to
13 make a record, just for the benefit of this, of you,
14 Susan.
15      Q.   (BY MR. STEPHENSON)  It sounds like
16 you're relying on -- it sounds like you are
17 disclosing a communication from your wife.  So are
18 you going to rely on the marital communications
19 privilege or are you going to disclose
20 communications that you had with your wife?
21      A.   I'm not going to -- I'm going to rely
22 on the protections.
23      Q.   Okay.
24      A.   I don't understand enough of the
25 legalese piece to know when I am talking of things

CHRISTOPHER LINDSAY - September 04, 2024

1  that are protected.
2       Q.   You didn't have the conversation about
3  whether the limits were adequate in 2015, correct?
4       A.   Correct.
5       Q.   Okay.
6       A.   I did not have that conversation with
7  GEICO.
8       Q.   Or with Travelers, correct?
9       A.   Or with Travelers.
10      Q.   Okay.  All right.  But to be clear,
11 this is not a situation where you thought the limits
12 were higher than $500,000, and that turned out to be
13 incorrect, correct?
14      A.   I knew the limits were 500,000 plus an
15 overage percentage, and that that overage percentage
16 with that 500,000 was enough to cover the loan.  So
17 I knew those numbers in terms of the general
18 coverage amount.
19      Q.   Okay.  Did you do any due diligence
20 about how much it would cost to rebuild your house
21 in 2015?
22           MS. MINAMIZONO:  Objection.  Form.
23      A.   I did not personally do any
24 investigation on the cost to rebuild the home.  I
25 relied on the information I had from the estimate

CHRISTOPHER LINDSAY - September 04, 2024

1 from GEICO.
2          Q.   (BY MR. STEPHENSON)  Okay.  All right.
3 To be clear, this is not a situation where there was
4 any mistake about what the policy itself said or
5 provided, correct?
6          MS. MINAMIZONO:  Objection.  Form.
7          A.   Say that again, please.
8          Q.   (BY MR. STEPHENSON)  Well, let me give
9 you a little more explanation behind my question.
10 So sometimes there are cases where people claim that
11 they thought their limit was different than what it
12 actually was, and those people say, oh, there's a
13 mistake here.  I thought I had X dollars in
14 coverage, and now I look at this policy and there's
15 a typo or a mistake in the policy.  No.  I really
16 bought more coverage than this.  Do you see what I'm
17 talking about?
18          A.   I do.
19          Q.   And in those cases, you go into the
20 underwriting file, and you do a deep dive, and you
21 try to find out, oh, well, did someone hit the wrong
22 number, you know, when they were, you know, binding
23 this policy.  You kind of figure out whether or not
24 there really was a mistake about how much the policy
25 was supposed to be.  If the policy's inaccurate in

CHRISTOPHER LINDSAY - September 04, 2024

1  not reflecting what the person said they were
2  buying.  Do you see what I'm saying?
3          A.   Yes.
4          Q.   This is not one of those cases.  This
5  is not a case where you and your wife thought you
6  were buying more than $500,000 of coverage or buying
7  more coverage than what is actually shown in the
8  policy itself, correct?
9          A.   We thought we were buying a replacement
10 policy for the house that would be enough to cover
11 if the house was completely burned to the ground.
12 From the information we were given, that was -- that
13 the coverage that we were procuring was more than
14 enough to do so.
15               We went in without a set dollar amount
16 in mind other than the bare minimum of making sure
17 that our loan would have coverage, and we went in
18 with the information of what our house that we were
19 trying to buy was, but all other numbers that we
20 received were the basis of what we thought was
21 enough coverage.
22               So from the perspective of, I knew it
23 was a $500,000 limit on the policy, yes, I did know
24 that, and that was not a typo; but from the
25 perspective of what we were trying to buy, after the

CHRISTOPHER LINDSAY - September 04, 2024

1  fire was when we discovered that was not what we had
2  purchased.
3       Q.   All right.  So just to be clear, the
4  nature of the -- of the claim you're making about
5  the policy is whether or not $500,000 really was
6  enough insurance, correct?
7       A.   Correct.
8       Q.   Right.  So -- but there was no mistake
9  in -- in -- in terms of what the policy said being
10 different from what you thought you were buying.
11 You thought you were buying a $500,000 policy, and
12 you got a $500,000 policy and the other terms that
13 you got, correct?
14            MS. MINAMIZONO:  Objection.  Form.
15      A.   We got the decs page.  I don't know
16 when we got the actual policy itself with all of the
17 extra information; but in terms of the decs page, we
18 had that, and those numbers matched my understanding
19 of what we were purchasing in terms of the numbers.
20 Does that answer your question?
21      Q.   (BY MR. STEPHENSON)  I think so.  I'll
22 take it.
23      A.   I'm just trying to be very, very
24 specific with my wording.  Again, I'm not used to
25 this kind of environment.

**CHRISTOPHER LINDSAY - September 04, 2024**

```
 1                    EXAMINATION
 2   BY MR. GILL:
 3         Q.   Hi, my name is Ryan Gill.  I represent
 4   GEICO Insurance Agency.  Oops, sorry.
 5              THE VIDEOGRAPHER:  That's okay.
 6         Q.   (BY MR. GILL)  I have some very quick
 7   questions because most of what I wanted to cover has
 8   already been covered.  You testified earlier that
 9   Mrs. Lindsay handled all of the calls with GEICO
10   Insurance Agency.  Is that accurate?
11         A.   Not all of the calls.  I made at least
12   one call, I believe, in 2018 where I asked about,
13   you know, do we have -- like what -- how much it
14   would cost to insure our solar panels because we
15   were about to get those installed, but most of them
16   were my wife.
17         Q.   Okay. All of the calls that involved
18   the replacement cost of the home were made by
19   Mrs. Lindsay?
20         A.   The setting the limits, you mean?
21         Q.   Yes.
22         A.   I believe so.
23         Q.   Did you listen in on any of those calls
24   that your wife had with GEICO Insurance Agency?
25         A.   I might have.  I don't remember one way
```