# GIA MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 5

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-CV-01413-NYW-STV

ERIN LINDSAY and CHRISTOPHER LINDSAY,

    Plaintiffs,

v.


THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and
GEICO INSURANCE AGENCY, LLC

    Defendants.

---

**DEFENDANT GEICO INSURANCE AGENCY'S RESPONSES TO PLAINTIFFS'
SECOND SET OF WRITTEN DISCOVERY**

---

    Defendant, GEICO Insurance Agency ("Defendant" or "GIA") by and through their counsel, Lewis Brisbois Bisgaard & Smith LLP, hereby submits Answers to Interrogatories, Responses to Plaintiff's Second Set of Written Discovery pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure.

**OBJECTIONS TO "INSTRUCTIONS" AND "DEFINITIONS"**

    Defendant objects to the extent that the purported "instructions" differ from the obligations set for in Fed. R. Civ. P. 26, 33, 34, and/or 36. Defendant will respond to written discovery in accordance with the applicable federal rules.

    Defendant objects to Plaintiffs' definition of "YOU OR ANYONE ACTING ON YOUR BEHALF" to include "you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf." This definition is overbroad and compliance therewith would be unduly burdensome and not proportional to the needs of the case. Further, this definition is vague and ambiguous, particularly when viewed in relation to the overlapping definition of "GEICO or YOU".

*- continued on next page -*

1

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 5**

Please describe how YOU sent information to TRAVELERS regarding the underwriting of all homeowners policies insuring the PROPERTY since 2015.

**OBJECTIONS:**

1. This interrogatory is vague and ambiguous with respect to the term "information … regarding the underwriting" as used here. GIA does not perform underwriting for the insurance carriers who issue policies.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

GIA acted as an insurance agent and did not underwrite the homeowners policies issued to Plaintiffs by Travelers.

GIA's agent submitted Plaintiffs' application information electronically to Travelers for Plaintiff's initial 2015 policy through an interface with Travelers' system for quoting and servicing policies. As part of the initial application process, GIA's agent input information about Plaintiffs' property components and characteristics into the replacement cost estimator tool from Marshall Swift/Boeckh ("MSB"). The resulting total RCE from MSB and certain home component information is input into the Travelers system. Additionally, GIA understands that Travelers also has access to MSB's replacement cost estimator tool.

With respect to the portion of this interrogatory concerning subsequent policies issued to Plaintiffs on a renewal basis, GIA did not submit documents or information to Travelers for the renewals of the policy. GIA understands that renewals for Plaintiffs' Travelers Policy were handled between Travelers and Plaintiffs.

**INTERROGATORY NO. 6**

State the name, job title, and job description of each and every PERSON in an executive and supervisory role at GEICO who was responsible for reviewing the underwriting and issuance of all homeowners policies insuring the PROPERTY since 2015 and had an interest in ensuring that the homeowners policies, and supporting documents used in the application process, were accurate as part of GEICO's due diligence.

**OBJECTIONS:**

1. This interrogatory is vague and ambiguous with respect to the phrase "reviewing the underwriting and issuance of all homeowners policies insuring the PROPERTY since 2015" as used in this interrogatory. GIA does not perform underwriting for the insurance carriers who issue policies.

2

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

2. This interrogatory is vague, ambiguous, and overbroad with respect to the phrase "an interest in ensuring that the homeowners policies, and supporting documents used in the application process, were accurate as part of GEICO's due diligence" as used in this interrogatory.

3. This interrogatory is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

Underwriting for homeowners policies is performed by the insurance company. GIA submits application material to the insurance carrier on behalf of GIA's customers. GIA's agents attempt to provide accurate application materials to the insurance carrier based on information obtained from GIA's customers and other available resources. GIA agents have direct supervisors. However, GIA's supervisors do not review the applications for all homeowners policies placed by GIA's agents.

Jonathan Aisel was GIA's agent who placed Plaintiffs' initial 2015 homeowners policy. Mr. Aisel is no longer employed by GIA. There is no indication that there were any issues that would have caused Mr. Aisel to consult a supervisor about the application or issuance of the 2015 policy. Mr. Aisel's supervisor as of April 30, 2015 was Jamie Waterman.

Denise O'Malley was an Assistant Vice Present at GIA who reviewed information pertaining to the issuance of Plaintiffs' homeowners' policy and a communication with Plaintiffs on March 28, 2019, as part of GIA's January 26, 2022 response to Plaintiffs' complaint to the DOI.

With respect to the portion of this interrogatory concerning subsequent policies issued to Plaintiffs on a renewal basis, GIA did not submit documents or information to Travelers for the renewals of the policy. GIA understands that renewals for Plaintiffs' Travelers Policy were handled between Travelers and Plaintiffs.

**<u>INTERROGATORY NO. 7</u>**

State the name, job title, and job description of each and every PERSON in an executive and supervisory role at GEICO who was responsible for overseeing agency claim matters related to all homeowners policies insuring the PROPERTY since 2015 and had an interest in validating that the homeowners policies, and supporting documents used in the application process, were accurate as part of GEICO's due diligence.

**OBJECTIONS:**

1. This interrogatory is vague and ambiguous with respect to the term "agency claim matters" as used here. It is not clear what information is sought in this interrogatory.

3

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

    2.    This interrogatory is vague, ambiguous, and overbroad with respect to the phrase "an interest in validating that the homeowners policies, and supporting documents used in the application process, were accurate as part of GEICO's due diligence" as used in this interrogatory.

    3.    This interrogatory is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case.

**RESPONSE:**

GIA is unable to respond to this interrogatory based on the foregoing objections, particularly with respect to what is meant by "agency claim matters" as that phrase is used in this interrogatory.

## INTERROGATORY NO. 8

State the name, employer, job title, and job description of each and every PERSON who was responsible for overseeing the training of YOUR employees, contractors, agents, and brokers, who sold each homeowners policy insuring the PROPERTY since 2015, on replacement cost estimating tools.

    **OBJECTIONS:**

    1.    This interrogatory is overbroad, unduly burdensome, and seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case. The scope of this interrogatory reaches beyond those individuals actually involved in procuring the subject homeowners policy for Plaintiffs.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

Jonathan Aisel was GIA's agent who placed Plaintiffs' initial 2015 homeowners policy. Mr. Aisel obtained RCE reports as part of the initial application process. Mr. Aisel is no longer employed by GIA.

Jesse Broulette was GIA's agent who communicated with Plaintiffs and procured an RCE report on or about March 28, 2019. Mr. Broulette is no longer employed by GIA.

Both Mr. Aisel and Mr. Broulette were trained at the time of their hiring. There are multiple trainers and sessions. Mr. Aisel's trainer at the time of his hiring cannot be identified. Mr. Broulette's trainer at the time of his hiring was Daniel Zimmerman.

Beyond new hire training, GIA's agents are expected to follow guideline resources for service and sales, given the insurance carrier guidelines may change over time.

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

GIA understands that both Mr. Aisel and Mr. Broulette participated in continuing education as part of their individual licensure. GIA does not know the specific continuing education courses these individuals received during their time employed by GIA.

With respect to the portion of this interrogatory concerning subsequent policies issued to Plaintiffs on a renewal basis, GIA did not submit documents or information to Travelers for the renewals of the policy. GIA understands that renewals for Plaintiffs' Travelers Policy were handled between Travelers and Plaintiffs.

## INTERROGATORY NO. 9

Please describe in detail how YOU ensured that YOUR employees, contractors, agents and brokers who sold each homeowners policy insuring the PROPERTY since 2015 were complying with training they received on the usage of replacement cost estimating tools prior to the issuance of the homeowners policies.

**OBJECTIONS:**

1. This interrogatory is overbroad, unduly burdensome, and seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case. The scope of this interrogatory reaches beyond those individuals actually involved in procuring the subject homeowners policy for Plaintiffs.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

As noted in response to interrogatory number 8, Jonathan Aisel was GIA's agent who placed Plaintiffs' initial 2015 homeowners policy. Mr. Aisel was trained at the time of his hiring, which includes training on using replacement cost estimating tools. Beyond his initial training, Mr. Aisel was expected to follow guideline resources for sales. Guidelines often change, so GIA agents must reference up to date sales resources.

GIA conducts randomized spot checks of a certain number of calls. If an issue is detected during a spot check, an agent receives coaching by their direct supervisor. However, there is no indication that Plaintiffs' call with GIA relating to the application for the 2015 Policy was subject to a spot check.

Additionally, the insurance carriers who work with GIA typically inspect the properties for which a particular homeowners' policy is issued. The property inspection generally evaluates the replacement cost estimate. In this case, for example, Travelers' inspection of Plaintiffs' property on or about 07/02/2015 showed a lower replacement cost estimate than was input by GIA's agent (Bates numbers GIA 000050 – 000057).

With respect to the portion of this interrogatory concerning subsequent policies issued to Plaintiffs on a renewal basis, GIA did not submit documents or information to Travelers for the renewals of the policy. GIA understands that renewals for Plaintiffs' Travelers Policy were handled between Travelers and Plaintiffs.

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

**INTERROGATORY NO. 10**

Please describe in detail how YOU ensured that YOUR employees, contractors, agents and brokers who sold each homeowners policy insuring the PROPERTY since 2015 were including accurate information in the homeowners policy applications, including (1) description and frequency of training of employees/contractors/agents/brokers and who provided the training to agents/brokers, (2) who audited and reviewed compliance by employees/contractors /agents/brokers of processes and procedures related to the policy application process, (3) when, how, how many, and how often policy applications were audited, and (4) what due diligence documents were obtained to validate accuracy of information.

**OBJECTIONS:**

1. This interrogatory is overbroad, unduly burdensome, and seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case. The scope of this interrogatory reaches beyond those individuals actually involved in procuring the subject homeowners policy for Plaintiffs.

2. This interrogatory is vague and ambiguous with respect to the terms "audited" and "audited and reviewed compliance" as used here.

3. This interrogatory is vague and ambiguous with respect to the term "due diligence documents" as used here. GIA does not understand what "due diligence documents" means in this context, nor the scope of documents that are referred to in this interrogatory.

4. This interrogatory is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case.

5. This interrogatory is impermissibly compound and contains multiple different parts in violation of F.R.C.P. 33(a)(1).

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

GIA refers to and incorporates its prior responses herein to interrogatories numbers 6, 8, and 9.

Additionally, GIA states that it does not "audit" policy applications. If there is an issue with the application that prevents it from being submitted to the insurance carrier, then the agent will attempt to identify and correct the issue. If the agent cannot identify and/or correct the issue, then the agent may consult their direct supervisor. However, there is no indication that there were any problems in submitting Plaintiffs' insurance application. GIA does not know what "audits" may be conducted by the insurance carriers with regard to underwriting. Jonathan Aisel's supervisor as of April 30, 2015 was Jaime Waterman. Jesse Broulette's supervisor as of March 28, 2019 was Erin Mundy.

6

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

As noted in the above objections, the scope of documents included within the term "due diligence documents" is not clear. GIA states that those documents associated with Plaintiffs' application for insurance to Travelers have been disclosed. Those documents include the RCE reports for Plaintiffs' property dated April 30, 2015, May 11, 2015, and March 28, 2019 (Bates nos. GIA 000031 – 000049).

**INTERROGATORY NO. 11**

Please describe all cost estimating tools you were required to use by TRAVELERS for the policy applications for all homeowners policies insuring the PROPERTY since 2015.

**RESPONSE:**

GIA was required to use a replacement cost estimator from MSB.

*- continued on next page -*

7

Case No. 1:23-cv-01413-NYW-STV   Document 129-7   filed 10/17/25   USDC Colorado
pg 9 of 12

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

### Verification of Answers to Interrogatories (F.R.C.P. 33(b)(5))

Dated: February 2, 2024      Signature: *Brittany Johnson*

                                               Name:       Brittany Johnson

                                               Company:  GEICO Insurance Agency

### As to Objections to Interrogatories (F.R.C.P. 33(b)(5)):

Dated: February  2 , 2024

*s/ Ryan C. Gill*
Ryan C. Gill, Esq.
Jackson D. Beal, Esq.
Lewis Brisbois Bisgaard & Smith LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone:  303.861.7760
Email: Ryan.Gill@lewisbrisbois.com
        Jackson.Beal@lewisbrisbois.com
*Attorneys for Defendant GEICO Insurance Agency*

*- remainder of page left blank -*

8

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 6 (ERRONEOUSLY NUMBERED 5)**

Please produce all DOCUMENTS YOU received from TRAVELERS regarding or related to the determination of coverage and limits for all homeowners policies insuring the PROPERTY since 2015.

**RESPONSE:**

GIA states that any responsive communications within its possession, custody, or control have been disclosed.

**REQUEST FOR PRODUCTION NO. 7 (ERRONEOUSLY NUMBERED 6)**

Please produce all DOCUMENTS YOU received from TRAVELERS pertinent to the usage of replacement cost estimating tools to determine coverage and limits for all homeowners policies insuring the PROPERTY since 2015.

**OBJECTIONS:**

1. This interrogatory is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case. This request is not limited to a reasonable period of time.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

GIA states that any responsive communications within its possession, custody, or control have been disclosed. GIA's third supplemental disclosure will include a few additional emails from Travelers concerning guidance relevant to replacement cost estimating during the period Plaintiffs were insured by Travelers.

**REQUEST FOR PRODUCTION NO. 8 (ERRONEOUSLY NUMBERED 7)**

Please produce all DOCUMENTS regarding or related to the reformation of the POLICY, including all communications, meeting minutes, memoranda, and underwriting notes.

**RESPONSE:**

GIA does not have responsive documents. GIA was not involved in Travelers' decision to reform the policy.

**REQUEST FOR PRODUCTION NO. 9 (ERRONEOUSLY NUMBERED 8)**

Please produce all DOCUMENTS regarding or related to the Lindsays' complaints filed with the Colorado Division of Insurance after December 30, 2021.

9

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

**OBJECTIONS:**

1. This interrogatory is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to the claim or defense of any party and proportional to the needs of the case.

2. To the extent GIA's counsel was consulted in responding to the Lindsay's DOI Complaint, this request seeks documents protected by the attorney-client privilege.

**RESPONSE:**

Without waiving the foregoing objections, GIA states the following:

GIA states that responsive communications within its possession, custody, or control have been disclosed (GIA-000003 – 000009). Additionally, GIA's third supplemental disclosures will include emails concerning Plaintiffs' DOI complaint.

Dated:  February  2 , 2024

*s/ Ryan C. Gill*
Ryan C. Gill, Esq.
Jackson D. Beal, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone:   303.861.7760
Email: Ryan.Gill@lewisbrisbois.com
            Jackson.Beal@lewisbrisbois.com

*Attorneys for Defendant GEICO Insurance Agency*

*- remainder of page left blank -*

10

DocuSign Envelope ID: 4600CC6E-9653-4F00-A1F1-FB762CE36555

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANT GEICO INSURANCE AGENCY'S RESPONSES TO PLAINTIFFS' SECOND SET OF WRITTEN DISCOVERY** were filed and served to all counsel of record electronically via email, this  2  day of February, 2023.

| | |
|---|---|
| Bradley Aaron Levin<br>Susan S. Minamizono<br>Levin Sitcoff Waneka PC<br>455 Sherman Street, Suite 490<br>Denver, CO 80203Email:<br>Email: brad@lsw-legal.com<br>susan@lsw-legal.com | Evan B. Stephenson<br>Spencer Fane LLP<br>1700 Lincoln Street, Suite 2000<br>Denver, CO 80203<br>estephenson@spencerfane.com |

*s/ Ryan C. Gill*
Lewis Brisbois Bisgaard & Smith LLP

11