# GIA MOTION FOR SUMMARY JUDGMENT

## EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01413-NYW-STV

ERIN LINDSAY and CHRISTOPHER LINDSAY,

     Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and
GEICO INSURANCE AGENCY, LLC,

     Defendants.

---

**PLAINTIFF ERIN LINDSAY'S RESPONSES TO DEFENDANT GEICO
INSURANCE AGENCY'S FIRST SET OF WRITTEN DISCOVERY TO
PLAINTIFF ERIN LINDSAY**

---

Plaintiff Erin Lindsay, by and through his attorneys, Bradley A. Levin and Susan Minamizono of LEVIN SITCOFF PC, hereby submits her Responses to Defendant Geico Insurance Agency's First Set of Written Discovery to Plaintiff Erin Lindsay.

**OBJECTIONS**

1.     Plaintiff incorporates by reference into each and every specific response, each and every General Objection set forth herein.  From time to time, a specific response may repeat a general objection for emphasis or some other reason.  Failure to repeat any General Objection shall not be interpreted as a waiver of any General Objection.

2.     The objections and responses of Plaintiff are based upon information and writings available to and located by Plaintiff and his attorneys as of the date of service of these responses.

1

All the information supplied is based only on such information and documents which are reasonably available and specifically known to Plaintiff and his attorneys as of the date of service of these responses. Therefore, the objections and responses by Plaintiff are without prejudice to their right to supplement and/or amend her objections and responses.

3.      Plaintiff objects to Defendant's requests to the extent they are overly broad, unduly burdensome, oppressive and/or beyond the proper scope of discovery.

4.      Plaintiff objects to Defendant's requests to the extent they seek the production of documents which are neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

5.      Plaintiff objects to Defendant's requests to the extent they seek information and/or documents protected by the attorney-client, work product, or any other applicable privilege. No such information will be produced at any time, and any inadvertent production thereof shall not be deemed a waiver of any privilege with respect to such information or of any work product doctrine which may attach hereto.

6.      Plaintiff objects to Defendant's requests to the extent they seek information that is confidential or proprietary.

7.      Plaintiff objects to the definitions contained in the discovery requests to the extent they seek to impose obligations contrary to or inconsistent with the Federal Rules of Civil Procedure.

8.      Plaintiff objects to Defendant's requests to the extent they are not set forth with sufficient particularity, and/or are vague, ambiguous or unrelated in scope.

2

9.      Plaintiff objects to Defendant's requests to the extent they seek to impose on Plaintiff's an obligation to investigate or discover information or documents from third parties that are equally accessible to Defendant.

10.      Plaintiff reserves all objections or other questions as to competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent proceeding or in the trial of this action.  Nothing herein shall be construed as an admission by Plaintiff with respect to the authenticity, admissibility or relevance of any document produced, or of the truth or accuracy of any characterization or statement of any kind contained in any document.

## **INTERROGATORIES**

**INTERROGATORY NO. 1.**

Identify with specificity any errors and/or omissions YOU contend GIA made with regard to procuring the POLICIES.

**RESPONSE:**   Plaintiff further objects to the extent that this interrogatory calls for a legal conclusion and/or expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have

3

also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections, Plaintiff responds as follows:

Around April 2015, I contacted GEICO and insisted on increasing the policy limit beyond what was initially proposed by GEICO in the $300,000 range and discussed the unique and luxury features of our custom home. I was able to secure a policy limit of $500,000 after insisting on higher coverage, but was later told by the GEICO agent over the phone that we were overinsured and could not legally purchase more coverage. I tried again in June or August 2015 to increase our limit beyond $500,000 but was told we were overinsured and GEICO could not legally sell us a policy with a higher limit.  After we filed a hail claim under the policy in 2018, an adjuster visited the home but no increase in coverage was recommended by GEICO at that time. On March 28, 2019, I also spoke to whom I believe was a GEICO agent to discuss insurance coverage after installing solar panels. I was again informed by GEICO that no additional coverage was necessary and that we were overinsured. **I spoke with licensed experts in the business of sales and insurance at GEICO who told me that I couldn't buy a policy with limits higher than what**

4

was issued, because we were overinsured. I was informed by GEICO that it wouldn't sell a policy to us with higher limits. GEICO had access to software that purportedly calculated reconstruction costs for our home in the event of a total loss. On the other hand, we did not have access to GEICO's software. The GEICO agent asked questions about the address, square footage and features of the home. I informed GEICO about the luxury quality of the home and that the home was custom and unique, with a lot of architectural features and detailing not found in most homes. I asked GEICO for full coverage, and in response, GEICO informed me that we had more coverage than what was needed. There was no reason to suspect at the time the policy was procured by GEICO that GEICO was misrepresenting that we had more coverage for the home than what was needed. When GEICO advertised that it would help us get the right amount of coverage for our home, and a licensed GEICO professional provided a policy limit amount using information the insurance company was able to access, we expected that GEICO would not misrepresent the information they gave to us. GEICO misrepresented to us that we were overinsured. Throughout the entire process, GEICO repeatedly inputted incorrect information regarding the specification and features of our home, which we discovered after the filing of the lawsuit. Prior to the fire, we did not understand the difference between guaranteed replacement policies (what we were seeking) and run-of-the-mill replacement cost policies. Since GEICO did not offer guaranteed replacement cost policies, they should have informed us that they did not sell that type of policy.

**INTERROGATORY NO. 2.**

Describe every error and/or omission YOU contend GIA made with regard to procuring the

5

2021 POLICY.

**RESPONSE:**    Plaintiff objects to the extent that this interrogatory calls for a legal conclusion and/or expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections, Plaintiff responds as follows:

The policy that was issued to us in 2015 was renewed every year through 2021. Despite

6

my conversations with GEICO over the years to get more coverage, I was told that we were overinsured. We did not find out until after the Marshall Fire in December 2021 that we were significantly underinsured. **I spoke with licensed experts in the business of sales and insurance at GEICO who told me that I couldn't buy a policy with limits higher than what was issued, because we were overinsured. I was informed by GEICO that it wouldn't sell a policy to us with higher limits. GEICO had access to software that purportedly calculated reconstruction costs for our home in the event of a total loss. On the other hand, we did not have access to GEICO's software. I asked GEICO for full coverage, and in response, GEICO informed me that we had more coverage than what was needed. There was no reason to suspect at the time the policy was procured by GEICO that GEICO was misrepresenting that we had more coverage for the home than what was needed. During the first conversation with GEICO in 2015, I told a GEICO agent about our plans to purchase our home. The GEICO agent asked questions about the address, square footage and features of the home, to which I responded. During a second call in 2015, I checked in with GEICO to make sure the policy limits were set correctly and that the limits were enough to cover the house fully. I told the GEICO agent about the luxury quality of the home and that the home was custom and unique, with a lot of architectural features and detailing not found in most homes. I recalled a female GEICO agent telling me that we needed less coverage than what we already had. I told the GEICO agent that I wanted more, but the GEICO agent told me that we were overinsured, that GEICO could not sell more insurance, and that she was not allowed to sell more insurance. Again in 2019, I asked a GEICO agent over the phone if we had enough to be fully insured, whether we needed more insurance coverage, and if we could purchase more coverage. I was**

7

told again by GEICO that we were overinsured. When GEICO advertised that it would help us get the right amount of coverage for our home, and a licensed GEICO professional provided a policy limit amount using information the insurance company was able to access, we expected that GEICO would not misrepresent the information they gave to us. GEICO misrepresented to us that we were overinsured. Also, GEICO inputted incorrect information in our policy application regarding the specifications and features of our home, which we discovered after the filing of the lawsuit.  All of this occurred prior to 2021 and set the stage for the inaccuracies in our policy coverages every year through 2021. GEICO used the incorrect information it initially inputted in our policy application and renewed our policy year after year, including 2021, based on the incorrect information it had inputted.  The fact that Travelers reformed our policy once in April 2022 shows that our policy in 2021 was incorrectly underwritten by GEICO. There were many specifications and features of the home that were incorrectly inputted by GEICO and these inaccuracies were acknowledged by Travelers. Prior to the fire, we did not understand the difference between guaranteed replacement policies (what we were seeking) and run-of-the-mill replacement cost policies. Since GEICO did not offer guaranteed replacement cost policies, they should have informed us that they did not sell that type of policy.

**INTERROGATORY NO. 3.**

Describe every deficiency YOU allege existed with respect to the 2021 POLICY at the time of the LOSS, and for which YOU contend that GIA bears responsibility.

**RESPONSE:**  Plaintiff objects that this interrogatory is vague, ambiguous and cumulative. Plaintiff further objects to the extent that this interrogatory calls for a legal conclusion and/or

8

expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections, Plaintiff responds as follows:

We discovered, after we lost our home in 2021, that we were severely underinsured, despite GEICO's representations over the years that we were overinsured. **It will cost over $2 million to rebuild the home that we lost in the fire. We hold GEICO responsible for the**

information is equally available to the propounding party, who is in the business of selling and procuring homeowners policies in Colorado. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Subject to and without waiving any objections, Plaintiff responds as follows:

I am not an insurance professional or have any experience with cost estimating software used by GEICO and rely on experts in the field to determine how policy limits are calculated. But after we lost our home, I was educated about the existence of guaranteed replacement cost

policies. **Also, we learned after filing this lawsuit that Travelers acknowledged that certain incorrect features and specifications of our home had been inputted in our policy application. We learned about guaranteed replacement cost policies from neighbors, United Policyholders, and a local builder. Since then, I have contacted two brokers, Rick Baker and MAC Insurance, who both confirmed guaranteed replacement cost policies were sold in 2021.** I had expressed to GEICO that we wanted sufficient coverage to replace our house in the event of a total loss, and GEICO assured me that we were overinsured. If GEICO was unable to procure a guaranteed replacement cost policy or a policy with higher limits, GEICO was responsible for informing me, which they did not. **If GEICO was unable to procure a guaranteed replacement cost policy or a policy with higher limits, GEICO, as the licensed insurance professional, should have informed us that other insurers carried such policies. Instead, GEICO said we were overinsured and that no other insurance company would provide higher limits, which was a misrepresentation**. Discovery and investigation are continuing.

**INTERROGATORY NO. 8.**

Describe in detail each instance when "the Lindsays expressed their concern to Geico as to whether there was sufficient coverage for the Home under the Travelers homeowners policy and requested increased policy limits" as alleged in paragraph 13 of the Amended Complaint, including, but not limited to, the date and content of each communication.

**RESPONSE:** Around April 2015, I contacted GEICO and insisted on increasing the policy limit beyond what was initially proposed by GEICO in the $300,000 range and discussed the unique and luxury features of our custom home. I was able to secure a policy limit of $500,000 after

14

premature expert discovery. Plaintiff also objects to the extent the information is equally available to the propounding party, who is in the business of selling and procuring homeowners policies in Colorado. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Subject to and without waiving any objections, Plaintiff responds as follows:

I am not an insurance professional but was educated after the loss that guaranteed replacement cost policies were generally available in the insurance market in Colorado.

16

Discovery and investigation are continuing.

**INTERROGATORY NO. 11.**

Explain the reasons and bases for YOUR contention in paragraph 22 of the Amended Complaint that GIA "breached the standard of care by failing to conduct a proper replacement cost analysis, by failing to advise the Lindsays regarding the proper and accurate analysis based on the square footage of the Home, the exceptionally high construction standards by which the Home was built, and the custom features, finishes, and amenities—information that was repeatedly provided by Ms. Lindsay to Geico—and by failing to procure the proper amount of replacement cost coverage, including coverage which would exceed the amount of the policy limit of the Travelers policy, resulting in the Home being inadequately insured" including identification of all relevant facts and DOCUMENTS.

**RESPONSE:** Plaintiff objects that this interrogatory seeks premature expert discovery. Plaintiff also objects to the extent the information is equally available to the propounding party, who is in the business of selling and procuring homeowners policies in Colorado. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such

discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Subject to and without waiving any objections, Plaintiff responds as follows:

I am not an insurance professional and rely on experts to provide all of the reasons why Geico breached the standard of care. But I am now aware that Travelers reformed our limits because Geico had not inputted accurate information regarding our home. Even though our policy was reformed once, the new limit was still based on inaccurate information. Also, Geico consistently informed me that we were overinsured, and it became clear after the fire that Geico's representations to me weren't true. **I spoke with licensed experts in the business of sales and insurance at GEICO who told me that I couldn't buy a policy with limits higher than what was issued, because we were overinsured. I was informed by GEICO that it wouldn't sell a policy to us with higher limits. GEICO had access to software that purportedly calculated reconstruction costs for our home in the event of a total loss. On the other hand, we did not have access to GEICO's software. I asked GEICO for full coverage, and in response, GEICO informed me that we had more coverage than what was needed. There was no reason to suspect at the time the policy was procured by GEICO that GEICO was misrepresenting**

discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Subject to and without waiving any objections, Plaintiff responds as follows:

I am not an insurance professional and rely on experts to provide all of the reasons why Geico failed to exercise reasonable care. I was educated after the loss that guaranteed replacement cost policies were generally available in the insurance market in Colorado. **Also, we learned after filing this lawsuit that Travelers acknowledged that certain incorrect features and specifications of our home had been inputted in our policy application. We learned about guaranteed replacement cost policies from neighbors, United Policyholders, and a local builder. Since then, I have contacted two brokers, Rick Baker and MAC Insurance, who both confirmed guaranteed replacement cost policies were sold in 2021.** Discovery and investigation are continuing.

**INTERROGATORY NO. 15.**

Describe the efforts either of the PLAINTIFFS made to "shop around" for higher PROPERTY COVERAGE LIMITS for the PROPERTY, as described by YOUR 02/07/2022 DOI COMPLAINT, including identifying each individual and/or company with whom YOU discussed obtaining insurance for the PROPERTY, including identification of all relevant facts and DOCUMENTS.

**RESPONSE:** Plaintiff objects that this interrogatory is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: I obtained quotes from Patrick

Smith with State Farm and Joanie Patterson-Clark with Farmers in 2015. **We decided to purchase a policy issued by Travelers, because we were informed that Travelers had a better reputation than the other insurers.**

**INTERROGATORY NO. 16.**

Describe GIA's involvement in TRAVELERS' renewal of the 2020 POLICY and issuance of the 2021 POLICY, including a description of any communications YOU had with GIA regarding the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this interrogatory is vague, ambiguous and confusing. Plaintiff objects to the extent the information is equally available to the propounding party. Subject to and without waiving any objections, Plaintiff responds as follows: I don't know how GEICO was specifically involved with the renewal of the 2020 and 2021 policies, **besides the fact that GEICO was listed on my policies as the agent**. Discovery and investigation are continuing.

**INTERROGATORY NO. 17.**

Prior to the LOSS, identify each date YOU communicated with GIA on any topic related to the PROPERTY and describe the substance of each communication.

**RESPONSE:** Around April 2015 I contacted GEICO and insisted on increasing the policy limit beyond what was initially proposed by GEICO in the $300,000 range and discussed the unique and luxury features of our custom home. I was able to secure a policy limit of $500,000 after insisting on higher coverage, but was later told by the GEICO agent over the phone that we were overinsured and could not legally purchase more coverage. I tried again in June or August 2015 to increase our limit beyond $500,000 but was told we were overinsured and that they could not

25

any objections, **see TRAVELERS_000161, 171, 175-177, 3068-70, 3082-83, 3113-23, 5917-25, 5971-75, 5981, 6845-60, 9256, 9394-96; LINDSAY000001-53, 299-304, 430, 485-525, 532, 534-38, 652-735, 1020-1931, 2153-2272, 2534-2621, 19292-19300. Discovery and investigation are continuing.**

**REQUEST FOR PRODUCTION NO. 12.**

Produce all DOCUMENTS relating to the efforts YOU and/or Christopher Lindsay made to "shop around" for higher PROPERTY COVERAGE LIMITS for the PROPERTY, as described in the 02/07/2022 DOI COMPLAINT.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff hereby produces responsive documents.

**REQUEST FOR PRODUCTION NO. 13.**

Produce all written communications either of the PLAINTIFFS had with GIA prior to the LOSS.

**RESPONSE:** Plaintiff previously produced responsive documents.

**REQUEST FOR PRODUCTION NO. 14.**

Produce all written communications either of the PLAINTIFFS had with the DOI concerning the GIA, the POLICIES, and/or the LOSS.

**RESPONSE:** Plaintiff previously produced responsive documents.

**REQUEST FOR PRODUCTION NO. 15.**

Produce all written communications either of the PLAINTIFFS had with TRAVELERS concerning the POLICIES.

**RESPONSE:** Plaintiff previously produced responsive documents.

32

## REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.**

Admit that prior to the LOSS, YOU an opportunity to review each of the POLICIES.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving copies of policy declaration pages and amendments. Plaintiff doesn't remember receiving complete copies of the policies until after the fire loss, and therefore denies.

**REQUEST FOR ADMISSION NO. 2.**

Admit that prior to the LOSS, YOU had an opportunity to review the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving a copy of the policy declaration page. Plaintiff doesn't remember receiving a complete copy of the policy until after the fire loss, and therefore denies.

**REQUEST FOR ADMISSION NO. 3.**

Admit that prior to the LOSS, YOU received a copy of the 2021 POLICY, whether physical or electronic.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving a copy of the policy declaration page. Plaintiff doesn't remember receiving a complete copy of the policy until after the fire loss, and therefore denies..

**REQUEST FOR ADMISSION NO. 4.**

33

Admit that prior to the LOSS, YOU knew that the dwelling limit for the 2021 POLICY was $557,000.

**RESPONSE:** Plaintiff objects to the extent any inference or suggestion is being made regarding the significance of Plaintiff's knowledge of the policy limit amount. Subject to and without waiving any objections, Plaintiff admits.

**REQUEST FOR ADMISSION NO. 5.**

Admit that GIA never represented to YOU that it would obtain higher PROPERTY COVERAGE LIMITS for the PROPERTY than were stated by the terms of each of the POLICIES.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 6.**

Admit that GIA did not make the final determination of the PROPERTY COVERAGE LIMITS for any of the POLICIES.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand the details regarding GIA and Travelers' specific roles in the underwriting of the policies. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 7.**

Admit that GIA did not make the final determination of the PROPERTY COVERAGE LIMITS for the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand

the details regarding GIA and Travelers' specific roles in the underwriting of the policy. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 8.**

Admit that the replacement cost estimate for the PROPERTY was determined by the CoreLogic system used by Travelers.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand the details regarding GIA and Travelers' specific roles in the underwriting of the policy and to what extent either party modified any fields in the CoreLogic software program. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 9.**

Admit that in 2015, YOU "shopped around" for a homeowners insurance policy for the PROPERTY with higher PROPERTY COVERAGE LIMITS than were offered by TRAVELERS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Admit that I contacted other homeowners insurers in 2015.

**REQUEST FOR ADMISSION NO. 10.**

Admit that YOU do not have any evidence demonstrating that there was homeowners' insurance available on the market in Colorado that would have insured the PROPERTY on the date of LOSS with higher PROPERTY COVERAGE LIMITS than were provided by the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request seeks premature expert discovery. Subject to and

35

without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 11.**

Admit that YOU do not have any evidence demonstrating that there was homeowners' insurance available on the market in Colorado that would have insured the PROPERTY on the date of LOSS with PROPERTY COVERAGE LIMITS up to the amount of PLAINTIFFS' CLAIMED LIMITS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Plaintiff objects that this request seeks premature expert discovery. Subject to and without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 12.**

Admit that a homeowners' policy with PLAINTIFFS' CLAIMED LIMITS for the PROPERTY was not generally available in the insurance market in Colorado prior to the LOSS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Plaintiff objects that this request seeks premature expert discovery. Subject to and without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 13.**

Admit that the report issued by Information Providers, Inc. concerning the PROPERTY (Bates nos. TRAVELERS_000183 – 000190) reported that the insurable replacement cost of the PROPERTY was $393,252.00.

**RESPONSE:** Plaintiff objects to the extent any inference or suggestion is made regarding the accuracy of the replacement cost contained in the report. Subject to and without waiving any objections, Plaintiff admits.

**REQUEST FOR ADMISSION NO. 14.**

Admit that YOU did not contact GIA to discuss PROPERTY COVERAGE LIMITS during

2020 or 2021, before the 2021 POLICY was issued.

**RESPONSE:**  Admit.

**REQUEST FOR ADMISSION NO. 15.**

Admit that YOU did not communicate with GIA to discuss the 2021 POLICY.

**RESPONSE:**  Admit.

**REQUEST FOR ADMISSION NO. 16.**

Admit that Christopher Lindsay wrote the 02/07/2022 DOI COMPLAINT based, in part,

on YOUR input.

**RESPONSE:**  Admit.

DATED this 22nd day of July 2025.

As to objections:

**LEVIN SITCOFF PC**

*s/ Susan Minamizono*
Bradley A. Levin
Susan Minamizono
455 Sherman St., Suite 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
susan@lsw-legal.com
***Attorneys for Plaintiffs***


I, Erin Lindsay, affirm that I have read the foregoing answers to Interrogatories made and answered by me and that the said answers are true, complete and accurate to the best of my knowledge.

*/s/ Erin Lindsay*
Erin Lindsay