# GIA MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01413-NYW-STV

ERIN LINDSAY and CHRISTOPHER LINDSAY,

    Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and
GEICO INSURANCE AGENCY, LLC,

    Defendants.

_____

**PLAINTIFF CHRISTOPHER LINDSAY'S SUPPLEMENTAL RESPONSES TO DEFENDANT GEICO INSURANCE AGENCY'S FIRST SET OF WRITTEN DISCOVERY TO PLAINTIFF CHRISTOPHER LINDSAY**

_____

    Plaintiff Christopher Lindsay, by and through his attorneys, Bradley A. Levin and Susan Minamizono of LEVIN SITCOFF PC, hereby submits his Supplemental Responses to Defendant Geico Insurance Agency's First Set of Written Discovery to Plaintiff Christopher Lindsay.

**OBJECTIONS**

    1.    Plaintiff incorporates by reference into each and every specific response, each and every General Objection set forth herein. From time to time, a specific response may repeat a general objection for emphasis or some other reason. Failure to repeat any General Objection shall not be interpreted as a waiver of any General Objection.

    2.    The objections and responses of Plaintiff are based upon information and writings available to and located by Plaintiff and his attorneys as of the date of service of these responses. All the information supplied is based only on such information and documents which are

reasonably available and specifically known to Plaintiff and his attorneys as of the date of service of these responses. Therefore, the objections and responses by Plaintiff are without prejudice to their right to supplement and/or amend her objections and responses.

3. Plaintiff objects to Defendant's requests to the extent they are overly broad, unduly burdensome, oppressive and/or beyond the proper scope of discovery.

4. Plaintiff objects to Defendant's requests to the extent they seek the production of documents which are neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

5. Plaintiff objects to Defendant's requests to the extent they seek information and/or documents protected by the attorney-client, work product, or any other applicable privilege. No such information will be produced at any time, and any inadvertent production thereof shall not be deemed a waiver of any privilege with respect to such information or of any work product doctrine which may attach hereto.

6. Plaintiff objects to Defendant's requests to the extent they seek information that is confidential or proprietary.

7. Plaintiff objects to the definitions contained in the discovery requests to the extent they seek to impose obligations contrary to or inconsistent with the Federal Rules of Civil Procedure.

8. Plaintiff objects to Defendant's requests to the extent they are not set forth with sufficient particularity, and/or are vague, ambiguous or unrelated in scope.

9.  Plaintiff objects to Defendant's requests to the extent they seek to impose on Plaintiff's an obligation to investigate or discover information or documents from third parties that are equally accessible to Defendant.

10. Plaintiff reserves all objections or other questions as to competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent proceeding or in the trial of this action. Nothing herein shall be construed as an admission by Plaintiff with respect to the authenticity, admissibility or relevance of any document produced, or of the truth or accuracy of any characterization or statement of any kind contained in any document.

## INTERROGATORIES

**INTERROGATORY NO. 1.**

Identify with specificity any errors and/or omissions YOU contend GIA made with regard to procuring the POLICIES, including identification of all relevant facts and DOCUMENTS.

**RESPONSE:** Plaintiff further objects to the extent that this interrogatory calls for a legal conclusion and/or expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have

3

also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections, Plaintiff responds as follows:

It is my understanding that GEICO informed Erin that we were overinsured and that we could not purchase more coverage on multiple occasions. **Specifically, as Erin testified during her deposition, she spoke with licensed experts in the business of sales and insurance at GEICO who told her that she couldn't buy a policy with limits higher than what was issued, because we were overinsured. She was informed by GEICO that it wouldn't sell a policy to us with higher limits. GEICO had access to software that purportedly calculated reconstruction costs for our home in the event of a total loss. On the other hand, we did not have access to GEICO's software. Erin asked GEICO for full coverage, and in response, GEICO informed her that she had more coverage than what was needed. There was no reason to suspect at the time the policy was procured by GEICO that GEICO was misrepresenting that we had more coverage for the home than what was needed. During the first conversation with GEICO in 2015, Erin told a GEICO agent about our plans to**

4

purchase our home. During a second call in 2015, Erin checked in with GEICO to make sure the policy limits were set correctly and that the limits were enough to cover the house fully. Erin told the GEICO agent about the luxury quality of the home and that the home was custom and unique, with a lot of architectural features and detailing not found in most homes. Erin recalled a female GEICO agent telling her that we needed less coverage than what we already had. Erin told the GEICO agent that she wanted more, but the GEICO agent told her that we were overinsured, that GEICO could not sell more insurance, and that she was not allowed to sell more insurance. I believe I was on a call to GEICO in 2018 to find out how much it would be to insure solar panels. In 2019, Erin called GEICO to inform them that the solar panels were installed and asked the GEICO agent over the phone if we had enough to be fully insured, whether we needed more insurance coverage, and if we could purchase more coverage. Erin was told again by GEICO that we were overinsured. When GEICO advertised that it would help us get the right amount of coverage for our home, and a licensed GEICO professional provided a policy limit amount using information the insurance company was able to access, we expected that GEICO would not misrepresent the information they gave to us. GEICO misrepresented to us that we were overinsured. Throughout the entire process, GEICO repeatedly inputted incorrect information regarding the specifications and features of our home, which we discovered after the filing of the lawsuit. Prior to the fire, we did not understand the difference between guaranteed replacement policies (what we were seeking) and run-of-the-mill replacement cost policies. Since GEICO did not offer guaranteed replacement cost policies, they should have informed us that they did not sell that type of policy.

5

**INTERROGATORY NO. 2.**

Describe every error and/or omission YOU contend GIA made with regard to procuring the 2021 POLICY.

**RESPONSE:** Plaintiff objects to the extent that this interrogatory calls for a legal conclusion and/or expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections,

6

Plaintiff responds as follows:

The policy that was issued to us in 2015 was renewed every year through 2021. Despite Erin's conversations with GEICO over the years to get more coverage, we were told that we were overinsured. We did not find out until after the Marshall Fire in December 2021 that we were significantly underinsured. **Specifically, as Erin testified during her deposition, she spoke with licensed experts in the business of sales and insurance at GEICO who told her that she couldn't buy a policy with limits higher than what was issued, because we were overinsured. She was informed by GEICO that it wouldn't sell a policy to us with higher limits. GEICO had access to software that purportedly calculated reconstruction costs for our home in the event of a total loss. On the other hand, we did not have access to GEICO's software. Erin asked GEICO for full coverage, and in response, GEICO informed her that she had more coverage than what was needed. There was no reason to suspect at the time the policy was procured by GEICO that GEICO was misrepresenting that we had more coverage for the home than what was needed. During the first conversation with GEICO in 2015, Erin told a GEICO agent about our plans to purchase our home. During a second call in 2015, Erin checked in with GEICO to make sure the policy limits were set correctly and that the limits were enough to cover the house fully. Erin told the GEICO agent about the luxury quality of the home and that the home was custom and unique, with a lot of architectural features and detailing not found in most homes. Erin recalled a female GEICO agent telling her that we needed less coverage than what we already had. Erin told the GEICO agent that she wanted more, but the GEICO agent told her that we were overinsured, that GEICO could not sell more insurance, and that she was not allowed to sell more insurance. Again in 2019, Erin**

7

asked a GEICO agent over the phone if we had enough to be fully insured, whether we needed more insurance coverage, and if we could purchase more coverage. Erin was told again by GEICO that we were overinsured. When GEICO advertised that it would help us get the right amount of coverage for our home, and a licensed GEICO professional provided a policy limit amount using information the insurance company was able to access, we expected that GEICO would not misrepresent the information they gave to us. GEICO misrepresented to us that we were overinsured. Throughout the entire process, GEICO repeatedly inputted incorrect information regarding the specifications and features of our home, which we discovered after the filing of the lawsuit. All of this occurred prior to 2021 and set the stage for the inaccuracies in our policy coverages every year through 2021. GEICO used the incorrect information it initially inputted in our policy application and renewed our policy year after year, including 2021, based on the incorrect information it had inputted. The fact that Travelers reformed our policy once in April 2022 shows that our policy in 2021 was incorrectly underwritten by GEICO. There were many specifications and features of the home that were incorrectly inputted by GEICO and these inaccuracies were acknowledged by Travelers. Prior to the fire, we did not understand the difference between guaranteed replacement policies (what we were seeking) and run-of-the-mill replacement cost policies. Since GEICO did not offer guaranteed replacement cost policies, they should have informed us that they did not sell that type of policy.

**INTERROGATORY NO. 3.**

Describe every deficiency YOU allege existed with respect to the 2021 POLICY at the time of the LOSS, and for which YOU contend that GIA bears responsibility.

8

**RESPONSE:** Plaintiff objects that this interrogatory is vague, ambiguous and cumulative. Plaintiff further objects to the extent that this interrogatory calls for a legal conclusion and/or expert discovery. Plaintiff objects to this Interrogatory to the extent that it requests Plaintiff to exhaustively state facts supporting his present contentions and speculate as to future contentions prior to the completion of discovery. Contention interrogatories ask a party to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for contention "Tell me everything you know about the case" interrogatories are so all-inclusive as to be incapable of an accurate response and so clearly burdensome that several courts have found them to be too broad to permit effective responses. In denying such discovery requests, courts have also held that when discovery is relevant and not burdensome, it should proceed without one party shifting its burden of data collection and case preparation to the other party. In construing the appropriateness of such interrogatories, courts have held that justice dictates that such interrogatories should be deferred until the end of discovery or that a party should be allowed to supplement responses as additional facts are disclosed through discovery. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); and *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954). *See also* F.R.C.P. 26(e). Plaintiff further objects that this interrogatory is premature as discovery and investigation are ongoing. Subject to and without waiving any objections, Plaintiff responds as follows:

    We discovered, after we lost our home in 2021, that we were severely underinsured,

**REQUEST FOR PRODUCTION NO. 13.**

Produce all written communications either of the PLAINTIFFS had with GIA prior to the LOSS.

**RESPONSE:** Plaintiff previously produced responsive documents.

**REQUEST FOR PRODUCTION NO. 14.**

Produce all written communications either of the PLAINTIFFS had with the DOI concerning the GIA, the POLICIES, and/or the LOSS.

**RESPONSE:** Plaintiff previously produced responsive documents.

**REQUEST FOR PRODUCTION NO. 15.**

Produce all written communications either of the PLAINTIFFS had with TRAVELERS concerning the POLICIES.

**RESPONSE:** Plaintiff previously produced responsive documents.

## REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.**

Admit that prior to the LOSS, YOU an opportunity to review each of the POLICIES.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving copies of policy declaration pages and amendments. Plaintiff doesn't remember receiving complete copies of the policies until after the fire loss, and therefore denies.

**REQUEST FOR ADMISSION NO. 2.**

Admit that prior to the LOSS, YOU had an opportunity to review the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without

waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving a copy of the policy declaration page. Plaintiff doesn't remember receiving a complete copy of the policy until after the fire loss, and therefore denies.

**REQUEST FOR ADMISSION NO. 3.**

Admit that prior to the LOSS, YOU received a copy of the 2021 POLICY, whether physical or electronic.

**RESPONSE:** Plaintiff objects that this request is vague and ambiguous. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff recalls receiving a copy of the policy declaration page. Plaintiff doesn't remember receiving a complete copy of the policy until after the fire loss, and therefore denies.

**REQUEST FOR ADMISSION NO. 4.**

Admit that prior to the LOSS, YOU knew that the dwelling limit for the 2021 POLICY was $557,000.

**RESPONSE:** Plaintiff objects to the extent any inference or suggestion is being made regarding the significance of Plaintiff's knowledge of the policy limit amount. Subject to and without waiving any objections, Plaintiff admits.

**REQUEST FOR ADMISSION NO. 5.**

Admit that GIA never represented to YOU that it would obtain higher PROPERTY COVERAGE LIMITS for the PROPERTY than were stated by the terms of each of the POLICIES.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 6.**

33

Admit that GIA did not make the final determination of the PROPERTY COVERAGE LIMITS for any of the POLICIES.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand the details regarding GIA and Travelers' specific roles in the underwriting of the policies. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 7.**

Admit that GIA did not make the final determination of the PROPERTY COVERAGE LIMITS for the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand the details regarding GIA and Travelers' specific roles in the underwriting of the policy. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 8.**

Admit that the replacement cost estimate for the PROPERTY was determined by the CoreLogic system used by Travelers.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Plaintiff does not understand the details regarding GIA and Travelers' specific roles in the underwriting of the policy and to what extent either party modified any fields in the CoreLogic software program. Plaintiff can neither admit nor deny, and therefore denies.

**REQUEST FOR ADMISSION NO. 9.**

34

Admit that Erin Linday told YOU that she "shopped around" for a homeowners insurance policy for the PROPERTY with higher PROPERTY COVERAGE LIMITS than were offered by TRAVELERS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Subject to and without waiving any objections, Plaintiff responds as follows: Admit that it was my understanding that Erin contacted other homeowners insurers in 2015.

**REQUEST FOR ADMISSION NO. 10.**

Admit that YOU do not have any evidence demonstrating that there was homeowners' insurance available on the market in Colorado that would have insured the PROPERTY on the date of LOSS with higher PROPERTY COVERAGE LIMITS than were provided by the 2021 POLICY.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Plaintiff objects that this request seeks premature expert discovery. Subject to and without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 11.**

Admit that YOU do not have any evidence demonstrating that there was homeowners' insurance available on the market in Colorado that would have insured the PROPERTY on the date of LOSS with PROPERTY COVERAGE LIMITS up to the amount of PLAINTIFFS' CLAIMED LIMITS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Plaintiff objects that this request seeks premature expert discovery. Subject to and without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 12.**

Admit that a homeowners' policy with PLAINTIFFS' CLAIMED LIMITS for the PROPERTY was not generally available in the insurance market in Colorado prior to the LOSS.

**RESPONSE:** Plaintiff objects that this request is vague, ambiguous and confusing. Plaintiff objects that this request seeks premature expert discovery. Subject to and without waiving any objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 13.**

Admit that the report issued by Information Providers, Inc. concerning the PROPERTY (Bates nos. TRAVELERS_000183 – 000190) reported that the insurable replacement cost of the PROPERTY was $393,252.00.

**RESPONSE:** Plaintiff objects to the extent any inference or suggestion is made regarding the accuracy of the replacement cost contained in the report. Subject to and without waiving any objections, Plaintiff admits.

**REQUEST FOR ADMISSION NO. 14.**

Admit that YOU did not contact GIA to discuss PROPERTY COVERAGE LIMITS during 2020 or 2021, before the 2021 POLICY was issued.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 15.**

Admit that YOU did not communicate with GIA to discuss the 2021 POLICY.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 16.**

Admit that the document disclosed as Bates numbers LINDSAY000302 –

36

LINDSAY000304 is a true and correct copy of YOUR 02/07/2022 DOI COMPLAINT.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 17.**

Admit that the document disclosed as Bates numbers LINDSAY000299 – LINDSAY000301 is a true and correct copy of YOUR 01/18/2022 DOI COMPLAINT.

**RESPONSE:** Admit.

DATED this 22nd day of July 2025

As to objections:

**LEVIN SITCOFF PC**

*s/ Susan Minamizono*
Bradley A. Levin
Susan Minamizono
455 Sherman St., Suite 490
Denver, Colorado 80203
Telephone: (303) 575-9390
Fax: (303) 575-9385
brad@lsw-legal.com
susan@lsw-legal.com
*Attorneys for Plaintiffs*

I, Christopher Lindsay, affirm that I have read the foregoing answers to Interrogatories made and answered by me and that the said answers are true, complete and accurate to the best of my knowledge.

*/s/ Christopher Lindsay*
Christopher Lindsay

37

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of July 2025, a true and correct copy of the foregoing **PLAINTIFF CHRISTOPHER LINDSAY'S SUPPLEMENTAL RESPONSES TO DEFENDANT GEICO INSURANCE AGENCY'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF CHRISTOPHER LINDSAY** was served on the following by email:

Evan B. Stephenson
Nathaniel S. Barker
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
estephenson@spencerfane.com
nbarker@spencerfane.com
*Attorneys for Defendant Travelers Home and Marine Insurance Company*

Ryan C. Gill
Jackson Beal
Lewis Brisbois Bisgaard & Smith LLP
1700 Lincoln St., Suite 4000
Denver, Colorado 80203
ryan.gill@lewisbrisbois.com
Jackson.Beal@lewisbrisbois.com
*Attorneys for Defendant Geico Insurance Agency*

                 *s/ Gina M. Munro*
                 Gina M. Munro